**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
Pars Equality Center, *et al.*,           )
                                          )
        Plaintiffs                        )
                                          )        No. 1:17-cv-255 (TSC)
        v.                                )
                                          )        Electronically Filed
Donald J. Trump, *et al.*,                )
                                          )        Hon. Tanya S. Chutkan
        Defendants,                       )
_____)

**AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
OF CIVIL RIGHTS ORGANIZATIONS
FOR LEAVE TO FILE A BRIEF AS *AMICI CURIAE*[1]**

The American-Arab Anti-Discrimination Committee, the Center for Constitutional

Rights, the Center for Reproductive Rights, the Chicago Lawyer's Committee for Civil Rights,

The Judge David L. Bazelon Center for Mental Health Law, the Mississippi Center for Justice,

the National Center for Lesbian Rights, the National Coalition on Black Civic Participation, the

Southern Coalition for Social Justice, and the Washington Lawyers' Committee for Civil Rights

and Urban Affairs, (collectively, the "Civil Rights Organizations"), through undersigned counsel,

hereby move, pursuant to Rule 7(b) of the Federal Rules of Civil Procedure, for leave to file a

brief as *amicus curiae*, on the side of the Plaintiff.

In support of this Motion, the Civil Rights Organizations state as follows:

1.      The Center for Constitutional Rights ("CCR") is a national non-profit legal and

educational organization dedicated to advancing and protecting the rights guaranteed by the

United States Constitution and international human rights law. Founded in 1966, CCR has a long

history of litigating cases on behalf of those with the fewest protections and least access to legal

_____

[1] This motion was originally filed on March 27, 2017 (ECF No. 38).  It is being resubmitted to include the Local Civil Rule 7(o) statement at the end, and in the amicus brief itself.

resources.. CCR regularly works with communities targeted by state discrimination, including Muslim Arab and South Asian (MASA) communities, which face distinct vulnerabilities at the intersection of national security and immigration.  CCR has brought numerous cases challenging state practices premised on overbroad and stigmatizing assumptions about communities, including MASA communities.  *See Ziglar v. Abbasi*, *cert. granted,* No. 15-1359, 2016 U.S. LEXIS 6272 (Oct. 11, 2016) (decision pending), (challenging discriminatory conditions of immigration detention against MASA individuals in connection with 9/11 investigations); *Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) (finding unconstitutional NYPD suspicionless surveillance program targeting Muslim communities in New Jersey); *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013) (finding unconstitutional and racially discriminatory, New York City's widespread practice of "stop and frisk.").

2.      The Judge David L. Bazelon Center for Mental Health Law is a national public interest organization founded in 1972 to advance the rights of individuals with mental disabilities.  The Bazelon Center advocates for laws and policies that provide people with mental illness or intellectual disability the opportunities and resources they need to participate fully in their communities.  Its litigation and policy advocacy is based on the Americans with Disabilities Act's guarantees of non-discrimination and reasonable accommodation.  People with mental illness or intellectual disability commonly face discrimination based on myths and stereotypes, and the eradication of such discrimination is among the Bazelon Center's primary goals.

3.      The Washington Lawyers' Committee for Civil Rights and Urban Affairs is a non-profit civil rights organization established to eradicate discrimination and poverty by enforcing civil rights laws through litigation.  In furtherance of this mission, the Washington Lawyers' Committee has a dedicated Immigrant Rights Project, which has served as a critical

resource for some of the most vulnerable populations in the Washington, D.C. area: newcomers and non-English speakers, who are often discriminated against on the basis of their religious background or national origin, and who are often unaware of their rights and protections under U.S. law.

4.      Mississippi Center for Justice is a 501(c)(3) nonprofit public interest law organization founded in 2003 in Jackson, Mississippi and  committed to advancing racial and economic justice. Supported and staffed by attorneys and other professionals, the Center develops and pursues strategies to combat discrimination and poverty statewide. One of amicus' original areas of interest involved predatory loan practices directed at migrant poultry workers, and MCJ has remained concerned about the plight of Mississippi's growing immigrant population for the last decade, particularly in the areas of access to healthcare, education, housing and fair lending.

5.      The Center for Reproductive Rights ("CRR") is a global human rights organization that uses the law to advance reproductive freedom as a fundamental right that all governments are legally obligated to respect, protect, and fulfill.  In the United States, CRR's work focuses on ensuring that all people have access to a full range of high-quality reproductive health care. Since its founding in 1992, CRR has been actively involved in nearly all major litigation in the U.S. concerning reproductive rights, in both state and federal courts, including most recently, serving as lead counsel for the plaintiffs in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016).  As a rights-based organization, the Center has a vital interest in protecting individuals endeavoring to exercise their fundamental rights free from unwarranted government intrusion and discrimination.  CRR's ability to bring litigation challenging executive and regulatory action, and to seek relief where individuals are threatened with irreparable harm,

is crucial to its mission.

6.     The American-Arab Anti-Discrimination Committee ("ADC") is the country's largest Arab American grassroots civil rights organization. Founded in 1980 by U.S. Senator James Abourezk, ADC consists of members from all 50 states and has multiple chapters nationwide. ADC conducts legal and policy work on immigration with a focus on asylum and refugee issues, and advocacy against discriminatory immigration laws, policies and regulations. ADC's interest in this Case arises from the impact this Case decision will have on our constituents' fundamental constitutional and federal rights.

