**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PARS EQUALITY CENTER, IRANIAN AMERICAN BAR ASSOCIATION, NATIONAL IRANIAN AMERICAN COUNCIL, PUBLIC AFFAIRS ALLIANCE OF IRANIAN AMERICANS, INC., et al., | No. 17-cv-255 (TSC)  Electronically Filed  Hon. Tanya S. Chutkan |

*Plaintiffs*,

v.

DONALD J. TRUMP et al.,

*Defendants*.

| | |
|---|---|
| UNIVERSAL MUSLIM ASSOCIATION OF AMERICA, INC., et al., | No. 17-cv-537 (TSC)  Electronically Filed  Hon. Tanya S. Chutkan |

*Plaintiffs*,

v.

DONALD J. TRUMP et al.,

*Defendants*.

**PLAINTIFFS' JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTIONS FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.    The Court Can and Should Enjoin §§ 2 and 6 of the March 6 Executive Order ................ 1

    A.    Other Courts' Rulings Do Not Restrict this Court from Enjoining §§ 2 and 6 ...... 1

    B.    The Court Should Enjoin Invidiously Discriminatory Government Action .......... 3

II.   The Court Has Broad Power To Grant Relief Restoring the Status Quo Ante .................. 6

III.  The Court Can and Should Grant the Broader Relief Requested By Plaintiffs ................. 9

    A.    The Court Should Grant Relief To Fully Restore the Status Quo ......................... 9

    B.    Defendants Should Publish Guidance Notifying Government Officials and
        Affected Individuals that the Pre-January 27 Status Quo Has Been Restored ..... 12

CONCLUSION .................................................................................................................... 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied-Signal, Inc. v. U.S. Nuclear Regulator Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) .................................................................7

*Aziz v. Trump,*
    No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017) ....................................1

*Bradshaw v. Veneman,*
    338 F. Supp. 2d 139 (D.D.C. 2004) ...........................................................9

*Cobell v. Kempthorne,*
    455 F.3d 301 (D.C. Cir. 2006) ...............................................................7

*Cobell v. Norton,*
    240 F.3d 1081 (D.C. Cir. 2001) ..............................................................8

*Dellinger v. Mitchell,*
    442 F.2d 782 (D.C. Cir. 1971) ...............................................................3

*Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.,*
    780 F. Supp. 2d 1256 (N.D. Fla. 2011) ......................................................2

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.,*
    746 F.2d 816 (D.C. Cir. 1984) ...............................................................7

*Goudy-Bachman v. U.S. Dep't of Health & Human Servs.,*
    811 F. Supp. 2d 1086 (M.D. Pa. 2011) .......................................................2

*Hawai'i v. Trump,*
    No. 17-cv-50, 2017 WL 1011673 (D. Haw. Mar. 15, 2017) ......................................1

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ........................................................................6

*Hulley Enters. Ltd. v. Russian Fed'n,*
    211 F. Supp. 3d 269, 2016 WL 5675348 (D.D.C. 2016) .........................................4

*Int'l Refugee Assistance Project v. Trump,*
    No. TDC-17-0361, 2017 WL 1018235 (D. Md. Mar. 16, 2017) ....................................1

*Johnson v. U.S. R.R. Ret. Bd.,*
    969 F.2d 1082 (D.C. Cir. 1992) ...........................................................2, 4

*Kaufman v. Mukasey,*
    524 F.3d 1334 (D.C. Cir. 2008) ..............................................................8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..............................................................................................4

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ......................................................................7, 9, 10

*Li v. Chertoff*,
  No. C-08-3540 MMC, 2008 WL 4962992 (N.D. Cal. Nov. 19, 2008) ....................5

*Louhghalam v. Trump*,
  No. 17-cv-10154, 2017 WL 479779 (D. Mass. Feb. 3, 2017)................................1

*Patel v. Reno*,
  134 F.3d 929 (9th Cir. 1997) ................................................................................8

*Sarsour v. Trump*,
  No. 17-cv-120, 2017 WL 1113305 (E.D. Va. Mar. 24, 2017)................................1

*Sugar Cane Growers Co-Op of Florida v. Veneman*,
  289 F.3d 89 (D.C. Cir. 2002)................................................................................7

*Tex. Children's Hospital v. Burwell*,
  76 F. Supp. 3d 224 (D.D.C. 2014).....................................................................9, 12

