## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
PARS EQUALITY CENTER, *et al.*,         )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )       Civil Action No. 1:17-cv-00255-TSC
                                        )
DONALD J. TRUMP, *in his official*      )
capacity as President of the            )
United States, *et al.*,                )
                                        )
                    Defendants.         )
_____)
                                        )
UNIVERSAL MUSLIM ASSOCIATION            )
OF AMERICA, *et al.*,                   )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )       Civil Action No. 1:17-cv-00537-TSC
                                        )
DONALD J. TRUMP, *in his official*      )
*capacity as President of the*          )
*United States*, *et al.*,              )
                                        )
                    Defendants.         )
_____)


## DEFENDANTS' RESPONSE TO PLAINTIFFS' JOINT SUPPLEMENTAL BRIEF
## REGARDING PRELIMINARY RELIEF

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

I.      Plaintiffs Ignore Two Fundamental Principles Governing the Court's Authority to
        Issue Relief................................................................................................................. 1

II.     Plaintiffs Cannot Establish Irreparable Harm Given the Existing Injunctions. .................. 3

III.    Plaintiffs Have Not Justified Entry of Relief as to the Individuals..................................... 6

        A.     Plaintiffs Fail to Submit Any Evidence Connecting Their Claimed Injuries
               to the March 6 Order. ............................................................................................. 6

        B.     Plaintiffs' Proposed Relief Violates Principles of Consular Non-
               Reviewability. ....................................................................................................... 7

IV.     The Broad Relief Requested Is Factually Unsupported and Legally Unfounded.............. 8

        A.     Plaintiffs Have Failed to Submit Evidence Establishing Their Alleged
               Harms. ................................................................................................................... 9

        B.     Plaintiffs' Alleged Harms Have No Connection to the March 6 Order. ................. 9

        C.     The Proposed Relief Would Not Benefit the Plaintiffs. ....................................... 10

        D.     Plaintiffs' Requested Relief Would Be Highly Intrusive and Burdensome. ......... 11

V.      At a Minimum, the Court Should Stay Consideration of Plaintiffs' Motions.................. 12

CONCLUSION............................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Adams v. Vance*,
  570 F.2d 950 (D.C. Cir. 1978) .................................................... 6

*Al-Mowafak v. Trump*,
  No. 3:17-cv-00557-WHO (N.D. Cal. Apr. 18, 2017) ...................................................... 4, 5, 12

*Ali v. Trump*,
  2017 WL 1057645 (W.D. Wash. Mar. 17, 2017) ........................................................ 3, 4, 5, 12

*Castillo v. Rice*,
  581 F. Supp. 2d 468 (S.D.N.Y. 2008) ......................................................... 8

*\*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ........................................................ 1

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) ........................................................ 11

*Cobell v. Norton*,
  428 F.3d 1070 (D.C. Cir. 2005) ........................................................ 11, 12

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004)........................................................................ 3

*Fla. Audubon Soc. v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) ........................................................ 11

*Florida ex rel. Bondi v. Dep't of Health & Human Servs.*,
  780 F. Supp. 2d 1307 (N.D. Fla. 2011) ......................................................... 4

*Hawaii v. Trump*,
  2017 WL 536826 (D. Haw. Feb. 9, 2017)........................................................ 3, 5, 12

*Henke v. Dep't of Interior*,
  842 F. Supp. 2d 54 (D.D.C. 2012) .......................................................... 5

*\*Li Hing of Hong Kong, Inc. v. Levin*,
  800 F.2d 970 (9th Cir. 1986)........................................................ 8

*Lewis v. Casey*,
  518 U.S. 343 (1996)........................................................................ 2, 10

*Rizzo v. Goode*,
423 U.S. 362 (1976)................................................................. 12

*\*Saavedra Bruno v. Albright*,
197 F.3d 1153 (D.C. Cir. 1999)................................................. 8

*Sarsour v. Trump*,
2017 WL 1113305 (E.D. Va. Mar. 24, 2017) ........................... 10

*\*Save Jobs USA v. Dep't of Homeland Sec.*,
105 F. Supp. 3d 108 (D.D.C. 2015) .............................. 2, 3, 10

*\*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974)................................................................... 2

