IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARS EQUALITY CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*, <br><br> Defendants. | Civil Action No. 1:17-cv-00255-TSC |
| UNIVERSAL MUSLIM ASSOCIATION OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*, <br><br> Defendants. | Civil Action No. 1:17-cv-00537-TSC |

### DECLARATION OF JEREMY A. CORNFORTH

I, Jeremy A. Cornforth, hereby declare under penalty of perjury:

1. I am employed by the U.S. Department of State as the Director of the Office of Information Management and Liaison in the Office of Visa Services. I submit this declaration in support of Defendants' Response to Plaintiffs' Joint Supplemental Brief Regarding Preliminary Relief in the above-captioned cases. This declaration is based upon personal knowledge or information acquired by me in the course of my official duties.

2. In my capacity as Director of the Office of Information Management and Liaison, I am familiar with the Department of State's Consular Consolidated Database ("CCD"). The CCD is the database and application platform for the storage and display of visa issuance and denial information used by the Department of State. I am also familiar with the Department of State's visa application procedures.

3. Visa appointment cancellation is not an event that is captured by a specific data field in the CCD, and therefore, a report cannot be generated regarding visa application interview cancellation. Because enforcement of Executive Order No. 13,780 (hereinafter, the "Second Executive Order") was enjoined before its effective date, and the Department of State complied strictly with the injunctions, no consular interviews were cancelled as a result of the Second Executive Order. With respect to Executive Order No. 13,769 (hereinafter, the "Revoked Order"), the CCD does not identify individuals whose appointments for visa application interviews may have been cancelled as a result of the Revoked Order. There is no centralized tracking of nonimmigrant visa application interview appointments. In most countries, nonimmigrant visa application interview appointments are made via third party contractors, and the contractors do not transmit appointment-related data to the CCD. Immigrant visa application interview appointments are generally scheduled by the National Visa Center (for family and employment-based applications) or the Kentucky Consular Center (for diversity-visa applicants), but individual consular sections overseas also schedule such appointments routinely. Interviews may be cancelled by the National Visa Center, the Kentucky Consular Center, the overseas consular section, or the individual visa applicant. Information on cancelled interview appointments is not stored as structured data in the CCD, regardless of who made or canceled the appointment. Further, the CCD does not contain a data element to capture a reason for

cancellation. Thus, even if the CCD could be used to identify individuals whose consular interview appointments were cancelled between January 27, 2017, and February 3, 2017, there would be no way to determine whether those appointments were cancelled as a result of the Revoked Order or for some other reason such as staffing shortage, travel of the visa applicant, etc.

4. The CCD cannot be used to reliably identify individuals from the affected countries who were denied a visa after January 26, 2017, but who had previously been issued a visa to enter the United States. The CCD cannot generate such a report automatically. Rather a report would have to be generated of all visa applicants of those nationalities who were refused a visa during the relevant time frame. This report would then have to be compared with historical records to determine whether any of these denied applicants had previously been issued a visa. Due to the nature of the historical records in the CCD and changes over time of the transliteration and other spelling or data conventions used in processing foreign names, this type of automated correlation is likely to be error-prone. Accurate correlation would likely require significant manual intervention. I estimate that this time and resource-intensive process would take several weeks at a minimum.

5. In addition, Plaintiffs' request for the court to order a "second look" at any such visa refusals would require an extraordinary expenditure of time and resources. Visa adjudications generally are not based solely on document reviews, and interviews virtually always are conducted before an application is denied. Therefore, taking a "second look" would require the individual visa applicants to reschedule and reappear for an interview, and then consular officers would have to re-interview the visa applicants and adjudicate their applications once again. Devoting Department of State and consular officer resources to these tasks would

divert resources from normal visa adjudications, potentially extending visa application interview wait times and the processing of current visa applications for all applicants world-wide.

6. The physical cancellation of a visa is not an electronic act that automatically is captured in the CCD, although as a matter of policy officers are instructed to note all revoked visas in the CCD. However, not all canceled or revoked visas are identified in the CCD, especially those canceled at port of entry by Department of Homeland Security border inspectors. Accordingly, the CCD cannot reliably be used to identify physically cancelled visas, whether they were cancelled as a result of the Revoked Order or otherwise.

7. The above discussion does not necessarily contain an exhaustive list of the limited capabilities of the CCD or the difficulty of extracting and analyzing data from it. There may be other problems or limitations of the CCD, many of which could make any order involving review or actions on thousands of refused visa applications infeasible for additional reasons.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Dated this 2 day of May, 2017.

_____
Jeremy A. Cornforth