## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PARS EQUALITY CENTER, IRANIAN
AMERICAN BAR ASSOCIATION,
NATIONAL IRANIAN AMERICAN
COUNCIL, PUBLIC AFFAIRS ALLIANCE
OF IRANIAN AMERICANS, INC., et al.,

        *Plaintiffs*,

        v.

DONALD J. TRUMP et al.,

        *Defendants*.

No. 17-cv-255 (TSC)

Electronically Filed

Hon. Tanya S. Chutkan

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
## TO STAY PROCEEDINGS PENDING SUPREME COURT REVIEW

This is the fifth time the Government has attempted to stall the proceedings in this case. *See* ECF No. 16, 29, 54, 85.  At every turn, the Government has sought delay—all while Plaintiffs continue to suffer ongoing harm from the Government's discriminatory and unlawful conduct, including the recent cancellation of Jane Doe #1's wedding because her fiancé's visa still has not been approved.  And there is no end in sight.  The President's recent statements confirm that the Government is "EXTREME VETTING [*sic*] people coming into the [United States]"—in the face of two nationwide injunctions and contrary representations before this Court and others.  Now, one week before the already extended deadline for its motion to dismiss, the Government argues that its *own* filings before the Supreme Court in *another* case have suddenly created an "emergency" that requires an immediate, last-minute suspension of these proceedings.   The Government's motion is nothing more than another attempt to avoid having to litigate the merits of this case.  This Court should reject the Government's latest dilatory tactics.

I.      **There is no basis to stay proceedings on the merits in this case pending potential Supreme Court review of the preliminary injunction in *IRAP v. Trump*.**

"[A] stay is not a matter of right."  *Nken v. Holder*, 556 U.S. 418, 433 (2009).  The party requesting a stay, rather, bears a heavy burden to demonstrate the need for such relief, considering "(1) the likelihood that the party will prevail on the merits of the appeal; (2) the likelihood that the party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  The standard is particularly demanding where the party seeks a stay based on proceedings in a different case.  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

The Government makes scant effort to show that its petition for certiorari in *IRAP v. Trump* warrants a stay of this case.  Even assuming certiorari will be granted, the Government does not even attempt to demonstrate that it is likely to prevail on the merits in the Supreme Court.  Nor could it.  This Court—as well as the federal district courts in Maryland and Hawaii, and the en banc Fourth Circuit—has already concluded that plaintiffs bringing constitutional challenges to the Executive Order are likely to succeed on the merits of their claims.

The procedural posture here presents a further, insuperable obstacle to the relief the Government seeks.  Any Supreme Court proceedings in *IRAP v. Trump* will address only the preliminary injunction issued by the Maryland court and upheld by the Fourth Circuit.  But the Government's stay motion here does not seek simply to halt Plaintiffs' motion for preliminary injunction; nor could it, as this Court has already temporarily stayed that preliminary injunction motion.  Instead, the Government argues that potential Supreme Court review of the Maryland court's preliminary injunction in *IRAP* necessitates a stay of any and all proceedings *on the merits* in this case.  Not so.  This Court will have to adjudicate the merits of Plaintiffs' claims in this case regardless of the outcome of the proceedings at the Supreme Court in *IRAP*.  And the Government has failed to explain why delaying that adjudication—to which Plaintiffs are entitled—is necessary to prevent "hardship or inequity."  *Landis*, 299 U.S. at 28.  Responding to a complaint, particularly after having received multiple extensions to do so, is not a "hardship."  *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.").

Unsurprisingly, the Government cites no case in which a court stayed proceedings on the merits pending resolution of appellate litigation regarding preliminary relief in a different case.  Parties face no irreparable harm in such circumstances.  The Government asserts, without

substantiation, that a stay would "promote judicial economy and preserve the parties' resources." Mot. 2, 8-9.  But at most, a stay would simply *delay* the parties' expenditure of time and resources.  Having to litigate an issue earlier than one would prefer is hardly the kind of "certain and great" injury that a party must demonstrate to obtain a stay.  *FTC v. Church & Dwight Co., Inc.*, 756 F. Supp. 2d 81, 86 (D.D.C. 2010); *see also Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921 (D.C. Cir. 1958) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to justify a stay.).

