## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| PARS EQUALITY CENTER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-00255-TSC |
| ) | |
| DONALD J. TRUMP, *in his official* ) | |
| capacity as President of the ) | |
| United States, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| UNIVERSAL MUSLIM ASSOCIATION ) | |
| OF AMERICA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-00537-TSC |
| ) | |
| DONALD J. TRUMP, *in his official* ) | |
| *capacity as President of the* ) | |
| *United States*, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF
## EMERGENCY MOTION TO STAY PROCEEDINGS
## PENDING SUPREME COURT REVIEW

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      Consistent with Courts' Routine Practice, a Stay of Proceedings Is Amply
        Warranted Given the Significant Overlap Between the Cases ............................ 2

        A.      Plaintiffs Do Not Dispute that Courts Routinely Stay Proceedings to Await
                Appellate Guidance in a Related Matter ................................................ 3

        B.      There Is Significant Overlap Between the Cases Here and the Cases Before
                the Supreme Court ................................................................................. 5

                1.      The Preliminary Nature of *IRAP* Does Not Justify Denying a Stay .......... 6

                2.      A Stay is Warranted When The Issues are Substantially Similar .............. 7

                3.      There Is Significant Overlap Between the Legal Issues in These
                        Cases ........................................................................................ 8

II.     Proceeding with Litigation Now Would Cause Concrete Harms to the Parties and
        the Court ................................................................................................................. 9

III.    Plaintiffs Will Not Be Harmed By the Proposed Stay ...................................... 12

        A.      Plaintiffs Have Not Demonstrated Any Harm from the Proposed Stay ............... 12

        B.      The President's Recent Comments Are Wholly Irrelevant to the Stay
                Motion, and In Any Event Are Consistent with the Government's Prior
                Arguments ............................................................................................. 16

        C.      The Government's Proposed Stay Is Reasonable In Length ............................... 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Arizona v. United States*,
   567 U.S. 387 (2012) ............................................................................................... 6

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   668 F.3d 724 (D.C. Cir. 2012) .......................................................................... 3

*Burwell v. Hobby Lobby Stores, Inc.*,
   134 S. Ct. 2751 (2014) ...................................................................................... 6

*Cal. Ass'n of Health Facilities v. Maxwell-Jolly*,
   No. 10-cv-3259, 2010 WL 2612694 (C.D. Cal. June 24, 2010) ................. 4

*Douglas v. Indep. Living Ctr. of S. Cal., Inc.*,
   565 U.S. 606 (2012) ........................................................................................... 4

*Fairview Hosp. v. Leavitt*,
   No. 05-1065, 2007 WL 1521233 (D.D.C. May 22, 2007) .......................... 7

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ........................................................................................... 8

*FTC v. Church & Dwight Co.*,
   756 F. Supp. 2d 81 (D.D.C. 2010) ............................................................... 10

*Holland v. ACL Transp. Servs., LLC*,
   815 F. Supp. 2d 46 (D.D.C. 2011) ............................................................... 10

*Kerry v. Din*,
   135 S. Ct. 2128 (2015) ...................................................................................... 8

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ........................................................................................... 8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................... 3, 7, 19

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) .......................................................................... 7

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ...................................................................... 10

*Monaghan v. Sebelius*,
   No. 12-15488, 2013 WL 3212597 (E.D. Mich. June 26, 2013) ......... 5, 7, 11

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................................ 3

*Trump v. International Refugee Assistance Project (IRAP)*,
    --- F.3d ----, 2017 WL 2273306 (4th Cir. May 25, 2017) ........................................... 1

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
    259 F.2d 921 (D.C. Cir. 1958) .................................................................. 10

*Washington v. Trump*,
    No. 2:17-cv-141, 2017 WL 2172020 (W.D. Wash. May 17, 2017) ........................... 5, 7, 10, 11

## REGULATIONS

Dep't of Homeland Sec., *Agency Information Collection Activities: Arrival and Departure Record (Forms I-94 and I-94W) and Electronic System for Travel Authorization*,
    81 Fed Reg. 40,892 (June 23, 2016) ....................................................................... 18

Executive Order No. 13,780, 82 Fed. Reg. 13,209 (Mar. 6, 2017)................................. 1, 5, 15, 17

## OTHER AUTHORITIES

16 Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 3921.2 (3d ed. 2017)........................................... 4, 12

## INTRODUCTION

Before this Court are two cases where Plaintiffs are challenging the same Executive Order, Executive Order No. 13,780 (Order), that is at issue in *IRAP* and *Hawaii*, on similar legal grounds as in *IRAP* and *Hawaii*. *See Trump v. International Refugee Assistance Project (IRAP)*, --- F.3d ----, 2017 WL 2273306 (4th Cir. May 25, 2017); *Trump v. Hawaii*, --- F.3d ----, No. 17-15589, ECF No. 314-1 (9th Cir. June 12, 2017), *available at* http://cdn.ca9.uscourts.gov/ datastore/uploads/general/cases_of_interest/17-15589%20per%20curiam%20opinion.pdf.    The United States has requested that the Supreme Court review, on an expedited basis, the preliminary injunction affirmed by the Fourth Circuit in *IRAP*.  *See* Exh. A (*Pars* ECF No. 87-1, *UMAA* ECF No. 51-1).  The United States has also requested that the Supreme Court stay the preliminary injunction at issue before the Ninth Circuit in *Hawaii*.  *See* Exh. B (*Pars* ECF No. 87-2, *UMAA* ECF No. 51-2).  In light of these requests for Supreme Court review, and given that a decision by the Supreme Court in *IRAP* and/or *Hawaii* would provide significant guidance on many (if not all) of the key issues presented by the two cases pending before this Court, a stay of further proceedings is amply warranted.