7.     Chicago Lawyers' Committee for Civil Rights (CLCCR) is a 501(c)(3) nonprofit public interest law organization founded in 1969. CLCCR works to secure racial equity and economic opportunity for all. CLCCR provides legal representation through partnerships with the private bar, and collaborates with grassroots organizations and other advocacy groups to implement community-based solutions that advance civil rights. In all practice areas, including education equity, fair housing, economic opportunity, hate crime prevention and voting rights, CLCCR advocates for immigrants who have been subject to racially-discriminatory governmental practices and policies. CLCCR's goal is to ensure that America fulfills its promise of democracy and equal justice for all.

8.     The National Center for Lesbian Rights ("NCLR") is a national non-profit legal organization dedicated to protecting and advancing the civil rights of lesbian, gay, bisexual, and transgender people and their families through litigation, public policy advocacy, and public education. Since its founding in 1977, NCLR has played a leading role in combating discrimination and securing fair and equal treatment for LGBT people and their families in cases across the country involving constitutional and civil rights. NCLR has a particular interest in

protecting the rights of LGBT immigrants and other immigrants to this country. Since 1994, NCLR's Immigration Project has provided free legal assistance to thousands of LGBT immigrants nationwide through, among other services, direct representation of immigrants in impact cases and individual asylum cases and advocacy for immigration and asylum policy reform.

9.      Southern Coalition for Social Justice is a 501(c)(3) nonprofit public interest law organization founded in 2007 in Durham, North Carolina.  SCSJ partners with communities of color and economically disadvantaged communities in the south to advance their political, social, and economic rights through the combination of legal advocacy, research, organizing and communications.  Originally, one of amicus' primary practice areas was immigrants' rights and it remains important to our mission.  SCSJ frequently advocates on behalf of immigrants who have been subject to racially-discriminatory governmental practices, and promotes the application of basic human rights principles to policies affecting migrant communities.

10.     The National Coalition on Black Civic Participation is a 501(c)(3), non-profit, non-partisan organization dedicated to increasing civic engagement and voter participation in Black and underserved communities. The National Coalition strives to create an enlightened community by engaging people in all aspects of public life through service/volunteerism, advocacy, leadership development and voting.  For nearly 40 years, The National Coalition has served as an effective convener and facilitator at the local, state and national levels of efforts to address the disenfranchisement of underserved and other marginalized communities through civic engagement.

11.     This case, and several other related cases that seek to enjoin President Trump's March 6, 2017 Executive Order, "Protecting the Nation from Foreign Terrorist Entry into the

United States," are important, and the participation of Civil Rights Organizations is desirable. The *Amici* are national and regional civil rights groups interested in the promotion of civil liberties throughout the country, and elimination of discrimination in whatever form.

12.     A court may grant leave to appear as *amicus curiae* if the information offered is timely and useful.  *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996).  In *Ellsworth*, the court granted a motion to file an *amicus curiae* brief because the movants "have a special interest in [the] litigation as well as a familiarity and knowledge of the issues raised therein that could aid in the resolution" of those issues.  *Id.*  The Civil Rights Organizations respectfully submit that this standard is met here.

13.     *Amici*'s proposed brief presents two arguments.  First, *amici* submit that the public interest weighs heavily in favor of enjoining President Trump's March 6, 2017 Executive Order, as the Order improperly promotes social categorization and stereotyping that endangers the lives and well-being of individuals of the Muslim faith.  Second, this compelling public interest is entirely in keeping with the legal protections that the United States Constitution guarantees those affected by the Order.  As Plaintiffs contend, the Executive Order's focus on a religious minority demands strict scrutiny by this Court of whether it violates the equal protection component of the Fifth Amendment's Due Process Clause.  However, even if this court were to review the Executive Order under a "rational basis" test, *amici* write separately to argue that the Order would still violate equal protection.

14.     The proposed *amici curiae* brief is attached as an exhibit to this Motion.

## Local Civil Rule 7(m) Statement

Undersigned counsel, by email, determined that Jon Greenbaum, counsel for Plaintiff, consented to the filing of this motion.  Undersigned counsel sent an email to Daniel S. Schwei,

counsel for the Defendant, who indicated that the Government took no position on our request to file this motion.

### Local Civil Rule 7(o) Statement

Undersigned counsel confirm, pursuant to Local Civil Rule 7(o) and Rule 29(a)(4), Fed. R. App. P., that (i) no party's counsel authored the brief in whole or in part; (ii) no party or party's counsel' contributed any money that was intended to fund preparing or submitting the brief; and (iii) no person, other than *amici curiae*, their members and their counsel, contributed money that was intended to fund preparing or submitting the brief.

Respectfully submitted,

*/s/ Lynne Bernabei*
Lynne Bernabei (Bar No. 938936)
Alan R. Kabat (Bar No. 464258)
Christopher Sousa (Bar No. 1018547)
BERNABEI & KABAT, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942
(202) 745-2627 (Fax)

Ted G. Dane
Ted.Dane@mto.com
Thomas P. Clancy
Thomas.Clancy@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071
Telephone:     (213) 683-9100
Facsimile:     (213) 683-5137

*Counsel for Amici Curiae*

DATED:  March 28, 2017