*United States v. Borden Co.*,
  347 U.S. 514 (1954)..............................................................................................2

*United States v. Cnty. of Maricopa*,
  151 F. Supp. 3d 998 (D. Ariz. 2015) .....................................................................2

*United States v. Mendoza*,
  464 U.S. 154 (1984)..............................................................................................2

*United States v. Oakland Cannabis Buyers' Cooperative*,
  532 U.S. 483 (2001)..............................................................................................6

*United States v. Texas*,
  136 S. Ct. 2271 (2016)..........................................................................................5

*United States v. W. Elec. Co.*,
  46 F.3d 1198 (D.C. Cir. 1995)...............................................................................9

*Virginia ex rel. Cuccinelli v. Sebelius*,
  728 F. Supp. 2d 768 (E.D. Va. 2010) ....................................................................2

*Washington v. Trump*,
  No. 17-cv-135, 2017 WL 1057645 (D. Wash. Mar. 17, 2017)..............................4

*Washington v. Trump*,
   No. 17-cv-141, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017)..................................................1

**STATUTES**

5 U.S.C. § 706..................................................................................................................................8

**OTHER AUTHORITIES**

Mem. from Sec'y of State to Diplomatic and Consular Posts, Mar. 17, 2017,
   http://live.reuters.com/Event/Live_US_Politics /791255396 ...................................................5

Plaintiffs in the above-captioned cases submit this joint brief in response to the Court's April 21, 2017 Minute Order and in further support of their motions for preliminary injunction.

## I.     The Court Can and Should Enjoin §§ 2 and 6 of the March 6 Executive Order

In response to the Court's first question, there is no "restriction on a judge's ability to issue a nationwide injunction on the provisions of the Order that have already been enjoined," and numerous factors establish that overlapping injunctions are "in the public interest."

### A.     Other Courts' Rulings Do Not Restrict this Court from Enjoining §§ 2 and 6

Nationwide injunctions by district courts in other circuits against §§ 2 and 6 of the March 6 Executive Order in no way restrict this Court's ability to issue a nationwide injunction barring their enforcement.  Defendants have not cited a single case—and Plaintiffs know of none—holding that one court's nationwide injunction blocking an unlawful government action disables another court from issuing its own nationwide injunction barring the same unlawful action.  On the contrary, multiple courts have issued overlapping injunctions blocking both of President Trump's Executive Orders on immigration.  *Compare Washington v. Trump*, No. 17-cv-141, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017) (January 27 Order), *with Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017) (same), *and Hawai'i v. Trump*, No. 17-cv-50, 2017 WL 1011673 (D. Haw. Mar. 15, 2017) (March 6 Order), *with Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, 2017 WL 1018235 (D. Md. Mar. 16, 2017) (same).[1]

Similarly, in other contexts, courts have issued overlapping orders affecting other government actions.  Multiple district courts issued overlapping declaratory judgments

---

[1]     Other courts denied preliminary injunctive relief on the merits even after each Executive Order had been enjoined, further belying any notion that one court's nationwide injunction bars other courts from deciding whether to issue their own injunctions.  *See Louhghalam v. Trump*, No. 17-cv-10154, 2017 WL 479779 (D. Mass. Feb. 3, 2017) (January 27 Order); *Sarsour v. Trump*, No. 17-cv-120, 2017 WL 1113305 (E.D. Va. Mar. 24, 2017) (March 6 Order).

invalidating the Affordable Care Act's individual mandate.  *E.g.*, *Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 2d 1256, 1305-06 (N.D. Fla. 2011); *Goudy-Bachman v. U.S. Dep't of Health & Human Servs.*, 811 F. Supp. 2d 1086 (M.D. Pa. 2011); *Virginia ex rel. Cuccinelli v. Sebelius*, 728 F. Supp. 2d 768 (E.D. Va. 2010).  The government itself has sought and obtained injunctive relief that duplicated relief that other courts had already awarded to private parties.  *See, e.g.*, *United States v. Borden Co.*, 347 U.S. 514 (1954) (district court abused its discretion by denying an injunction to the government solely because it would duplicate an earlier injunction granted to a private litigant); *United States v. Cnty. of Maricopa*, 151 F. Supp. 3d 998 (D. Ariz. 2015) (granting the government such an overlapping injunction).