*\*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................... 2

*Sweis v. U.S. Foreign Claims Settlement Comm'n*,
950 F. Supp. 2d 44 (D.D.C. 2013) ........................................... 4

*United States v. Borden Co.*,
347 U.S. 514 (1954)................................................................... 4

*United States v. Cty. of Maricopa*,
151 F. Supp. 3d 998 (D. Ariz. 2015) ........................................ 4

*Wash. v. Trump*,
2017 WL 1050354 (W.D. Wash. Mar. 17, 2017) ............... 3, 5, 12

*Wash. v. Trump*,
847 F.3d 1151 (9th Cir. 2017) .................................................. 5

*Wash. v. Trump*,
2017 WL 1045950 (W.D. Wash. Mar. 16, 2017) .................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)....................................................................... 3

*\*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) .................................................. 1

## FEDERAL REGULATIONS

Exec. Order No. 13,780, 82 Fed. Reg. 13,209 (Mar. 6, 2017).............................. *passim*

**INTRODUCTION**

This Court's Minute Order of April 21, 2017 directed Plaintiffs to answer three specific questions regarding the legal authority for their requested relief.  Rather than heed the Court's instruction to "tailor [the briefing] very precisely to those questions," PI Hr'g Tr. at 88 (Apr. 21, 2017), Plaintiffs' supplemental memorandum instead demands new forms of relief—going far beyond what either set of Plaintiffs had previously requested.  Even if the Court were to entertain this belated attempt to expand the requested relief, such relief in any event is unsupported both legally and factually.  None of the Plaintiffs in these lawsuits would be aided by a third nationwide injunction, Plaintiffs have not submitted any evidence substantiating the alleged ongoing harms they seek to redress, and the Court cannot enter an injunction based on hypothetical injuries suffered by unknown individuals wholly unconnected to this case.  Ultimately, Plaintiffs are not seeking relief tailored to any documented irreparable harm they are suffering, but are instead requesting that this Court become a global superintendent of the visa application process and refugee admissions operations.  This Court should deny Plaintiffs' request as such intrusive relief is not legally available or practically possible or, at a minimum, stay consideration of Plaintiffs' motions pending resolution of the ongoing appeals of the existing injunctions.

**I.      Plaintiffs Ignore Two Fundamental Principles Governing the Court's Authority to Issue Relief.**

Plaintiffs' supplemental memorandum fails to acknowledge two fundamental principles limiting this Court's ability to issue relief.  *First*, Plaintiffs bear the burden of demonstrating that *they* will suffer irreparable harm in the absence of the particular relief requested.  *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("To warrant preliminary injunctive relief, the moving party must show . . . it would suffer irreparable injury if the injunction were not granted[.]"); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("[T]he movant

must show that the alleged harm will directly result from the action which the movant seeks to enjoin."); *accord Lewis v. Casey*, 518 U.S. 343, 358 (1996) (observing that inadequacies that "have not been found to have harmed any plaintiff in this lawsuit . . . were not the proper object of this District Court's remediation"). And Article III requires Plaintiffs to establish "standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted); *see Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974) ("The desire to obtain sweeping relief cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks." (alteration and citation omitted)).

*Second*, in discharging their burden of demonstrating standing and irreparable harm at the preliminary-injunction stage, Plaintiffs are required to come forward with actual evidence proving their injuries. *See Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112-13 (D.D.C. 2015) (Chutkan, J.) ("As these authorities make clear, to meet the standard for irreparable harm the movant must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation."); *see also id.* at 113 (declining to enter preliminary injunction based on predictive statement in affidavit lacking "any corroborating evidence," because "that speculative injury, however possible, is not actual and certain" (citation omitted)).

Here, Plaintiffs' requested relief fails to satisfy these fundamental principles for several reasons: (1) Plaintiffs' purported irreparable harm is not impending, but is instead contingent on the lifting of the two nationwide injunctions already in place; (2) Plaintiffs have not adequately proven that any claimed harms exist, let alone that they are attributable to the challenged March 6 Executive Order; and (3) Plaintiffs' requested relief does not address injuries to themselves, but

rather is designed to redress purported, unproven injuries of individuals unconnected to this suit. As demonstrated below, each of these grounds requires that Plaintiffs' requested relief be denied.