This procedural posture is fatal to the Government's request to stay these proceedings. But even setting that aside, the Government is wrong that "any decision by the Supreme Court in *IRAP* is certain to be highly relevant—if not entirely dispositive—of the legal issues currently confronting this Court."  Mot. 7.  Apart from the question whether one particular plaintiff in *IRAP* has standing to bring his claims, the Government's petition for certiorari addresses only the plaintiffs' claim that Section 2(c) of the March 6 Executive Order violates the Establishment Clause.  There are numerous Plaintiffs in this action—including four organizations with *Havens* standing and 25 individuals covering every aspect of the claims in this suit—and there is no serious question as to the justiciability of this case.  And Plaintiffs in this case have multiple other claims that must be adjudicated on the merits—including national-origin and religious discrimination claims under the Equal Protection Clause as well as statutory claims.  The Supreme Court's disposition of the question presented by the Government in *IRAP v. Trump* may not resolve any issue in this case, and assuredly will not resolve all of the issues here.  As the Court previously ordered, this case should proceed without further delay.

II.     **President Trump's recent statements further undermine the Government's arguments on the merits and highlight the need for this Court to move expeditiously**

Beginning on Saturday evening and continuing through Monday evening, the President tweeted a series of statements about his self-described "TRAVEL BAN" that directly contradict multiple representations the Government has made to this Court in opposing Plaintiffs' motion for preliminary injunction:



These statements reveal that the Government has been subjecting people to "EXTREME VETTING," despite the two nationwide injunctions currently in place.  They confirm that the March 6 Executive Order is, in fact, a "TRAVEL BAN," despite the Government's objections to

use of the term.  And they suggest that the President intends to implement a permanent, more-extreme Travel Ban in the near future.  What is more, the President's statements reflect his antipathy for the judiciary as an independent check on his power.  These statements highlight the severe harms that a stay of all proceedings in this case would impose on Plaintiffs, *see Landis*, 299 U.S. at 28, and underscore the public interest in expeditiously addressing the merits of Plaintiffs' claims.

> **A.**     **The Government's "extreme vetting" of immigrants, despite the nationwide injunctions currently in place, continues to harm Plaintiffs**

During the preliminary injunction proceeding, the Government repeatedly represented to this Court (and other courts) that Plaintiffs could not establish irreparable harm because the Government was complying with the Hawaii and Maryland courts' injunctions.  Contrary to these representations, numerous press reports this past weekend indicated that the Government has implemented onerous vetting requirements on a selective basis.[1]  On Monday, the President confirmed that the Government is "EXTREME VETTING people [*sic*]."  It bears emphasis that the President previously explained that he intended to implement his "Muslim ban" by conducting "*extreme vetting*."  Am. Compl. ¶ 59 (emphasis added).

The President's statement directly contradicts the Government's representations before this Court that an injunction would interfere with its operations and "would cause direct, irreparable injury to the Government," ECF No. 50 at 43, as well as its assertion that the Government could not work on new vetting provisions because in order to comply with the

---

[1] *See, e.g.*, http://www.reuters.com/article/us-usa-immigration-visa-idUSKBN18R3F8; http://dailycaller.com/2017/06/01/trump-admin-enacts-extreme-vetting-for-certain-immigrants/; http://www.breitbart.com/texas/2017/04/06/extreme-vetting-may-include-ideological-test/

injunctions, the Government purportedly had "put its pencils down."[2]  More importantly, the President's admission that the Government has been engaged in "extreme vetting" is directly contrary to representations the Government previously made to this Court that because the Government was purportedly complying with the existing injunctions "whatever harms [Plaintiffs] are suffering do not flow from [the] Executive Order."  4/21/17 Tr. 54; *see also* ECF No. 50 at 2 ("Plaintiffs cannot demonstrate a need for preliminary relief [because] all of the substantive sections of the Order challenged by Plaintiffs are currently enjoined nationwide"); ECF No. 50 at 43 ("if the Orders were to begin being enforced, none of the Plaintiffs here would suffer irreparable harm"); ECF No. 82 at 3 ("Plaintiffs cannot demonstrate they are suffering any certain, great, actual, imminent injury . . . because provisions of the challenged Order have already been enjoined nationwide").  The President's statements on Twitter are also consistent with the record developed by Plaintiffs at the evidentiary hearing and through dozens of declarations, all of which underscore the need for the Court to order injunctive relief restoring individuals unlawfully harmed to the January 26th status quo.

Indeed, the President's admission that "we are EXTREME VETTING people coming into the U.S." explains why Plaintiffs continue to experience ongoing irreparable harm. Specifically, the fact that the Government has actually implemented so-called "extreme vetting" explains why, notwithstanding the Government's purported compliance with the entry of the two nationwide injunctions:

---

[2] Statement of the Acting Solicitor General, *IRAP v. Trump*, 5/8/17 4th Cir. Oral Argument.