Plaintiffs in both cases oppose the Government's requested stay.  *See Pars Equality Center v. Trump*, No. 17-cv-255 (D.D.C.), ECF No. 88 [hereafter "Pars Opp."]; *Universal Muslim Assoc. of Am. v. Trump*, No. 17-cv-537 (D.D.C.), ECF No. 52 [hereafter "UMAA Opp."].  In doing so, Plaintiffs rely on a series of fundamentally flawed arguments:  they misconstrue the legal framework governing stays of further proceedings; they rely on the straw-man argument that a future Supreme Court decision may not fully resolve *all* issues presented in these cases; and they emphasize the President's recent remarks on Twitter, none of which has anything to do with the factors this Court must consider in deciding whether to grant a stay.

Notably, Plaintiffs offer no substantive response to the significant case law cited by the Government establishing that courts, both inside and outside this District, routinely stay further proceedings pending forthcoming appellate guidance.  In particular, Plaintiffs do not respond substantively to the decisions by six other courts hearing challenges to the Order to stay further merits proceedings pending resolution of appeals.  And since the time the Government filed its stay motion, a seventh court has now done the same.  *See Arab Am. Civil Rights League v. Trump*, No. 17-cv-10310, ECF No. 114 (E.D. Mich. June 9, 2017) (attached hereto as Exh. H).  Consistent with this clear pattern, this Court should likewise stay proceedings pending potential Supreme Court review.  There is significant overlap between the legal issues presented by all of the cases; proceeding further in these cases now would be burdensome and contrary to the interests of judicial economy; and Plaintiffs will not suffer any harm during the limited stay sought by the Government. A stay of proceedings is more than justified here.

## ARGUMENT

### I.   Consistent with Courts' Routine Practice, a Stay of Proceedings Is Amply Warranted Given the Significant Overlap Between the Cases

A decision by the Supreme Court in *IRAP* and/or *Hawaii* would be highly relevant to many of the core legal issues this Court would need to confront if it continued with district court proceedings.  It is irrelevant whether there are *some* potential differences between *IRAP* (and/or *Hawaii*) and the two cases pending before this Court; the standard for granting a stay requires only substantial similarity between the cases.  Consistent with the numerous other courts that have stayed further proceedings to await potentially forthcoming appellate guidance—including seven other courts hearing challenges to the Order—this Court should likewise stay proceedings here.

### A.    Plaintiffs Do Not Dispute that Courts Routinely Stay Proceedings to Await Appellate Guidance in a Related Matter

The Government's motion cited numerous authorities, both within and outside this District, establishing that courts frequently stay proceedings in district court when resolution of an appeal in a separate matter will likely guide the district court's decision in the case before it.  *See* Stay Mot. (*Pars* ECF No. 87, *UMAA* ECF No. 51) at 5-7.  Plaintiffs do not respond to this ample body of case law.  Plaintiffs instead rely on various other authorities, none of which supports denying a stay here.

*First*, many of Plaintiffs' cited cases seek to apply the incorrect legal standard to the Government's stay motion.  Plaintiffs rely on cases such as *Nken v. Holder*, 556 U.S. 418 (2009), to argue that the Government's stay request should be governed by a four-factor test (similar to the preliminary-injunction factors).  *See, e.g.*, Pars Opp. at 1; UMAA Opp. at 4.  But the framework described in *Nken* relates to whether to stay a *judgment* pending appeal.  *Nken*, 556 U.S. at 421.  Here, the Government is not seeking to stay a court ruling, but only to stay future court *proceedings*.  And this type of stay motion is analyzed under a more flexible standard:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731 (D.C. Cir. 2012) (when a stay is issued "pursuant to the district court's inherent authority in the interest of judicial economy, the applicable jurisprudence appears in *Landis*" (modifications omitted)).  As discussed further below (Sections I.B, II-III), the *Landis* framework amply supports a stay here.

*Second*, UMAA relies on the Wright & Miller treatise for the proposition that "[p]resumptively, proceedings seeking a permanent injunction move forward even when a preliminary-injunction ruling is on appeal[.]"  UMAA's Opp. at 7.  Even assuming that presumption exists, however, it is clearly overcome where, as here, the appellate court is likely to decide the very same legal issues the district court must confront.  Indeed, the very same section of Wright & Miller confirms as much.  *See* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3921.2 (3d ed. 2017) ("At the same time, it would be advisable for the district court to determine whether the same issue has been presented on appeal, and to defer action when it seems reasonably probable that appellate decision of the same question is imminent.").