Indeed, the Supreme Court has favored parallel litigation involving the Government because it "permit[s] several courts of appeals to explore a difficult question before [the Supreme Court] grants certiorari."  *United States v. Mendoza*, 464 U.S. 154, 160 (1984).  To "allow thorough development of legal doctrine by allowing litigation in multiple forums," the Court in *Mendoza* held that the Government is not precluded from relitigating an issue that it previously lost in an earlier case against a different party.  *Id.* at 163.  This "avoids the problem of freezing the development of the law."  *Id.* at 164; *see also Johnson v. U.S. R.R. Ret. Bd.*, 969 F.2d 1082, 1093 (D.C. Cir. 1992) (recognizing the "value to letting important legal issues 'percolate' throughout the judicial system").  It would subvert that objective to hold that one court's nationwide injunction against the Government precludes other courts from granting overlapping relief.  Allowing courts in multiple circuits to consider issues of great public moment in the normal course is particularly important where, as here, political officials have challenged the good faith, if not the independence, of the judiciary.

Defendants are wrong that the nationwide injunctions issued by the District of Hawaii and the District of Maryland preclude a finding of irreparable harm here.  If that were so, no

court after the first could *grant* an injunction, but any court would be free to *deny* one.  Only the arguments *against* an injunction would be developed through further litigation.  While Defendants no doubt would prefer such a one-way ratchet in their efforts to defend the Executive Orders, it would improperly skew the development of the law in favor of one side.

In addition, the Government seeks to overturn the injunctions on appeal in the Ninth and Fourth Circuits, where Plaintiffs are not parties.  Should those injunctions be dissolved or limited jurisdictionally (which could happen for reasons unrelated to the merits), the March 6 Executive Order presumably would take effect immediately, harming Plaintiffs and causing chaos and uncertainty similar to that seen on January 27.  Even if Plaintiffs were to seek a TRO from this Court, it is unlikely that relief could be granted quickly enough to prevent irreparable harm to Plaintiffs and others.  Having established a likelihood of success on the merits and a robust factual record of continuing irreparable harm, Plaintiffs are entitled to a preliminary injunction against §§ 2 and 6 of the March 6 Executive Order pending resolution of their own cases.

**B.      The Court Should Enjoin Invidiously Discriminatory Government Action**

Because other courts' injunctions do not restrict this Court's ability to enjoin §§ 2 and 6, and because Plaintiffs have satisfied all requirements for a preliminary injunction, the only question is whether the Court should nevertheless deny such relief as a matter of discretion. Myriad factors establish that an injunction by this Court against Defendants' invidious discrimination "is in the public interest."  4/21/17 Minute Order.  Further, although Defendants have not requested a stay, the Court inquired about whether it "would be more appropriate to stay a resolution of these motions" until "the Fourth and Ninth Circuits" rule.  4/21/17 Hr'g Tr. 7-8.  No stay is warranted.  Where relief is otherwise appropriate, a court should not stay its issuance unless the need for a stay "overrides the injury to the parties being stayed," especially in cases involving "a not insubstantial claim of present and continuing infringement of

3

constitutional rights." *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971); *see Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 2016 WL 5675348, at *7 (D.D.C. 2016). Although courts may consider whether deferring to parallel litigation may narrow issues or promote efficiency, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

In addition to the ongoing harms suffered by Plaintiffs, there are at least six reasons why this Court should grant an injunction against §§ 2 and 6 notwithstanding other courts' injunctions. *First*, if the Government were to prevail on any ground in the Ninth and Fourth Circuits—even were this Court prepared to promptly consider a TRO request—any lapse in the injunctions against §§ 2 and 6 would further imperil the ability of the individual plaintiffs and the organizational plaintiffs' constituents and members to travel freely, maintain family relationships, and practice their faith, increasing the irreparable harm to Plaintiffs. Avoiding these harms alone impels the exercise of discretion in favor of a preliminary injunction now.