## II.      Plaintiffs Cannot Establish Irreparable Harm Given the Existing Injunctions.

Plaintiffs cannot demonstrate that they are suffering any "certain, great, actual, imminent" injury, *Save Jobs USA*, 105 F. Supp. 3d at 112-13, because provisions of the challenged Order have already been enjoined nationwide by two other district courts.  Instead, Plaintiffs offer a series of policy arguments that they contend support "the exercise of discretion in favor of a preliminary injunction now."  Pls.' Suppl. Br. at 4 (ECF No. 80).  Those arguments are irrelevant, however, unless Plaintiffs have satisfied the prerequisites governing entry of a preliminary injunction—an "extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Pertinent here, the requirement that a party show irreparable harm restricts a court's authority to enter a duplicative nationwide injunction.  *See Pars*, ECF No. 26. Either Plaintiffs are not currently harmed (due to the nationwide injunctions), or their harms are not judicially redressable (because existing nationwide injunctions did not redress them).

As for their policy arguments, Plaintiffs note that "multiple courts have issued overlapping injunctions blocking both of President Trump's Executive Orders on immigration."  Pls.' Suppl. Br. at 1 (citation omitted).  But none of the decisions cited by Plaintiffs addressed the irreparable harm argument advanced here.  *Cf. Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quotation omitted)).  And of course, Plaintiffs largely ignore the several decisions *staying* requests for preliminary relief after entry of nationwide injunctions.  *See Hawaii v. Trump*, 2017 WL 536826 (D. Haw. Feb. 9, 2017); *Washington v. Trump*, 2017 WL 1050354 (W.D. Wash. Mar. 17, 2017); *Ali*

*v. Trump*, 2017 WL 1057645 (W.D. Wash. Mar. 17, 2017); *Al-Mowafak v. Trump*, No. 3:17-cv-

00557-WHO (N.D. Cal. Apr. 18, 2017), ECF No. 63.[1]  Furthermore, in each of the cases relied

upon by Plaintiffs, the challengers filed their preliminary injunction motions *prior* to any

nationwide injunctions—so they could still argue that their interests were "either threatened or in

fact being impaired *at the time* the movant seeks injunctive relief."  *Sweis v. U.S. Foreign Claims*

*Settlement Comm'n*, 950 F. Supp. 2d 44, 49 (D.D.C. 2013) (quotation omitted).  Here, Plaintiffs

filed their motions *after* the District of Hawaii had already entered its injunction.

Plaintiffs also rely on purported "overlapping orders" in Affordable Care Act litigation, but

none involved *nationwide* orders.  *See, e.g.*, *Florida ex rel. Bondi v. Dep't of Health & Human*

*Servs.*, 780 F. Supp. 2d 1307, 1318 (N.D. Fla. 2011) ("[M]y declaratory judgment, of course, only

applies to the parties to this litigation.").  Moreover, all three involved final judgments on the

merits, and none involved *injunctive* relief at all, only declaratory judgments.  Those cases thus

provide no support for a third preliminary, nationwide injunction here.[2]

More generally, Plaintiffs argue that courts regularly permit parallel litigation against the

Government.  Pls.' Suppl. Br. at 2.  But those cases support the Government's position that courts

should not issue nationwide injunctions against Government policies in the first instance (as has

---

[1]      Plaintiffs acknowledge only the *Ali* decision (which they incorrectly caption as *Washington v. Trump*), and assert that these cases are different because this Court will not be "bound by the Ninth Circuit's decision" in the *Hawaii* appeal.  Pls.' Suppl. Br. at 4.  It is far from clear, however, that the individual plaintiffs in *Ali* will be bound by the Ninth Circuit's decision in *Hawaii*—*e.g.*, if the Ninth Circuit were to reverse the preliminary injunction on grounds particular to the *Hawaii* plaintiffs, such as standing or irreparable harm.