- The number of visas issued to individuals from the listed countries has fallen precipitously—for example, the number of visas issued to Iranians in April 2017 fell to less than half the average issued each month in 2016;[3]

- The government still has not acted on visa applications submitted by the family members of multiple plaintiffs months after they were submitted;[4]

- In many cases, these visa applications have been pending for months longer than the 60 day period in which the Government's own guidance says they should be "resolved";[5] and

- The government still has not interviewed the refugee plaintiffs, who remain in limbo in Turkey.[6]

  And troublingly, the Government appears to be "vetting" visa applicants by inquiring

whether the plaintiffs or applicants are Muslim, and then denying their application, even when

---

[3] State Department data show that in March 2017, the Government issued *40 percent* fewer visas to citizens of the listed countries than it did in any average month in 2016. *See* Yeganeh Torbati, *Number of U.S. Visas to Citizens of Trump Travel Ban Nations Drop*, Reuters, April 27, 2017. The number of visas issued to Iranians has dropped from 2,450 per month in 2016 to 1,572 in March 2017and 1,185 in April 2017. *See* https://travel.state.gov/content/visas/en/law-and-policy/statistics/non-immigrant-visas/monthly-nonimmigrant-visa-issuances.html

[4] Jane Doe #1 Decl. ¶¶ 11-23 (*PARS* Doc. 35-2, Ex. 7); Jane Doe #4 Decl. ¶¶ 4, 7 (*PARS* Doc. 35-2, Ex. 8); Jane Doe #10 Decl. ¶¶ 11-13 (*PARS* Doc. 35-2, Ex. 11); Hissong Decl. ¶¶ 21-22 (*PARS* Doc. 35-2, Ex. 6); John Doe #3 Decl. ¶¶ 5-7 (*PARS* Doc. 35-2, Ex. 16A); PARS Decl. ¶¶ 23-25 (*PARS* Doc. 35-2, Ex. 1); IABA Decl. ¶¶ 28, 34, 37 (*PARS* Doc. 35-2, Ex. 2); 4/18/17 Hr'g Tr. 28, 48. Using the CCD, Defendants can identify particular visa applicants who filed or had applications pending after January 26, 2017, and who have waited an inordinate amount of time for a determination—more than seven days where no SAO was sought, or more than six weeks where an SAO was sought.

[5] State Department policy generally requires that visa determinations be made quickly. The Department frequently makes such determinations within a day of the interview, although in some cases, there may be a delay while the consular officer seeks a Security Advisory Opinion (SAO); the State Department guidance says that "most" cases should be "resolved within 60 days of the visa interview." *See* 9 FAM 403.10-2(A); 9 FAM 504.9-2 ("Once an application has been executed, you must either issue the visa or refuse it."); https://travel.state.gov/content/visas/en/general/administrative-processing-information.html.

[6] *See* John Doe #7 Decl. ¶¶ 7-9 (*PARS* Doc. 35-2, Ex. 18A), John Doe # 8 Decl. ¶¶ 7-9 (*PARS* Doc. 35-2, Ex. 19A); Jane Doe #8 Decl. ¶¶ 15-19 (*PARS* Doc. 35-2, Ex. 9); Jane Doe #9 Decl. ¶¶ 14-18 (*PARS* Doc. 35-2, Ex. 10); PARS Decl. ¶¶ 16-21 (*PARS* Doc. 35-2, Ex. 1).

the individuals had been previously admitted to the United States.[7]  This is precisely the sort of religious test the President previously promised to impose to implement his ban.  *See* Am. Compl. ¶ 56 (when asked how his "ban" would work, the President responded that the Government would ask "Are you Muslim?" and if the applicant answered affirmatively "they would not be allowed in the country").

**B.    The President's threat to implement a "much tougher" version of the "Travel Ban" further harms Plaintiffs**

Apart from revealing that the Government is conducting "extreme vetting" of people entering the United States, the President also stated this week that the Justice Department "should have stayed with the original Travel Ban" and should "seek a much tougher version," while referring to the March 6 Executive Order as a "watered down, politically correct version" of the indisputably discriminatory January 27 Executive Order.  He left no question that both the "original" and the "politically correct" Orders are, in fact, "Travel Ban[s]."  This suggests that the President intends to reissue the January 27 Executive Order or another Executive Order that is "tougher" and not "politically correct," and also to keep the "Travel Ban" in place in perpetuity.