*Third*, the *Pars* Plaintiffs assert that "the Government cites no case in which a court stayed proceedings on the merits pending resolution of appellate litigation regarding preliminary relief in a different case."  Pars Opp. at 2.  As discussed further below (Section I.B), however, Plaintiffs place undue emphasis on whether the appellate court is deciding the legal issues in the context of preliminary relief or a final judgment on the merits.  In both scenarios the appellate court's decision will be highly relevant to the district court's consideration of the same legal issues.

In any event, Plaintiffs' assertion is also wrong:  the Government did in fact cite cases where merits proceedings were stayed pending appeals from preliminary relief entered in other matters.  That was the exact situation in *Cal. Ass'n of Health Facilities v. Maxwell-Jolly*, No. 10-cv-3259, 2010 WL 2612694, at *2 (C.D. Cal. June 24, 2010).  *See* Stay Mot. at 6; *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 612 (2012) (discussing procedural history, including fact that case was at preliminary-injunction stage).  And of course, that situation also existed for the precedents that are most directly relevant here—the other courts hearing challenges to Executive

Order No. 13,780 that have stayed merits proceedings pending appeals from preliminary injunctions in other cases. *See* Stay Mot. at 6-7; *Arab Am. Civil Rights League v. Trump*, Exh. H.[1]

Plaintiffs do not respond to these highly persuasive precedents, except to note that "most were by stipulation of the parties or were unopposed." UMAA Opp. at 9. Not all of the stays were unopposed, however, and Plaintiffs do not even attempt to distinguish, for example, Judge Robart's thorough opinion in *Washington v. Trump* explaining why a stay is appropriate. *See Washington v. Trump*, No. 2:17-cv-141, 2017 WL 2172020 (W.D. Wash. May 17, 2017). Moreover, the fact that many of the other stays were by stipulation (or were unopposed) is itself notable:  it confirms the common-sense proposition that when a higher court is likely to decide similar (if not identical) legal issues, it makes little sense to continue litigating those same issues in district court.

In light of this demonstrated practice, this Court would be a rare exception if it allowed district court proceedings to continue while the very same legal issues may soon be decided by the Supreme Court.

## B.      There Is Significant Overlap Between the Cases Here and the Cases Before the Supreme Court

Plaintiffs do not genuinely dispute the significant overlap between the legal issues presented in *IRAP* (and *Hawaii*) and these two cases. Plaintiffs instead respond on the margins, arguing that *IRAP* is only in a preliminary posture and that the issues raised in *IRAP* are not *identical* to the issues raised in these cases. But this argument is a straw-man:  courts considering

---

[1] These cases are not the only examples of courts staying merits proceedings pending appellate resolution of preliminary relief in different cases. *See, e.g.*, *Monaghan v. Sebelius*, No. 12-15488, 2013 WL 3212597 (E.D. Mich. June 26, 2013) (staying proceedings in plaintiff's challenge to contraceptive coverage regulations, pending resolution of appeal from preliminary-injunction motion in different case); *Ozinga v. Dep't of Health & Human Servs.*, No. 13-cv-3292, ECF No. 29 (N.D. Ill. Aug. 14, 2013) (same, attached hereto as Exh. I); *Triune Health Group, Inc. v. Dep't of Health & Human Servs.*, No. 12-cv-6756, ECF No. 64 (N.D. Ill. Apr. 2, 2013) (same, attached hereto as Exh. J).

stays have never required complete overlap between the two proceedings (in terms of procedural posture, legal issues presented, or any other feature). Rather, the question is simply whether the cases are sufficiently similar to make a stay of proceedings economical for the Court and/or the parties. Here, that is plainly the case.

### 1.   The Preliminary Nature of *IRAP* Does Not Justify Denying a Stay

Plaintiffs are correct that the *IRAP* appeal involves a preliminary injunction, but Plaintiffs incorrectly assert—without any supporting authority—that "[t]his procedural posture is fatal to the Government's request to stay these proceedings." Pars Opp. at 3; *see also* UMAA Opp. at 7. Any decision by the Supreme Court in *IRAP* and/or *Hawaii*—even if limited to analyzing the preliminary-injunction factors—would still be highly relevant to future proceedings in this case. This Court's evaluation of Plaintiffs' Establishment Clause claim would certainly benefit from knowing whether the Supreme Court believes the *IRAP* or *Hawaii* plaintiffs have demonstrated a likelihood of success on their Establishment Clause claim. And this Court's analysis of Plaintiffs' standing would likewise benefit from knowing the Supreme Court's views on the *IRAP* or *Hawaii* plaintiffs' claims of standing and irreparable harm.