*Second*, reasoned opinions by multiple courts will develop the law on, and aid any Supreme Court review of, the critically important questions here about invidious religious and national-origin discrimination and the scope of executive authority. *See Johnson*, 969 F.2d at 1093. This factor bears special significance here because these are the only cases that would permit the D.C. Circuit to address whether the Executive Order reflects unconstitutional animus. These cases thus are nothing like *Washington v. Trump*, where the District of Washington stayed entry of a TRO pending the Ninth Circuit's resolution of the Government's appeal of the District of Hawaii's injunction. No. 17-cv-135, 2017 WL 1057645 (D. Wash. Mar. 17, 2017). The stay there will not prevent the Ninth Circuit from deciding the issues in the Hawaii appeal, and the District of Washington, unlike this Court, will be bound by the Ninth Circuit's decision.

4

*Third*, Plaintiffs ask this Court to enjoin not only §§ 2 and 6 of the March 6 Executive Order, but also §§ 3 and 4, which have not yet been enjoined. Section 3 establishes a system of separate but *un*equal treatment for visa applicants from the affected countries. Section 4 requires heightened scrutiny for Iraqis seeking visas, admission, or any other immigration benefit. The same discriminatory animus behind §§ 3 and 4 equally infects §§ 2 and 6. As a matter of judicial economy, it makes sense to rule on §§ 2 and 6 when addressing the parallel flaws in §§ 3 and 4.[2]

*Fourth*, if the Supreme Court hears challenges to the March 6 Executive Order at the preliminary-injunction stage, *see, e.g.*, *United States v. Texas*, 136 S. Ct. 2271 (2016) (mem.), the *PARS* and *UMAA* cases present important complements to the Hawaii and Maryland suits. The *PARS* case presents a highly developed factual record, including declarations and live testimony concerning ongoing harms suffered by Plaintiffs and others. Similarly, UMAA is the only litigant to raise a First Amendment "right to listen" claim, and the Hawaii and Maryland rulings do not address Equal Protection or other claims raised in the *PARS* and *UMAA* cases.

*Fifth*, conversely, Defendants have not identified, much less substantiated, any specific need for a stay or hardship imposed by an overlapping injunction against §§ 2 and 6.

---

[2]     Section 4 is far more than a policy statement. *Cf.* Hr'g Tr. 27-28. On March 17, 2017, pursuant to § 4, the Secretary of State ordered consular officials worldwide to conduct additional vetting when adjudicating Iraqis' visa applications, causing significant processing delays (and presumably resulting in additional denials). *See* Mem. from Sec'y of State to Diplomatic and Consular Posts, Mar. 17, 2017, at §§ 11, 12, http://live.reuters.com/Event/Live_US_Politics /791255396 (explaining that the Order "contemplate[s] additional screening for Iraqi nationals in addition to the robust vetting already in place," and directing consular officials to submit a Donkey Security Advisory Opinion for any Iraqi applicant who was ever present in a territory controlled by ISIS); *Li v. Chertoff*, No. C-08-3540 MMC, 2008 WL 4962992, at *2 n.3 (N.D. Cal. Nov. 19, 2008) (government estimated it would take "three to six months" to issue Security Advisory Opinion). Section 1(g) underscores the effect of § 4: "Decisions about issuance of visas or granting admission to Iraqi nationals should be subjected to additional scrutiny."

*Finally*, the March 6 Executive Order reflects rank discriminatory animus against a discrete, insular, and politically unpopular minority.  This is precisely when courts should act, not stay their hand.  Deferring judgment on Defendants' attempt to ban Muslims from entering the country withholds judicial condemnation of the type of unconstitutional, bigoted conduct that courts should condemn.  That other courts have issued injunctions does not eliminate the significance and obligation of this Court to declare what the law is.

## II.      The Court Has Broad Power To Grant Relief Restoring the Status Quo Ante

The Court next asked:  "If the court intends to issue injunctive relief specific to the individual plaintiffs, what would be the scope of that injunction and what authority does the court have to issue it."  The individual plaintiffs—many of whom are proceeding anonymously—have not requested relief specific to themselves.  Attempting to provide relief specific to the Doe plaintiffs would likely require them to waive their anonymity, potentially exposing them to retaliation by foreign regimes, the U.S. government, or hostile elements of the public.  Moreover, measures limited to individual plaintiffs would provide no relief to the organizational plaintiffs, which continue to be harmed by the March 6 Executive Order and Defendants' ongoing violations of constitutional rights.  Plaintiffs accordingly believe that the broader relief they request, as described in Part III below, is appropriate and preferable.