[2]      Plaintiffs' other cited cases—*United States v. Borden Co.*, 347 U.S. 514 (1954), and *United States v. Cty. of Maricopa*, 151 F. Supp. 3d 998 (D. Ariz. 2015), *appeal docketed*, No. 15-17558 (9th Cir. Dec. 31, 2015)—allowed the Attorney General to seek an injunction after a private party had obtained such relief, due to the United States' unique law-enforcement duties.  *Borden*, 347 U.S. at 518-20; *Maricopa*, 151 F. Supp. 3d at 1011-13.  Those cases do not support private parties obtaining duplicative preliminary relief.

occurred here).  And none speaks to whether a court should proceed with a duplicative request for preliminary relief even after a nationwide injunction has already been entered.  Nor can Plaintiffs seriously accuse the Government of seeking "a one-way ratchet in their efforts to defend the Executive Orders."  *Id.* at 3.  Rather, it is Plaintiffs who, by seeking nationwide injunctions, have sought to "improperly skew" the law by prohibiting *any* enforcement of the Order even though, as Plaintiffs acknowledge, some courts have concluded that the Order is lawful.  *Id.* at 1 n.1, 3.

Plaintiffs argue they might suffer irreparable harm in the future, if the Government's appeals result in the injunctions being vacated or narrowed.  *See* Pls.' Suppl. Br. at 3.  However, that is or was equally true for the *Hawaii*, *Washington*, *Ali*, and *Al-Mowafak* cases, yet those courts still declined to move forward with the plaintiffs' requests for preliminary relief.  Moreover, an injury that is expressly contingent on a future event is, by definition, not an imminent, irreparable injury.  *See Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) ("Injury that is hypothetical or speculative does not rise to the level of irreparable harm.").[3]

Finally, Plaintiffs rely on their challenges to Sections 3 and 4 of the Order, which are not enjoined.  But again, Plaintiffs do not identify any irreparable harm they are currently suffering as a result of those sections.  Moreover, an injunction against Section 3 would be senseless:  it would have no practical effect so long as Section 2 remains enjoined, and in the event Section 2 came into force, enjoining Section 3 would effectively *expand* the scope of the Order, despite the Ninth Circuit's invitation for the President to make exactly the type of distinctions that Section 3's exceptions and waivers provide.  *See Washington v. Trump*, 847 F.3d 1151, 1167 (9th Cir. 2017).

---

[3]     Plaintiffs incorrectly assert that, if both nationwide injunctions were reversed, it would "caus[e] chaos and uncertainty similar to that seen on January 27."  Pls.' Suppl. Br. at 3.  That assertion ignores fundamental changes between the Revoked Order and the March 6 Order, as discussed at length in the Government's prior briefings with the Court.

As for Section 4, the injunction Plaintiffs seek—prohibiting the use of information from the Iraqi government "concerning individuals suspected of ties to ISIS or other terrorist organizations and individuals coming from territories controlled or formerly controlled by ISIS," Exec. Order No. 13,780 § 4—highlights Plaintiffs' overreach into the Executive Branch's foreign affairs and national security judgments, including to otherwise non-reviewable aspects of a consular official's duty to vet appropriately applicants for visas.  Such intrusion should not be undertaken at all, much less on a record that lacks evidence of irreparable harm.  *See Adams v. Vance*, 570 F.2d 950, 954-55 (D.C. Cir. 1978) ("extraordinarily strong showing" required when injunction "deeply intrudes into the core concerns of the executive branch").

### III.     Plaintiffs Have Not Justified Entry of Relief as to the Individuals.

Plaintiffs acknowledge that the individual plaintiffs "have not requested relief specific to themselves."  Pls.' Suppl. Br. at 6.  That statement, by itself, explains why no such relief should be granted.  The forms of relief that Plaintiffs do mention are impermissible for several reasons.

### A.     Plaintiffs Fail to Submit Any Evidence Connecting Their Claimed Injuries to the March 6 Order.

The sole policy being challenged in Plaintiffs' motions for preliminary injunction is the March 6 Order.  *See Pars* PI Mot. (ECF No. 35) at 1 ("Plaintiffs seek to enjoin Defendants from enforcing or implementing certain provisions of President Donald J. Trump's Executive Order No. 13,780[.]"); *UMAA* PI Mot. (ECF No. 11) at 1-2 (same).  Plaintiffs, however, mention several forms of relief directed at events occurring before the March 6 Order was even signed.  *See* Pls.' Suppl. Br. at 8.  The denials of visa applications for relatives of Ali Asaei and Jane Doe #13 all occurred prior to March 6, 2017.  *See Pars* PI Mot., Asaei Decl. ¶ 14 (Exh. 5); Jane Doe #13 Decl. ¶ 14 (Exh. 14).  And with respect to the visa applications of Jane Doe #1's fiancé, the parents of Jane Doe #4, the husband of Jane Doe #10, the parents of Shiva Hissong, and the wife of John Doe