These statements further directly contradict arguments that the Government made to this Court.  In addition to its evidentiary objections to the characterization of the Executive Order as a "travel ban," 4/18/17 Tr. 15, and arguing that any testimony about harms flowing to Plaintiffs from the January 27 Executive Order were irrelevant, 4/18/17 Tr. 70, the Government argued in opposing entry of a preliminary injunction that:

---

[7] Asaei Decl. ¶¶ 10-14 (*PARS* Doc. 35-2, Ex. 5); Jane Doe #13 Decl. ¶¶ 18-20 (*PARS* Doc. 35-2, Ex. 14); NIAC Decl. ¶ 47 (*PARS* Doc. 35-2, Ex. 3); IABA Decl. ¶¶ 39-40 (*PARS* Doc. 35-2, Ex. 2); 4/18/17 Hr'g Tr. 27-28, 47-48.

- The Government represented that Executive Orders would "only apply for a short period, to enable the new Administration to review the Nation's screening and vetting procedures to ensure that they adequately detect terrorists."  ECF No. 50 at 1.  The President has now called for a "TRAVEL BAN!" to be in place in perpetuity "as an extra level of safety," notwithstanding the fact that the Government has implemented "extreme vetting."

- The Government emphasized that the January 27 Executive Order was "formally revoked and is no longer in effect."  4/21/17 Tr. 64.  The President has now made clear his intent to reissue the January 27 Executive Order or something that is "much tougher" and not "politically correct."

- The Government represented that "[a]ny past injuries attributable to the Revoked [January 27] Order do not justify an injunction against the legally distinct March 6 Order," ECF No. 82 at 10, and that "there is a dramatic difference between the first and second order," 4/21/17 Tr. 66.  The President has now confirmed that the March 6 Executive Order is merely a "watered down, politically correct version" of the January 27 Order.

*       *       *

The ongoing and continuing nature of Plaintiffs' injuries raises a serious question regarding the Government's compliance with other courts' nationwide injunctions: how can it really be the case, if the Government is complying with the injunctions, that (i) not a single individual Plaintiffs has had his or her visa application approved, or (ii) the number of approved visas for Iranians or individuals from the other affected countries has dropped so dramatically?

The President's statements on Twitter offer an answer to this question: the Government has implemented the "TRAVEL BAN" in the form of "EXTREME VETTING" in precisely the manner the President said he would—and in precisely the manner the Government's lawyers represented would not occur.  That is why the Government has impeded Plaintiffs and similarly situated individuals from pursuing educational or professional opportunities, from seeing their parents, grandparents or other relatives, from living with their spouses, and from marrying the people they love.  Indeed, as noted, Jane Doe #1 has had to cancel her wedding.

Moreover, the President's statements on Twitter indicate that worse and even more unconstitutional conduct is likely in store. The Court should not permit these injuries to persist any longer. The Court should address the merits of Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay all proceedings in this case pending potential Supreme Court review of the preliminary injunction in *IRAP v. Trump* should be denied.

Dated:  June 7, 2017

Cyrus Mehri (D.C. Bar # 420970)
Joanna K. Wasik (D.C. Bar # 1027916)
Amelia Friedman (D.C. Bar # 1033583)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW
Suite 300
Washington, DC 20036
(202) 822-5100
(202) 822-4997 (fax)
cmehri@findjustice.com

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
LAWYERS' COMMITTEE FOR
   CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW
Suite 400
Washington, DC 20005
(202) 662-8600
(202) 783-0857 (fax)
jgreenbaum@lawyerscommittee.org

Adrienne D. Boyd*
ARNOLD & PORTER
   KAYE SCHOLER LLP
Suite 4400
370 Seventh Street
Denver, CO 80202
(303) 863-1000
(303) 832-0428 (fax)
adrienne.boyd@apks.com

*Pro hac vice motion pending

Respectfully submitted,

/s/ John A. Freedman
John A. Freedman (D.C. Bar # 453075)
David P. Gersch (D.C. Bar # 367469)
R. Stanton Jones (D.C. Bar # 987088)
Nancy L. Perkins (D.C. Bar # 421574)
Ronald A. Schechter (D.C. Bar # 245019)
Robert N. Weiner (D.C. Bar # 298133)
Samuel M. Witten (D.C. Bar # 378008)
Sally L. Pei (D.C. Bar # 1030194)
Sonia Tabriz (D.C. Bar # 1025020)
Stephen K. Wirth (D.C. Bar # 1034038)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
john.freedman@apks.com

Christopher M. Odell*
ARNOLD & PORTER
   KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX  77002
(713) 576-2400
(713) 576-2499 (fax)
christopher.odell@apks.com

Susan S. Hu*
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(303) 836-8689 (fax)
susan.hu@apks.com

Counsel for Plaintiffs

11