Moreover, the Supreme Court has previously granted certiorari in cases at the preliminary-injunction stage, only to then consider the merits of the legal claims with little attention paid to the preliminary nature of the case. *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2785 (2014) (concluding that "[t]he contraceptive mandate, as applied to closely held corporations, violates RFRA," not simply that there was a likelihood of success on the claim); *Arizona v. United States*, 567 U.S. 387 (2012) (concluding that three state-law provisions are pre-empted by federal law, not simply that they were likely pre-empted). Thus, Plaintiffs cannot dismiss the likelihood

of a persuasive (if not binding) decision from the Supreme Court solely by noting that *IRAP* is on appeal from a preliminary injunction.

### 2.       A Stay is Warranted When The Issues are Substantially Similar

Plaintiffs argue that their claims, theories, and bases for standing are different than the ones at issue in *IRAP*.   *See* Pars Opp. at 3; UMAA Opp. at 5-7.   To obtain a stay, however, the Government need not demonstrate that the Supreme Court's decision would "resolve *all* of the issues" in these cases.  Pars Opp. at 3 (emphasis added); *see also* UMAA Opp. at 5.  That has never been the standard, as the Supreme Court confirmed in *Landis* itself:  "True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all."  299 U.S. at 256.

Following *Landis*, district courts have routinely granted stays—including in challenges to the Order—even when the decision in the separate case would not decide all issues.  *See Arab Am. Civil Rights League*, Exh. H at 3 ("Although Plaintiffs are correct that the Supreme Court's review in *IRAP* will likely not be fully dispositive of this case, it is sufficient that those proceedings will likely 'settle many' issues and 'simplify them all,' such that a stay will 'foster efficiency and conservation of resources for both the parties and the court.'" (internal citation omitted, quoting *Landis*, 299 U.S. at 256, and *Fairview Hosp. v. Leavitt*, No. 05-1065, 2007 WL 1521233, at *3 (D.D.C. May 22, 2007)); *see also Washington*, 2017 WL 2172020, at *2 ("Where a stay is considered pending the resolution of another action, the court need not find that the two cases involve identical issues; a finding that the issues are substantially similar is sufficient to support a stay." (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)); *Monaghan*, 2013 WL 3212597, at *1 (staying proceedings despite "potential differences" between

cases, because "the factual circumstances and central legal issues in both cases are substantially similar to those in this case").

### 3. There Is Significant Overlap Between the Legal Issues in These Cases

There can be no serious dispute that the legal issues in these cases are sufficiently similar to *IRAP* (and *Hawaii*) to justify a stay. All of the cases involve significant legal questions regarding an individual's standing to sue over the potential exclusion of foreign national family members; the scope of the doctrine of consular non-reviewability; the appropriate application of the Supreme Court's decisions in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), and *Kerry v. Din*, 135 S. Ct. 2128 (2015); and the appropriate application of domestic Establishment Clause precedents.

Plaintiffs acknowledge that *IRAP* involves an Establishment Clause challenge to the Order, which is also Plaintiffs' primary claim here. *See* Pars Opp. at 3; UMAA Opp. at 6. But Plaintiffs contend that they have additional claims beyond the Establishment Clause, and also that they seek to challenge sections of the Order that are not at issue in the *IRAP* (or *Hawaii*) appeal. Plaintiffs' additional claims do not undermine the persuasive force of a potential Supreme Court decision, however, because those claims would also be analyzed under the same *Mandel* standard. *See Mandel*, 408 U.S. at 762 (First Amendment speech claim); *Fiallo v. Bell*, 430 U.S. 787, 794-95 (1977) (applying *Mandel* to Equal Protection claim); *Din*, 135 S. Ct. at 2139 (Kennedy, J., concurring) (same, Due Process claim). Similarly, although Plaintiffs seek to challenge other sections of the Order beyond § 2(c), their legal theories are generally the same and thus Plaintiffs' claims beyond § 2(c) are equally implicated by a potential Supreme Court decision. The differences between *IRAP* (and *Hawaii*) and the two cases here are minor, and a ruling from the Supreme Court would provide significant guidance on critical issues present in all cases.

Indeed, Plaintiffs have effectively conceded the overlapping nature of the cases.  In their supplemental memorandum urging this Court to rule on their preliminary-injunction motions, Plaintiffs argued that "reasoned opinions by multiple courts will develop the law on, *and aid any Supreme Court review of*, the critically important questions here about invidious religious and national-origin discrimination and the scope of executive authority." Pls.' Suppl. PI Mem. (*Pars* ECF No. 80, *UMAA* ECF No. 42) at 5 (emphasis added).  If resolution of the two cases before this Court would aid other courts in their review of the *IRAP* and *Hawaii* appeals (as Plaintiffs previously suggested), then *a fortiori* resolution of the *IRAP* and *Hawaii* appeals would also inform this Court's analysis of how to resolve these two cases.  Plaintiffs cannot backtrack on this prior position, to now argue that resolution of the *IRAP* and *Hawaii* appeals would have absolutely no bearing on the two cases before this Court.

In short, given the significant similarities between the cases, a stay is amply warranted—as recognized by the seven other courts hearing challenges to the Order that have now stayed merits proceedings pending resolution of appeals.  This Court should do the same here.