That said, the Court has ample equitable authority to grant relief restoring individual plaintiffs (and others similarly impacted by the Executive Orders) to the positions they held on January 26.  "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.  Flexibility rather than rigidity has distinguished it."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *see also United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 496 (2001).  Federal courts possess the "deep-rooted power of equity to do what is necessary and appropriate to achieve

6

justice in the individual case." *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 (D.C. Cir. 1984). That broad discretion encompasses the authority to restore the status quo by returning the parties to the situation preceding the events that spurred these suits.

Key here, the D.C. Circuit has long held that "[t]he usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation"—*i.e.*, the "last uncontested status which preceded the pending controversy." *Cobell v. Kempthorne*, 455 F.3d 301, 315 (D.C. Cir. 2006) (citing *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)). For example, in *League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), the court issued a preliminary injunction requiring the U.S. Election Assistance Commission and the State of Kansas to take "all actions necessary to restore the status quo ante," including reversing denial of voter registrations. *Id.* at 15.

The scope of the relief necessary to restore the parties to the status quo depends on the balance of equities, weighing the harms to the plaintiffs and the public interest absent an injunction against the harms and burdens for the defendants if an injunction issues. *Id.* at 12-15. In the context of injunctive relief against the government, mere administrative inconvenience is insufficient to tip the scale against enjoining unlawful action, particularly where the government has existing systems and "procedures in place" that enable it to comply with the injunction. *Id.*

In analogous contexts, courts have generally relieved the government of its duty to restore the status quo ante *only* where doing so would have been practically impossible—where "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante," *Sugar Cane Growers Co-Op of Florida v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002)—or where a rule's defects did not outweigh widespread chaos and disruption from vacating the rule, *see Allied-Signal, Inc. v. U.S. Nuclear Regulator Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993).

7

To restore the status quo as to the individual plaintiffs, the Court could order Defendants to take the following actions:

- Take a "second look" at the post-January 27 summary denials of visa applications of the relatives of *PARS* plaintiffs Ali Asaei and Jane Doe #13, according to standards and procedures in place on January 26, 2017.

- Review the visa applications of *PARS* plaintiffs Jane Doe #1's fiancé, the parents of Jane Doe #4, the husband of Jane Doe #10, the parents of Shiva Hissong, and the wife of John Doe #3, which remain pending eight weeks after interview, to ensure that the applications are being timely processed under the standards and procedures in place on January 26, 2017, and that any delay is unrelated to the Executive Orders.

- Process the refugee applications of *PARS* plaintiffs Jane Does #8 and #9 and John Does #7 and #8 under the standards and procedures in place on January 26, 2017.

- Instruct relevant officials not to deny the *UMAA* Doe plaintiffs' children entry to the United States for any reason related to the March 6 Executive Order.

Plaintiffs do not ask the Court to direct a particular outcome in any individual case. Rather, Plaintiffs request an injunction to "compel the agency *to act*," leaving "the manner of [the agency's] action . . . to the agency's discretion." *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (internal quotation marks omitted); *accord Patel v. Reno,* 134 F.3d 929 (9th Cir. 1997) (doctrine of consular non-reviewability did not preclude ordering the agency to make a final visa determination). Courts commonly exercise their equitable power in this way by, for example, compelling action that an agency has unreasonably withheld. *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706). This is how courts considering challenges to the Executive Orders have generally fashioned relief as to individuals. *See, e.g.*, *Doe v. Trump*, 3:17-cv-00112 (W.D. Wis. Mar. 10, 2017), ECF Nos. 9, 14 (in response to a request that the government be ordered "to finish processing [his] derivative asylum petition" for his wife and daughter, the court ordered the government to provide an update on "the current status of plaintiff's request for derivative asylum for his wife and surviving daughter").

8

### III.     The Court Can and Should Grant the Broader Relief Requested By Plaintiffs

In response to the Court's final question, the Court has "the authority . . . to issue the

proposed injunctive relief in Section 2 of the Pars Proposed Preliminary Injunction (with

particular focus on 2(e)) and Sections 4-9 of the UMAA Proposed Preliminary Injunction."