#3, all of them appear to have made visa applications (and were adjudicated and refused for administrative processing) in October 2016 or November 2016—months prior to the March 6 Order.  Plaintiffs have therefore failed to submit any evidence demonstrating a connection between the challenged March 6 Order and the alleged injuries that would be redressed by these forms of relief.  Nor could Plaintiffs plausibly establish such a connection, given that relevant portions of the March 6 Order were enjoined prior to its effective date, and thus have never been implemented.

With respect to the two claimed injuries potentially occurring in the future, Plaintiffs fail to prove the existence of these injuries or their connection to the March 6 Order.  For example, Plaintiffs propose an order directing the Government to "[p]rocess the refugee applications" of *Pars* Plaintiffs, Jane Does #8 and #9, and John Does #7 and #8.  Pls.' Suppl. Br. at 8.  But there is no evidence that those refugee applications are currently *not* being processed.  Nor is there any basis for connecting any alleged delay in processing those applications to the March 6 Order.  Plaintiffs' theories of harm assume that, although relevant portions of the Order have been enjoined (and therefore have never been implemented), they are still somehow having a lasting effect.  That assumption is remarkable, given that there have been no allegations of non-compliance in either of the courts that have actually enjoined the Order.[4]

## B.    Plaintiffs' Proposed Relief Violates Principles of Consular Non-Reviewability.

Even assuming *arguendo* that consular non-reviewability principles do not preclude Plaintiffs' overall claim in this case, those principles certainly preclude the type of intrusive, individualized relief Plaintiffs describe here.

---

[4]    Plaintiffs had also proposed relief for the *UMAA* Doe Plaintiffs' children, but those children have now been admitted to the United States and Plaintiffs have voluntarily dismissed those claims.  *See* Doe Plaintiffs' Notice of Voluntary Dismissal, *UMAA v. Trump*, ECF No. 44.

The doctrine of consular non-reviewability is rooted in the broader principle that "any policy toward aliens" is "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159-60 (D.C. Cir. 1999) (citation omitted). Thus, the doctrine is not limited only to final visa determinations. *See, e.g.*, *Castillo v. Rice*, 581 F. Supp. 2d 468, 474 (S.D.N.Y. 2008) (collecting cases for the proposition that "Petitioners simply do not have a right to an expedited interview date from the Consulate"). Entering the type of relief envisioned by Plaintiffs—*i.e.*, a command to take a "second look" at an already-denied visa application, or to process applications at a certain pace according to certain procedures, *see* Pls.' Suppl. Br. at 8—would be contrary to these longstanding principles.[5] Plaintiffs fail to cite any legal authority that would allow a court to second-guess a consular officer's visa adjudication decision, or to order Defendants to re-review a consular officer's prior adjudication. Indeed, "it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review." *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir. 1986).

## IV.    The Broad Relief Requested Is Factually Unsupported and Legally Unfounded.

Plaintiffs state that, "[f]or clarity and convenience," they have jointly filed a new proposed order. Pls.' Suppl. Br. at 9; *see Pars*, ECF No. 80-1. But Plaintiffs fail to mention that their new proposed order seeks several new forms of relief—even more expansive than what was previously requested. For example, neither set of Plaintiffs' prior proposed orders mentioned conducting "second look" reviews of previously denied applications, *id.* ¶ 2(b); taking various steps regarding "pending" visa applications, *id.* ¶ 2(c); or affirmatively rescheduling refugee interviews, *id.* ¶ 3.

---

[5]    Notably, Plaintiffs do not simply request an injunction prohibiting decisions from being based on the March 6 Order. Rather, they seek to dictate the exact procedures that the Government must employ—*i.e.*, those in place on January 26, 2017. *See* Pls.' Suppl. Br. at 8.