## II.    Proceeding with Litigation Now Would Cause Concrete Harms to the Parties and the Court

The Government's motion to stay explained the concrete harms that would flow from denying a stay—specifically, the unnecessary waste of the Court's and the parties' resources, and the potential complications to future stages of the proceedings.  *See* Stay Mot. at 8-10.  Plaintiffs respond that the Government has not adequately established that a stay would promote judicial economy.  *See* Pars Opp. at 2-3; UMAA Opp. at 8-9.  To the contrary, a stay is warranted for at least three reasons.

*First*, a stay would promote judicial economy and conserve the parties' resources.  As discussed above, there is a strong possibility that a Supreme Court decision in *IRAP* or *Hawaii*

would either eliminate or simplify many of the issues that this Court would have to decide if litigation continued in this case.  It would be a tremendous waste to require the parties to brief and litigate issues that the Supreme Court may soon decide.  *Cf. Washington*, 2017 WL 2172020, at *3 (noting that in moving for dismissal under Rules 12(b)(1) and 12(b)(6), "Defendants are likely to raise the same arguments that they would have raised in opposition to Plaintiffs' TRO motion").  And of course, even if the parties briefed and the Court decided the motion to dismiss, that decision itself would provide Plaintiffs no relief—meaning there is no benefit to Plaintiffs in having that motion decided now, rather than after the Supreme Court's potential decision.

Plaintiffs respond by arguing that being required to defend a lawsuit is not a sufficient hardship to justify a stay.  *See* Pars Opp. at 2-3; UMAA Opp. at 8-9.  Out of all the cases cited by Plaintiffs, however, only one actually involves a stay of proceedings pursuant to *Landis*.[2]  And that case's holding was expressly conditioned on several unique features of the case, including that the separate proceeding "in the bankruptcy court is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005).  Here, of course, the opposite is true: the potential Supreme Court proceedings would contribute significantly to the decision of the issues currently before this Court.

Moreover, the Government is not arguing that the mere act of defending this lawsuit is a hardship justifying a stay.  Rather, the hardship to be avoided is undertaking further proceedings *without the benefit of potential Supreme Court guidance*—guidance that would at least clarify the

---

[2] Plaintiffs' other cited cases arise in distinct contexts.  Two of the cases involved stays of judgments pending appeal.  *See* Pars Opp. at 3 (citing *FTC v. Church & Dwight Co.*, 756 F. Supp. 2d 81, 83 (D.D.C. 2010), and *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 923 (D.C. Cir. 1958).  Another case involved a question of *which* action to stay when two identical actions are filed *between the same parties*; the case did not address when a stay of proceedings is warranted pending guidance from an appellate court.  *See* UMAA Opp. at 8 (citing *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 55 (D.D.C. 2011)).

scope of those future proceedings, and potentially eliminate the need for such proceedings altogether.  In these circumstances, a stay would greatly promote the interests of judicial economy. *Cf. Monagahan*, 2013 WL 3212597, at *2 ("[I]t would be at odds with the notion of judicial economy for this Court to proceed in this case and risk reaching an ultimate resolution that is inconsistent with precedent the Sixth Circuit creates shortly thereafter.").

*Second*, a stay would also avoid the significant burdens of any proceedings that follow after the Government's motion to dismiss.  Notably, neither the *Pars* nor *UMAA* Plaintiffs offered to limit the burden on the Government from this potential stage of proceedings—for example, by clarifying that Plaintiffs do not intend to seek burdensome, intrusive discovery from Defendants. Instead, UMAA once again suggested it intended to seek discovery.  *See* UMAA Opp. at 1 ("UMAA should not be delayed in building its case.").  As Judge Robart noted in the *Washington* case, potential discovery against the Government "weighs heavily in favor of granting Defendants' motion for a stay[.]"  2017 WL 2172020, at *4.

*Third*, a stay would conserve the Court's resources, particularly by avoiding undue complication of these proceedings.  If the Supreme Court grants certiorari and issues a decision in *IRAP* and/or *Hawaii*, all of the proceedings in these cases will need to be re-evaluated and re-visited to ensure consistency between the Supreme Court's decision and this Court's prior rulings. That would be a tremendously burdensome task, either for this Court or the Court of Appeals.  And depending on the stage of the case, some of the Court's rulings may be difficult to correct retroactively (*e.g.*, discovery rulings).  Because it is impossible to predict the various rulings this Court would need to make that may subsequently be in tension with a future Supreme Court decision, the better course is to stay proceedings to await the potential Supreme Court decision. *Cf.* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3921.2 (3d ed.

2017) ("[T]he district court should—with help from the parties—consider the possibility that the issues framed on appeal may change the context of the matters presented for district-court action.").

Regardless of the stage of the proceedings, therefore, a Supreme Court decision would almost certainly have a profound effect on how these cases unfold.  Proceeding without the benefit of the Supreme Court's guidance, in contrast, would be a waste of the Court's and the parties' resources, and would threaten to create inconsistent rulings, which would later need to be reconciled either by this Court or by the Court of Appeals.