The original Proposed Orders submitted by the *PARS* and *UMAA* plaintiffs requested

overlapping relief.  For example, both § 2 of the *PARS* Proposed Order and §§ 6-8 of the *UMAA*

Proposed Order pertained to the issuance or rescission of guidance regarding the Executive

Orders.  For clarity and convenience, and to conform the proposed orders to the record, the *PARS*

and *UMAA* plaintiffs attach a consolidated proposed order as Exhibit A.  The Court has authority

to issue the relief set forth in this consolidated proposed order for the reasons described above—

it can grant preliminary relief to "restore the status quo ante."  *Newby*, 838 F.3d at 15.[3]

#### A.     The Court Should Grant Relief To Fully Restore the Status Quo

The balance of equities favors the broader relief that Plaintiffs seek to fully restore the

status quo ante.  Plaintiffs face significant, ongoing harm from the Executive Orders that other

courts' injunctions have not remedied.  *See* PI Mem. 18-23, 40-42 (*PARS* Doc. 35-1); PI Mem.

15-20, 31-36, 40-41 (*UMAA* Doc. 11-1).  On the other side of the balance, there is "generally no

public interest in the perpetuation of unlawful agency action."  *Newby*, 838 F.3d at 12.  Instead,

the public interest lies in the government's compliance with "the federal laws that govern [its]

---

[3]     At the April 21 hearing, Defendants' counsel characterized Plaintiffs' requested relief as a "mandatory injunction" that triggers a heightened standard.  4/21/17 Hr'g Tr. 53-54.  But the D.C. Circuit has stated that "a line between mandatory and prohibitory injunctions . . . is an illusion and cannot be maintained."  *United States v. W. Elec. Co.*, 46 F.3d 1198, 1206 (D.C. Cir. 1995); *see Newby*, 838 F.3d at 7.  In any event, while courts have refrained from ordering payments of disputed amounts or other preliminary relief beyond restoring the status quo, there are no impediments to ordering restorative relief here.  *Compare Bradshaw v. Veneman*, 338 F. Supp. 2d 139, 144 (D.D.C. 2004), *with Newby*, 838 F.3d at 14-15 (reversing implementation of voter registration form), *and Tex. Children's Hospital v. Burwell*, 76 F. Supp. 3d 224, 247 (D.D.C. 2014) (ordering government to issue formal notification that its guidance was enjoined).

9

existence and operations." *Id.*  As described below, moreover, Plaintiffs' requested relief is discrete, administrable, and narrowly tailored; it requires no unscrambling of the egg.

Plaintiffs seek relief with respect to five discrete categories of affected individuals:

**1.  *Consular Interviews Cancelled.*  Paragraph 2(a) of the consolidated order requires Defendants to offer prompt consular interviews to nationals of the affected countries whose appointments were cancelled as a result of the Executive Orders.  *See* 4/18/17 Hr'g Tr. 27-28; IABA Decl. ¶¶ 28, 34 (*PARS* Doc. 35-2, Ex. 2); NIAC Decl. ¶ 42 (*PARS* Doc. 35-2, Ex. 3). Defendants can identify these individuals through the State Department's electronic records of appointments, 9 FAM 403.3-2, and the Consular Coordinated Database ("CCD")—a centralized database containing information about all visa applications and determinations.

**2.  *Visa Applications Denied*.  Paragraph 2(b) of the order requires Defendants to review visa denials since January 26, 2017 to individuals who had previously been granted visas.  Since the January 27 Executive Order, Defendants have denied visas to individuals who previously received  visas to enter the United States, some of whom were asked about their religion.  *See* Asaei Decl. ¶¶ 10-14 (*PARS* Doc. 35-2, Ex. 5); Jane Doe #13 Decl. ¶¶ 18-20 (*PARS* Doc. 35-2, Ex. 14); NIAC Decl. ¶ 47 (*PARS* Doc. 35-2, Ex. 3); IABA Decl. ¶¶ 39-40 (*PARS* Doc. 35-2, Ex. 2); 4/18/17 Hr'g Tr. 27-28, 47-48.  Using the CCD, Defendants can identify visa applicants who previously obtained a visa but were denied one after January 27.  The State Department has established procedures for giving a "second look" to visa determinations, both routinely and where questions arise about the denial.  *See* 9 FAM 403.10-3(D).