Plaintiffs' belated attempt to inject these new issues into the case should be rejected outright.  But even beyond that, Plaintiffs' requests are also wholly meritless.

### A.      Plaintiffs Have Failed to Submit Evidence Establishing Their Alleged Harms.

Plaintiffs request relief for five categories of individuals, Pls.' Suppl. Br. at 10-11, but do not establish the need for any such relief.  Specifically, Plaintiffs submit no evidence regarding:

1. Any individuals whose consular interviews were cancelled as a result of the Executive Orders, who remain interested in obtaining a visa, and are available for a consular interview, but have not yet been re-scheduled for an interview;

2. Any individuals who were denied visas based solely on the Executive Orders, who remain interested in obtaining a visa, and who have not yet been able to obtain one;

3. Any individuals whose visa applications are not being processed for reasons related solely to the Executive Orders;

4. Any individuals whose visas were physically cancelled, who remain interested in obtaining a visa, and who have not yet been able to obtain one[6]; or

5. Any refugee applicants whose USCIS field interviews were cancelled based solely on the Executive Orders, and who have not yet been re-scheduled for an interview.

Quite simply, Plaintiffs have failed to establish that any of these individuals purportedly suffering harm even exist.  Plaintiffs have therefore failed to carry their burden on this point.

### B.      Plaintiffs' Alleged Harms Have No Connection to the March 6 Order.

Plaintiffs' alleged harms (even if they could be established) stem from the first, now-revoked Executive Order, which is not even being challenged here.

---

[6]      The March 6 Executive Order already addresses this issue.  It specifically provides that "[a]ny individual whose visa was marked revoked or marked cancelled as a result of Executive Order 13769 shall be entitled to a travel document confirming that the individual is permitted to travel to the United States and seek entry."  Executive Order No. 13,780, § 12(d); *see also* U.S. Department of State, Alert: Executive Order on Visas (Mar. 22, 2017), https://travel.state.gov/content/travel/en/news/important-announcement.html ("Any individual in this situation who seeks to travel to the United States should contact the closest U.S. embassy or consulate to request a travel document.").

All of Plaintiffs' claimed harms relate to actions taken during the brief window when the Revoked Order was being implemented (January 27 – February 3, 2017).  However, Plaintiffs' motions for preliminary injunction do not challenge the Revoked Order or contain any arguments as to why that Order was unlawful.  And given the two Orders' differences, Plaintiffs cannot rely on their arguments as to the March 6 Order as a basis for challenging (and seeking relief as to) the Revoked Order.  *Cf. Washington v. Trump*, 2017 WL 1045950, at *3 (W.D. Wash. Mar. 16, 2017) (holding that injunction as to the Revoked Order did not apply to the March 6 Order, given the "substantial distinctions between EO1 and EO2"); *Sarsour v. Trump*, 2017 WL 1113305, at *12 (E.D. Va. Mar. 24, 2017).  Thus, Plaintiffs' current preliminary-injunction motions provide no basis for entering their requested relief: any past injuries attributable to the Revoked Order do not justify an injunction against the legally distinct March 6 Order.

## C.      The Proposed Relief Would Not Benefit the Plaintiffs.

As discussed above (Section I), Plaintiffs must establish not only irreparable harm but also Article III standing for each form of relief sought.  Here, Plaintiffs make no effort to do so:  they seek relief that is designed to remedy hypothetical injuries associated with unknown individuals wholly unconnected to this lawsuit.  Nor can Plaintiffs justify this relief based on the alleged injuries of the organizational Plaintiffs; Plaintiffs have submitted no evidence demonstrating—and certainly no reasonable basis for assuming—that entry of Plaintiffs' proposed order would result in the organizations no longer needing to expend resources on educating the Iranian-American community about this topic, or advocating on their behalf on this topic.  *Cf. Save Jobs USA*, 105 F. Supp. 3d at 112 (declining to enter an injunction based on predictive allegations lacking corroborating evidence).  Because Plaintiffs' requested relief has no connection to the actual parties in this lawsuit, such relief is legally unavailable.  *Lewis*, 518 U.S. at 358.