## III.    Plaintiffs Will Not Be Harmed By the Proposed Stay

On the other side of the scale, Plaintiffs have failed to demonstrate any injuries they would suffer as a result of the proposed stay.  Plaintiffs attempt to manufacture harm based on the President's recent comments on Twitter, but those remarks have nothing to do with the present stay motion.  Moreover, the length of the Government's proposed stay is reasonable, particularly given the extraordinary pace with which these proceedings have been unfolding.  Accordingly, a temporary stay pending potential Supreme Court review is warranted here.

### A.    Plaintiffs Have Not Demonstrated Any Harm from the Proposed Stay

Plaintiffs have not demonstrated any concrete injuries resulting from the proposed stay, particularly in light of the two existing nationwide injunctions prohibiting enforcement of certain challenged sections of the Order.

As an initial matter, Plaintiffs fail to reconcile their supposed harms with this Court's prior conclusion staying consideration of their motions for preliminary injunctions:  "The existence of two other nationwide injunctions temporarily casts uncertainty on the issue of whether the harms Plaintiffs allege are actually imminent or certain."  Order (*Pars* ECF No. 84, *UMAA* ECF No. 48)

at 2.  In reaching that conclusion, this Court rejected the very same harms that Plaintiffs once again seek to invoke here.  *Compare* Pars Opp. at 7, and UMAA Opp. at 10, *with* Pls.' Suppl. PI Mem. (*Pars* ECF No. 80, *UMAA* ECF No. 45) at 10-11, and Pls.' Suppl. Reply PI Mem. (*Pars* ECF No. 83, *UMAA* ECF No. 47) at 4-5.  Just as the Court concluded in connection with staying Plaintiffs' preliminary-injunction motions, Plaintiffs' claimed harms are insufficient to justify moving forward here as well, particularly in light of the nationwide injunctions which remain in effect.[3]

UMAA responds by arguing that the Government is actively contesting the existing injunctions on appeal.  *See* UMAA Opp. at 10.  But that was also true when the Court stayed consideration of Plaintiffs' preliminary-injunction motions.  Moreover, Plaintiffs' argument fails to account for this Court's statement that, "[i]n the event that both existing injunctions are overturned, this court is prepared to issue a ruling without delay."  Order (*Pars* ECF No. 84, *UMAA* ECF No. 48) at 2.  That would remain true even if further proceedings in this case were stayed.  Thus, the proposed stay here has no bearing whatsoever on whether the Order is enjoined during the pendency of these lawsuits—that will be up to this Court and the other courts hearing appeals from the preliminary injunctions.  Because the stay would not affect the existence *vel non* of preliminary injunctions against the Order, there is no basis for denying the requested stay based on Plaintiffs' fears about what might happen in connection with the outstanding preliminary injunctions.

---

[3] Although the Ninth Circuit recently narrowed the *Hawaii* injunction to allow the Government to conduct internal reviews, the Ninth Circuit affirmed the injunction with respect to the 90-day suspension of entry for foreign nationals in § 2(c); the 120-day suspension of refugee admissions in § 6(a); and the 50,000 cap on refugee admissions for FY2017 in § 6(b).  *See Trump v. Hawaii*, No. 17-15589, --- F.3d ----, ECF No. 314-1 at 77-78 (June 12, 2017).

As for the *Pars* Plaintiffs, they assert that certain individual plaintiffs are continuing to be harmed because their family members still have not been found eligible and issued visas, and the refugee plaintiffs outside the United States still have not received interviews.  *See* Pars Opp. at 7. But as the Government argued at the preliminary-injunction hearing and in its supplemental memorandum following the hearing, that argument depends on a wholly unsupported premise— *i.e.*, that the reason the plaintiffs' family members have not yet been found eligible and issued visas is because of § 2(c) of the Order (which is currently enjoined), as opposed to the State Department's regular visa-application requirements and procedures.   *See* PI Hr'g Tr. at 52-53; Gov't's Suppl. PI Mem. (*Pars* ECF No. 82, *UMAA* ECF No. 45) at 9-10.  Similarly, Plaintiffs have not shown that the reason the refugee plaintiffs have not yet received interviews is specifically attributable to the currently enjoined suspension in § 6(a) of the Order, as opposed to the normal operation of the Refugee Program.

Indeed, the record currently before the Court wholly undermines the *Pars* plaintiffs' theory that their supposed harms are attributable to the Order.  With respect to the refugees, Plaintiffs do not dispute that the overall process typically takes about 18-24 months.  *See* Gov't's PI Opp. (*Pars* ECF No. 50) at 18.  It is therefore wholly speculative that the refugee plaintiffs have not received interviews specifically because of the suspension in § 6(a) of the Order (which is currently enjoined), as opposed to the many other factors that would typically affect the timing of interviews. *See also* Dep't of State, "U.S. Refugee Admissions Program," https://www.state.gov/j/prm/ra/admissions/index.htm (describing the refugee process, and stating that "[t]he total processing time varies depending on an applicant's location and other circumstances").