**3.  *Visa Processing Suspended.*  Paragraph 2(c) of the order requires the Defendants to review visa applications of individuals from the affected countries that remain pending eight weeks after interview to ensure that they are being timely processed under the standards and procedures in place on January 26, 2017.  After issuance of the January 27 Executive Order,

Defendants suspended processing of visa applications for individuals from the affected countries. *See, e.g.*, Jane Doe #1 Decl. ¶¶ 11-23 (*PARS* Doc. 35-2, Ex. 7); Jane Doe #4 Decl. ¶¶ 4, 7 (*PARS* Doc. 35-2, Ex. 8); Jane Doe #10 Decl. ¶¶ 11-13 (*PARS* Doc. 35-2, Ex. 11); Hissong Decl. ¶¶ 21-22 (*PARS* Doc. 35-2, Ex. 6); John Doe #3 Decl. ¶¶ 5-7 (*PARS* Doc. 35-2, Ex. 16A); PARS Decl. ¶¶ 23-25 (*PARS* Doc. 35-2, Ex. 1); IABA Decl. ¶¶ 28, 34, 37 (*PARS* Doc. 35-2, Ex. 2); 4/18/17 Hr'g Tr. 28, 48.  State Department policy generally requires that visa determinations be made quickly; the Department frequently makes such determinations within a day of the interview, although in some cases, there may be a delay while the consular officer seeks a Security Advisory Opinion (SAO).  *See* 9 FAM 403.10-2(A); 9 FAM 504.9-2 ("Once an application has been executed, you must either issue the visa or refuse it.").  Using the CCD, Defendants can identify particular visa applicants who filed or had applications pending after January 26, 2017, and who have waited an inordinate amount of time for a determination—more than seven days where no SAO was sought, or more than six weeks where an SAO was sought.

   **4. *Visas Physically Cancelled.***  Paragraph 2(d) of the order seeks reissuance of visas that were physically cancelled.  Defendants physically cancelled some individuals' valid visas in the wake of the January 27 Executive Order, and have not reissued them.  *See PARS* Am. Compl. ¶ 3.  The State Department can easily identify these visas through the CCD and reissue them.

   **5. *Refugee Applications Delayed.***  Paragraph 3 of the order requires Defendants to offer field interviews to refugees whose USCIS interviews were cancelled or delayed as a result of the Executive Orders.  After January 27, 2017, Defendants suspended processing of refugee applications, and USCIS stopped conducting field interviews for individuals from the affected countries.  *See* John Doe #7 Decl. ¶¶ 7-9 (*PARS* Doc. 35-2, Ex. 18A), John Doe # 8 Decl. ¶¶ 7-9 (*PARS* Doc. 35-2, Ex. 19A); Jane Doe #8 Decl. ¶¶ 15-19 (*PARS* Doc. 35-2, Ex. 9); Jane Doe #9 Decl. ¶¶ 14-18 (*PARS* Doc. 35-2, Ex. 10); PARS Decl. ¶¶ 16-21 (*PARS* Doc. 35-2, Ex. 1).  The

U.S. Refugee Admission Program can identify affected refugees through an existing database of all refugee applications—the Worldwide Refugee Admissions Processing System ("WRAPS").

### B.     Defendants Should Publish Guidance Notifying Government Officials and Affected Individuals that the Pre-January 27 Status Quo Has Been Restored

Defendants have continued their differential treatment of individuals from the affected countries despite the injunctions against §§ 2 and 6 of the March 6 Executive Order, creating uncertainty and confusion.  *See, e.g.*, *UMAA* Am. Compl. ¶¶ 74-80; Jane Doe #11 Decl. ¶¶ 16-22 (*PARS* Doc. 35-2, Ex. 12); Jane Doe #12 Decl. ¶¶ 10-12 (*PARS* Doc. 35-2, Ex. 13); John Doe #1 Decl. ¶¶ 14-18 (*PARS* Doc. 35-2, Ex. 15).  Because unlawful implementation of enjoined or rescinded provisions often takes the form of instructions to consular officials to delay and deny entry, the Court should require that Defendants publish guidance regarding current policies and procedures to ensure restoration of the pre-January 27 status quo.[4]  Courts routinely enter such relief in conjunction with preliminary injunctions.  *See, e.g.*, *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 247 (D.D.C. 2014) (ordering government to issue formal notification that its guidance was enjoined).  Requiring Defendants to disclose their current policies and procedures would help ensure that Defendants have in fact restored the pre-January 27 status quo.  *Cf. Darweesh v. Trump*,  No. 17-cv-480, Dkt. No. 173 at 4 (E.D.N.Y. Feb. 2, 2017) (court order requiring the government to provide to petitioners a list of individuals).