-10-

**D.      Plaintiffs' Requested Relief Would Be Highly Intrusive and Burdensome.**

Even beyond principles of consular non-reviewability, courts should not attempt to micro-manage the Executive Branch's functions.  *See, e.g.*, *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 672 (D.C. Cir. 1996) (en banc) ("The federal judiciary is not a back-seat Congress nor some sort of super-agency.").  Plaintiffs, however, seek broad-ranging relief that would inevitably require the Court to become a global superintendent, managing various governmental operations overseas. The requested relief would also tie the President's hands in the areas of immigration and national security, including by demanding that the Government apply only those standards and procedures for visa processing that existed on January 26, 2017.  *See* Pls.' Supp. Br. at 10.

This type of relief is precisely the kind criticized by the D.C. Circuit, as demonstrated by the *Cobell v. Kempthorne* litigation upon which Plaintiffs themselves rely.  *See, e.g.*, 455 F.3d 301, 317 (D.C. Cir. 2006) ("A court cannot order programmatic supervision of an agency's operations, nor can it displace an agency as the actor with primary responsibility for carrying out a statutory mandate by prescribing particular tasks for [the agency] to perform based on policies developed by the district court." (citation omitted)); *Cobell v. Norton*, 428 F.3d 1070, 1078-79 (D.C. Cir. 2005) (reversing an injunction that "reflected no deference to defendants' expertise or to their judgment regarding the allocation of scarce resources").

Moreover, as described in the attached declaration, the relief Plaintiffs request in Section 2 of their proposed order (ECF No. 80-1) is either infeasible or would be extremely burdensome. *See* Decl. of Jeremy A. Cornforth ¶¶ 3-6 (May 2, 2017) (filed herein) (explaining, among other things, that the Department of State's Consular Consolidated Database cannot be used to identify individuals whose consular interviews or visas were cancelled as a result of the Executive Orders). And implementing the requested relief likely would have significant negative effects on third

parties, because it would "divert resources from normal visa adjudications, potentially extending visa application interview wait times and the processing of current visa applications for all applicants world-wide." *See id.* ¶ 5. These factors weigh heavily against entry of such relief. *Cf. Cobell*, 428 F.3d at 1077 (reversing injunction because "the district court completely disregarded relevant information about the costs of its injunction").

Particularly based on this record—devoid of irreparable harm—the Court should reject Plaintiffs' invitation to conduct global oversight of the State Department's consular operations. *See Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) ("When a plaintiff seeks to enjoin the activity of a government agency . . . his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." (citation omitted)).

## V.     At a Minimum, the Court Should Stay Consideration of Plaintiffs' Motions.

For the foregoing reasons, the Government respectfully submits that the Court should deny Plaintiffs' motions for preliminary injunction. At a minimum, however, this Court should follow the same course as the courts in *Hawaii*, *Washington*, *Ali*, and *Al-Mowafak*, and stay consideration of Plaintiffs' motions for preliminary injunction pending resolution of the appeals. If circumstances were to change, Plaintiffs could move this Court to lift the stay, at which point the Court—having already received lengthy briefing and heard oral argument—would be in a position to act promptly. As of right now, however, there is no need for urgent action, and therefore this Court should, at a minimum, stay consideration of Plaintiffs' motions.

## CONCLUSION

The Court should deny Plaintiffs' motions for preliminary injunctions.

-12-

Dated: May 2, 2017                              Respectfully submitted,

                                               CHAD A. READLER
                                               Acting Assistant Attorney General

                                               CHANNING D. PHILLIPS
                                               United States Attorney

                                               JOHN R. TYLER
                                               Assistant Branch Director

                                               */s/ Brad P. Rosenberg*
                                               BRAD P. ROSENBERG
                                               (D.C. BAR NO. 467513)
                                               DANIEL SCHWEI
                                               (N.Y. Bar)
                                               MICHELLE R. BENNETT
                                               (Co. Bar No. 37050)
                                               ARJUN GARG
                                               (D.C. Bar No. 975335)
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               20 Massachusetts Ave., N.W.
                                               Washington, DC  20530

                                               Tel.:  (202) 514-3374
                                               Fax:  (202) 616-8460
                                               Email:  brad.rosenberg@usdoj.gov

                                               *Counsel for Defendants*