As for the individual plaintiffs with family members applying for visas, Plaintiffs rely on five specific plaintiffs.  *See* Pars Opp. at 7 n.4.  One of those—Jane Doe #10—involves a Form

I-730 petition for her husband as a "derivative asylee," and therefore Jane Doe #10 and her husband are not subject to the Order at all.[4]  And in any event, DHS processing times for such petitions were approximately eight months even before the Order was effective.  *See* Govt's PI Opp. (*Pars* ECF No. 50) at 21-22 & n.8.  As for the other four individual plaintiffs, their family members' visa applications (assuming they were officially executed at an interview) appear to have been already refused for administrative processing, *see id.* at 22, and in any event all of the family members appear to have submitted their applications in October and November 2016—*months* before the Order, and even the Revoked Order, were issued.  Thus, there is absolutely no basis for assuming that the reason the family members have not been found eligible and issued visas is because of the now-enjoined Section 2(c) of the Order, as opposed to other admissibility requirements or visa-application procedures.[5]

In sum, Plaintiffs' assertions of harm all depend on unsupported assumptions that are contrary to the record currently before the Court.  Plaintiffs have therefore failed to demonstrate any harm attributable to the requested stay, particularly in light of the existing nationwide injunctions and this Court's ability to issue a prompt ruling on Plaintiffs' preliminary-injunction motions if necessary.

---

[4] *See* Order § 3(b)(iii); *UMAA* ECF No. 31 at 18-20 (explaining that the Order does not affect processing or travel of derivative or follow-to-join asylees).

[5] Plaintiffs also rely on a news report purportedly demonstrating a decrease in visas issued to nationals of the six countries at issue, by comparing yearly averages of visa issuances to the monthly issuance numbers for March and April 2017.  *See* Pars Opp. at 7 n.3.  As the article itself notes, however, there are many possible explanations for those numbers, such as a decrease in the overall number of visa applications, or differences between travel during March and April compared to other times of the year.  Obviously a number of factors—wholly unrelated to Section 2(c) of the Order—can affect the number and timing of visa issuances.

**B.     The President's Recent Comments Are Wholly Irrelevant to the Stay Motion, and In Any Event Are Consistent with the Government's Prior Arguments**

Unable to demonstrate harm from the Government's requested stay, Plaintiffs instead focus on the President's recent remarks on Twitter, none of which has anything to do with the stay motion presently before the Court.  Nor are the President's comments inconsistent with the Government's prior representations in this case.

As an initial matter, both Pars and UMAA correctly recognize that, to the extent the President's recent comments are relevant at all, it would only be on the *merits* of their claims—not the present stay motion.  *See* Pars Opp. at 4 (arguing that "President Trump's recent statements further undermine the Government's arguments on the merits"); UMAA Opp. at 7 (discussing the President's comments in the context of "the body of evidence that UMAA will bring to bear here on its claim for a permanent injunction").  Plaintiffs make no effort to connect the President's remarks to the factors the Court must consider in deciding this stay motion.  Thus, the Court need not even consider the comments.

Although the President's remarks are wholly irrelevant to the present issues, a brief discussion is warranted to demonstrate that the *Pars* Plaintiffs' accusations that the Government has made inaccurate representations to the Court and is potentially failing to comply with the injunctions entered in other cases, *see* Pars Opp. at 4-9, are wholly unfounded.  Simply put, the *Pars* Plaintiffs' assertions all depend on the false premise that the implementation of "extreme vetting" means that the Government has implemented Section 2(c) of the Order.  It has not:  The Government has complied fully with the injunctions against Section 2(c) by halting the implementation of that section.  Of course, as Plaintiffs and the Court are well aware, that does not mean the Government has stopped vetting altogether, or has stopped working on vetting

improvements as part of normal operations or in connection with *other* policies or directives that have *not* been enjoined.

For example, Section 5 of the Order—which has not been enjoined—is titled "Implementing Uniform Screening and Vetting Standards for All Immigration Programs," and directs various agencies to "implement a program, as part of the process for adjudications, to identify individuals who seek to enter the United States on a fraudulent basis, who support terrorism, violent extremism, acts of violence toward any group or class of people within the United States, or who present a risk of causing harm subsequent to their entry."  Order § 5(a). Similarly, a Presidential Memorandum—issued separate from the Order challenged here—directs agencies to "implement protocols and procedures as soon as practicable that in their judgment will enhance the screening and vetting of applications for visas and all other immigration benefits, so as to increase the safety and security of the American people."  Presidential Memorandum, *Implementing Immediate Heightened Screening and Vetting of Applications for Visas and Other Immigration Benefits* (Mar. 6, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/03/06/memorandum-secretary-state-attorney-general-secretary-homeland-security.