### CONCLUSION

Plaintiffs' motions for preliminary injunction in *PARS* and *UMAA* should be granted.

---

[4]     For example, since January 27, 2017, some visa applicants have been advised by consular personnel that they needed to file new applications to restart the process.  *See* NIAC Decl. ¶ 47 (*PARS* Doc. 35-2, Ex. 3).  Defendants' guidance should make clear to both consular personnel and visa applicants that neither the January 27 Executive Order nor the March 6 Executive Order has had any effect on the status of an individual's visa application, and that no new visa application must be submitted as a result of either Executive Order.

Dated:  April 27, 2017

Respectfully submitted,

/s/ David J. Weiner
David J. Weiner (D.C. Bar # 499806)
Charles A. Blanchard (D.C. Bar # 1022256)
Amanda J. Sherwood (D.C. Bar # 1021108)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
david.weiner@apks.com
charles.blanchard@apks.com
amanda.sherwood@apks.com

Emily Newhouse Dillingham
ARNOLD & PORTER
   KAYE SCHOLER LLP
70 West Madison Street
Chicago, IL 60602
(312) 583-2300
(312) 583-2360 (fax)
emily.dillingham@apks.com

Andrew D. Bergman
ARNOLD & PORTER
   KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002
(713) 576-2400
(713) 576-2499 (fax)
andrew.bergman@apks.com

Johnathan Smith
Aziz Huq
MUSLIM ADVOCATES
P.O. Box 71080
Oakland, CA 94612
(415) 692-1484
johnathan@muslimadvocates.org
aziz.huq@gmail.com

/s/ John A. Freedman
John A. Freedman (D.C. Bar # 453075)
David P. Gersch (D.C. Bar # 367469)
R. Stanton Jones (D.C. Bar # 987088)
Nancy L. Perkins (D.C. Bar # 421574)
Ronald A. Schechter (D.C. Bar # 245019)
Robert N. Weiner (D.C. Bar # 298133)
Samuel M. Witten (D.C. Bar # 378008)
Sally L. Pei (D.C. Bar # 1030194)
Sonia Tabriz (D.C. Bar # 1025020)
Stephen K. Wirth (D.C. Bar # 1034038)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
john.freedman@apks.com

Christopher M. Odell*
ARNOLD & PORTER
   KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002
(713) 576-2400
(713) 576-2499 (fax)
christopher.odell@apks.com

Susan S. Hu*
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(303) 836-8689 (fax)
susan.hu@apks.com

13

Richard B. Katskee (D.C. Bar # 474250)
Bradley Girard (D.C. Bar # 1033743)
AMERICANS UNITED FOR
  SEPARATION OF CHURCH AND
  STATE
1310 L Street, NW, Suite 200
Washington, DC 20005
(202) 466-3234
(202) 466-3353 (fax)
katskee@au.org
girard@au.org

Gillian B. Gillers
Kristi L. Graunke
Naomi R Tsu
SOUTHERN POVERTY LAW
  CENTER
1989 College Ave., NE
Atlanta, GA 30317
(404) 521-6700
(404) 221-5857 (fax)
gillian.gillers@splcenter.org
kristi.graunke@splcenter.org
naomi.tsu@splcenter.org

*Counsel for Plaintiffs in Case No. 17-cv-537*

Adrienne D. Boyd*
ARNOLD & PORTER
  KAYE SCHOLER LLP
370 Seventh Street, Suite 4400
Denver, CO 80202
(303) 863-1000
(303) 832-0428 (fax)
adrienne.boyd@apks.com

Cyrus Mehri (D.C. Bar # 420970)
Joanna K. Wasik (D.C. Bar # 1027916)
Amelia Friedman (D.C. Bar # 1033583)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
(202) 822-5100
(202) 822-4997 (fax)
cmehri@findjustice.com

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
LAWYERS' COMMITTEE FOR
  CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW, Suite 400
Washington, DC 20005
(202) 662-8600
(202) 783-0857 (fax)
jgreenbaum@lawyerscommittee.org

*Counsel for Plaintiffs in Case No. 17-cv-255*

\*Pro hac vice motion pending