The Government's implementation of enhanced vetting procedures pursuant to Section 5 of the Order and/or the Presidential Memorandum does not contradict any of the Government's prior statements or arguments made in this case.  The *Pars* Plaintiffs do not challenge either Section 5 or the Presidential Memorandum, and therefore it remains true that their requested preliminary injunction—against specific portions of Sections 2, 3, and 6 of the Order—would not redress whatever harms they believe they are presently suffering.  Additionally, as the Secretary of Homeland Security recently explained in his testimony before Congress, although "[t]he men and women of DHS will do everything we can . . . within the law to keep the American people safe,"

the court injunctions against the Order have "prevented us from doing what I . . . believe we need to do to protect our homeland."  *See* Secretary John F. Kelly, Oral Testimony of DHS Secretary Kelly for a House Committee on Homeland Security Hearing (June 7, 2017), *available at* https://www.dhs.gov/news/2017/06/07/oral-testimony-dhs-secretary-kelly-house-committee-homeland-security-hearing-titled.

There is also no injunction-compliance issue.  Neither Section 5 nor the Presidential Memorandum has been enjoined, and those two policy initiatives serve different purposes than Section 2 of the Order.  Specifically, Section 2 directed a worldwide review to determine whether additional information *from foreign governments* is needed for vetting purposes.  Section 5 and the Presidential Memorandum, in contrast, are generally aimed at the United States' *internal* efforts to implement a uniform baseline for screening and vetting standards and procedures, including obtaining appropriate information *from individual applicants themselves*.  Thus, the Government's implementation of increased measures with respect to individual applicants pursuant to Section 5 of the Order does not run afoul of the injunctions against Section 2.[6]

In short, there is absolutely no basis for the *Pars* Plaintiffs' accusations of misrepresentations and non-compliance.  Neither Section 5 of the Order nor the Presidential Memorandum is challenged by the *Pars* Plaintiffs; neither one is enjoined; and neither one has been concealed or misrepresented to the Plaintiffs or this Court.  Indeed, both Section 5 of the Order and the Presidential Memorandum have been publicly available since March 6, 2017.  *Cf.*

---

[6] The only specific policy mentioned by Plaintiffs is DHS's recent announcement that it would begin seeking social media information from certain individuals seeking admission to the United States.  *See* Pars Opp. at 5 n.1; *see also* Dep't of Homeland Sec., *Agency Information Collection Activities: Arrival and Departure Record (Forms I-94 and I-94W) and Electronic System for Travel Authorization*, 81 Fed Reg. 40,892 (June 23, 2016).  This policy has no connection to Sections 2 or 6 of the Order, and therefore is not prohibited by the injunctions against those sections.

UMAA Am. Compl. (ECF No. 32) ¶ 179 (seeking relief against Section 5 of the Order); *id.* ¶¶ 74-75 (discussing the Presidential Memorandum).  And Section 5 was expressly discussed at the preliminary-injunction hearing—with counsel for UMAA speaking *approvingly* of Section 5's across-the-board policies.  *See* PI Hr'g Tr. at 29-30, 36-38.  The *Pars* Plaintiffs can hardly claim surprise, therefore, about the Government's implementation of increased vetting procedures pursuant to those distinct policy directives.

### C.      The Government's Proposed Stay Is Reasonable In Length

Plaintiffs' filings confirm that the Government's proposed stay is reasonable in length. Plaintiffs do not dispute the remarkable pace with which the *IRAP* and *Hawaii* cases have proceeded.  Indeed, the *UMAA* filing expressly acknowledges that a stay here would likely be only a matter of months, because the Government has requested expedited consideration of its petition for certiorari and expedited merits briefing to be completed by the beginning of the Supreme Court's next Term.  *See* UMAA Opp. at 9.

In cases like these presenting these exceptionally important issues, a stay of a matter of months is quite reasonable.  *See Landis*, 299 U.S. at 256 ("Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."); *see also Arab Am. Civil Rights League*, Exh. H at 5 ("Although a stay will delay these proceedings, the Court finds that potential prejudice to Plaintiffs is less drastic than they set forth. The Supreme Court is expediting its decision on Defendants' petition for *certiorari*.").  Given the limited amount of time that a stay would likely require—combined with the significant benefits to judicial economy and conservation of the parties' resources—a stay of further proceedings pending potential Supreme Court review is amply warranted here.

## CONCLUSION

The Court should grant Defendants' motion to stay further proceedings in this matter pending Supreme Court review, pursuant to the previously filed proposed orders.


Dated: June 14, 2017                    Respectfully submitted,

                                        CHAD A. READLER
                                        Acting Assistant Attorney General

                                        CHANNING D. PHILLIPS
                                        United States Attorney

                                        JOHN R. TYLER
                                        Assistant Branch Director

                                        */s/  Daniel Schwei*
                                        DANIEL SCHWEI (N.Y. Bar)
                                        MICHELLE R. BENNETT (Co. Bar No. 37050)
                                        ARJUN GARG (D.C. Bar No. 975335)
                                        BRAD P. ROSENBERG (D.C. Bar No. 467513)
                                        Trial Attorneys
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Ave NW
                                        Washington DC 20530
                                        Tel: (202) 305-8693
                                        Fax: (202) 616-8470
                                        E-mail: daniel.s.schwei@usdoj.gov

                                        *Attorneys for Defendants*