# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
PARS EQUALITY CENTER, *et al.*,       )
)
                          Plaintiffs,  )
)
v.                                     )        Civil Action No. 1:17-cv-00255-TSC
)
DONALD J. TRUMP, *in his official*     )
*capacity as President of the*         )
*United States*, *et al.*,             )
)
                          Defendants.  )
_____)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY AND FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................... 6

ARGUMENT ..................................................................................................................... 6

I.      Plaintiffs' Requested Relief Is Squarely Foreclosed by the Supreme Court's Recent
        Decision ................................................................................................................. 7

II.     Plaintiffs Have Not Satisfied the Other Requirements for Entry of a Preliminary
        Injunction ............................................................................................................. 10

        A.      Jane Does #8 and #9 Have No Constitutional Rights Concerning Entry to
                the United States ......................................................................................... 11

        B.      Plaintiffs Have Not Established Imminent Injury in Support of Standing,
                Much Less Irreparable Harm, for Jane Does #8 and #9 ........................ 12

        C.      Jane Does #8 and #9 Have Not Established a Likelihood of Success on Their
                Unspecified Claims Against Section 6(a) of the Order............................ 15

III.    Under No Circumstances Should the Court Enter Relief Beyond the Individual
        Plaintiffs Here ....................................................................................................... 17

        A.      Plaintiffs Lack Standing to Seek Relief Against Section 2(c) or the Second
                Sentence of Section 6(a) .............................................................................. 17

        B.      This Court's Relief Should Not Extend Beyond the Parties to This Lawsuit ....... 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Vance*,
   570 F.2d 950 (D.C. Cir. 1978) ............................................................... 6

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) .............................................................................. 18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................. 12

*DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*,
   887 F.2d 275 (D.C. Cir. 1989) .............................................................. 11

*Hawaii v. Trump*,
   --- F. Supp. 3d. ----, 2017 WL 1167383 (D. Haw. Mar. 29, 2017) .............. 3

*Hawaii v. Trump*,
   --- F.3d ----, 2017 WL 2529640 (9th Cir. June 12, 2017) ................. 3, 7, 16

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................... 5

*In re Navy Chaplaincy*,
   534 F.3d 756 (D.C. Cir. 2008) .............................................................. 15

*Int'l Refugee Assistance Project v. Trump*,
   --- F. Supp. 3d ----, 2017 WL 1018235 (D. Md. Mar. 16, 2017) .......... 3, 15

*Int'l Refugee Assistance Project v. Trump*,
   857 F.3d 554 (4th Cir. 2017) .................................................................. 3, 7

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ....................................................................... 4, 9, 11

*Landon v. Plasencia*,
   459 U.S. 21 (1982) ................................................................................ 11

*Lewis v. Casey*,
   518 U.S. 343 (1996) .............................................................................. 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................. 14

*Munaf v. Geren,*
    553 U.S. 674 (2008) ............................................................................................. 6

*Sale v. Haitian Centers Council, Inc.,*
    509 U.S. 155 (1993) ........................................................................................... 16

*Save Jobs USA v. Dep't of Homeland Sec.,*
    105 F. Supp. 3d 108 (D.D.C. 2015) ............................................................... 12, 14

*Trump v. Int'l Refugee Assistance Project,* (IRAP),
    --- S. Ct. ----, 2017 WL 2722580 (U.S. June 26, 2017) .................................... *passim*

*United States v. Sum of $70,990,605,*
    991 F. Supp. 2d 154 (D.D.C. 2013) ................................................................ 16

*Winter v. NRDC,*
    555 U.S. 7 (2008) ............................................................................................. 6

**Statutes**

8 U.S.C. § 1157(c)(3) ............................................................................................... 18

8 U.S.C. § 1182(f) .................................................................................................... 16

**Regulations**

Exec. Order No. 13,780, 82 Fed. Reg. 13, 209 (Mar. 6, 2017) ............................................ *passim*

**Rules**

LCvR 65.1(c) ............................................................................................................ 19

## INTRODUCTION

The United States Supreme Court recently stayed in part two district court injunctions against Executive Order No. 13,780, *Protecting the Nation From Foreign Terrorist Entry Into the United States*, 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("the Order"), concluding that those injunctions improperly extended to foreign nationals and refugees "who lack any bona fide relationship with a person or entity in the United States." *Trump v. Int'l Refugee Assistance Project (IRAP)*, --- S. Ct. ----, 2017 WL 2722580, at *5 (U.S. June 26, 2017) (per curiam).  Plaintiffs have now filed an emergency motion asking this Court to enter the very same relief the Supreme Court found inappropriate:  an order prohibiting enforcement of Sections 2(c) and 6(a) of the Order against any and all "refugee applicants who have no 'credible claim of a bona fide relationship with a person or entity in the United States.'"  Pls.' Br. (ECF No. 92-1) at 1.

This Court cannot enter an injunction that the Supreme Court has already determined to be unwarranted.  Plaintiffs vaguely suggest that the Supreme Court's decision is not binding on them, because their clients—in particular two refugee applicants, Jane Does #8 and #9—will allegedly suffer greater harms than the plaintiffs before the Supreme Court in *IRAP* and *Hawaii*.  In reaching its decision, however, the Supreme Court was surely aware that many refugees face difficult, unfortunate circumstances and took that into account in making its decision.  And in any event, the Supreme Court's balancing of the equities was based on a *categorical* judgment that, for refugees lacking connections to persons or entities in the United States, neither the refugees nor anyone else has a legally cognizable stake in their entry, and therefore the exclusion of such individuals does not create "any legally relevant hardship[.]"  *Trump v. IRAP*, 2017 WL 2722580, at *6.  This *legal* principle does not vary based on the particular factual circumstances of such refugees.  Because it

applies equally to Jane Does #8 and #9 here, they fall squarely within the Supreme Court's decision regarding the appropriate scope of relief.

Even if the Supreme Court's decision were not binding, moreover, Plaintiffs still would not be entitled to relief because they do not satisfy the other elements necessary to obtain a preliminary injunction. Specifically, Jane Does #8 and #9 lack standing to bring their claims because they lack constitutional rights concerning entry into the United States; they have not established any imminent injury, let alone irreparable injury, that they would suffer as a result of Section 6(a)'s 120-day suspension of travel and decisions on applications for refugee status; nor have they established any likelihood of success with respect to a claim against Section 6(a)'s 120-day suspension provision. Plaintiffs' motion makes virtually no effort to satisfy these independent requirements for relief, which provides an additional basis for denying their motion.

Finally, even if Plaintiffs' motion had some merit, the relief they seek is overbroad. Their motion is brought only on behalf of refugees, and therefore offers no basis for relief against Section 2(c) of the Order, which does not apply to refugees. There is also no basis for Plaintiffs' request for a nationwide injunction applicable to all refugees "similarly situated" to Jane Does #8 and #9; at an absolute maximum, this Court should limit its relief to the individual plaintiffs in this lawsuit. For similar reasons, the Court should disregard Plaintiffs' belatedly filed supplemental memorandum and declaration from a non-plaintiff refugee applicant—neither filing changes any of the above analysis. Accordingly, as discussed further below, this Court should deny Plaintiffs' motion and continue the stay in this matter.

## BACKGROUND

Plaintiffs filed their operative Amended Complaint on March 15, 2017, seeking an injunction against Sections 2(c)-(e), 3, 6(a), and 6(c) of the Order. *See* Am. Compl. (ECF No. 34)

at 77-78 (Prayer for Relief).   Later that day, Plaintiffs also filed a motion for a preliminary injunction against the same sections of the Order.  *See* ECF No. 35-3 (Proposed Order).

Challenges against the Order were also filed in several other courts, including the Districts of Maryland and Hawaii.  The District of Maryland enjoined Section 2(c) of the Order nationwide, and the District of Hawaii enjoined Sections 2 and 6 of the Order nationwide.  *See IRAP v. Trump*, --- F. Supp. 3d ----, 2017 WL 1018235, at *18 (D. Md. Mar. 16, 2017); *Hawaii v. Trump*, --- F. Supp. 3d. ----, 2017 WL 1167383, at *9 (D. Haw. Mar. 29, 2017).   Based on these nationwide injunctions, this Court stayed consideration of Plaintiffs' motion for a preliminary injunction.  *See* ECF No. 84.

The Government appealed both the *IRAP* and *Hawaii* injunctions.  In *IRAP*, the *en banc* Fourth Circuit affirmed in substantial part the nationwide injunction as to Section 2(c).  *See IRAP v. Trump*, 857 F.3d 554 (4th Cir. 2017) (en banc).  In *Hawaii*, a panel of the Ninth Circuit vacated the portions of the injunction that prevented the Government from conducting internal reviews, but affirmed the injunction as to Section 2(c)'s suspension of entry of certain foreign nationals for 90 days; Section 6(a)'s suspension of certain aspects of the United States Refugee Admissions Program ("Refugee Program") for 120 days; and Section 6(b)'s cap on the entry of refugees to 50,000 in fiscal year 2017.  *See Hawaii v. Trump*, --- F.3d ----, 2017 WL 2529640 (9th Cir. June 12, 2017).

The Government sought further review of both the *IRAP* and *Hawaii* injunctions from the Supreme Court and also asked the Supreme Court to stay the injunctions pending the Court's ultimate decision on the merits.  Following the filing of the petition for certiorari in *IRAP*, the Government moved to stay all proceedings in this case.  *See* ECF No. 87.  This Court granted that motion to stay, noting "the substantial overlap between the legal issues present here and those that

the Supreme Court may itself soon decide." ECF No. 91 at 2. The Court also denied Plaintiffs'

motion for a preliminary injunction without prejudice, and stated that "[i]f circumstances change

prior to the Supreme Court issuing its final decision, any party may file a motion to lift the stay

and may then re-file a motion for a preliminary injunction." *Id.*

On June 26, 2017, the Supreme Court granted certiorari in both *IRAP* and *Hawaii*, and also

narrowed those injunctions in response to the Government's stay requests. *See Trump v. IRAP*,

2017 WL 2722580, at *5. At the outset, the Court framed its task as deciding whether equitable

considerations required a stay of the lower courts' preliminary injunctions. *See id.* ("Here, of

course, we are not asked to grant a preliminary injunction, but to stay one. In assessing the lower

courts' exercise of equitable discretion, we bring to bear an equitable judgment of our own."). The

Supreme Court did not disturb the lower courts' balancing of equities with respect to "people or

entities in the United States who have relationships with foreign nationals abroad, and whose rights

might be affected if those foreign nationals were excluded." *Id.*

The Court held that the injunctions should not extend beyond those circumstances,

however, and therefore should not apply to "foreign nationals abroad who have no connection to

the United States at all." *Id.* at *6. For those individuals, "[t]he equities relied on by the lower

courts do not balance the same way," because "[d]enying entry to such a foreign national does not

burden any American party by reason of that party's relationship with the foreign national" and

also does not "impose any legally relevant hardship on the foreign national himself." *Id.* (citing

*Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("An unadmitted and nonresident alien has no

constitutional right of entry to this country." (modifications omitted))).

Moreover, the Supreme Court noted that the Government's national-security interests "are

undoubtedly at their peak when there is no tie between the foreign national and the United States."

*Id.* And because "[t]he interest in preserving national security is 'an urgent objective of the highest order,'" the Court concluded that the Government should not be prohibited from enforcing the Order "against foreign nationals unconnected to the United States"; doing so "would appreciably injure [the Government's] interests, without alleviating obvious hardship to anyone else."  *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010)).

Accordingly, the Supreme Court narrowed the *IRAP* and *Hawaii* injunctions to prohibit the Order's enforcement "against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States," but to allow enforcement of the Order against "[a]ll other foreign nationals[.]"  *Id.*  The Supreme Court applied this same framework across Sections 2(c), 6(a), and 6(b).  *See id.* at *7.  Thus, pursuant to the Supreme Court's decision, the Order may be enforced against all foreign nationals and refugees except those "who can credibly claim a bona fide relationship with a person or entity in the United States."  *Id.*

Two days after the Supreme Court's decision, Plaintiffs here filed an emergency motion to lift the stay and for a temporary restraining order and preliminary injunction.  *See* ECF No. 92. Plaintiffs argue that two of the individual plaintiffs in this suit, Jane Does #8 and #9, are "refugee applicants who do not have immediate family, or offers to work or study, in the United States," and therefore these plaintiffs (and other individuals similarly situated) have now allegedly been "expose[d] . . . to imminent irreparable harm" due to the "Supreme Court's narrowing of the[] injunctions[.]"  Pls.' Br. at 3.  Accordingly, Plaintiffs request that this Court enter an injunction prohibiting enforcement of Sections 2(c) and 6(a) "against Plaintiffs Jane Doe #8 and Jane Doe #9 and all others similarly situated, *i.e.*, applicants for entry into the United States as refugees who have no 'credible claim of a bona fide relationship with a person or entity in the United States.'" ECF No. 92-5 (Proposed Order).

In a Minute Order issued on June 28, 2017, this Court denied Plaintiffs' request for a temporary restraining order, finding that "Plaintiffs have not demonstrated immediate and irreparable injury that would necessitate a temporary restraining order." The Court further directed the Government to respond to Plaintiffs' request for a preliminary injunction by July 5, 2017.

On July 4, 2017—without obtaining leave of Court or providing advance notice to the Government—Plaintiffs filed a "supplemental memorandum" in support of their motion, and also attached a declaration from a non-plaintiff individual who has applied to become a refugee. *See* ECF No. 93. Plaintiffs assert these filings further demonstrate their need for relief from this Court.

## STANDARD OF REVIEW

Emergency relief is "an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). The movant "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Injunctive relief that "deeply intrudes into the core concerns of the executive branch"—including foreign affairs and national security—may be awarded only upon "an extraordinarily strong showing" as to each element. *Adams v. Vance*, 570 F.2d 950, 954-55 (D.C. Cir. 1978).

## ARGUMENT

Plaintiffs' motion contains a remarkable request: that this Court enter the *same* relief that the Supreme Court recently decided was legally unwarranted. There is no basis for this Court to enter relief in contravention of the Supreme Court's ruling, nor would such relief be justified on its own terms. Plaintiffs' motion should be denied, and the stay in this case should be continued until after the Supreme Court issues a final decision on the merits.

I.      **Plaintiffs' Requested Relief Is Squarely Foreclosed by the Supreme Court's Recent Decision**

The Supreme Court's decision in *IRAP* and *Hawaii* makes clear that courts should not enjoin the Order's enforcement against "foreign nationals abroad who have no connection to the United States at all." *Trump v. IRAP*, 2017 WL 2722580, at *6. Yet that is exactly the relief that Plaintiffs seek here:  an injunction prohibiting the Government "from enforcing §§ 2(c) and 6(a) of the March 6 Executive Order against . . . refugee applicants who have no 'credible claim of a bona fide relationship with a person or entity in the United States.'"  Pls.' Br. at 1.

This Court cannot issue relief that the Supreme Court has deemed improper.  Recognizing this problem, Plaintiffs suggest that the Supreme Court's decision is not binding on them.  Their theory appears to be that the plaintiffs in *IRAP* and *Hawaii* did not actually represent the interests of refugee applicants who lack connections to the United States (such as Jane Does #8 and #9), and therefore the Supreme Court's decision does not conclusively resolve the equitable balancing for claims brought by such individuals.  This theory is a transparent attempt to evade the Supreme Court's decision and suffers from several flaws.

As an initial matter, Plaintiffs are wrong that no party represented the interests of refugee applicants and advocacy organizations before the Supreme Court.  *See* Pls.' Br. at 4.  In *IRAP*, two organizations—the International Refugee Assistance Project (IRAP) and the Hebrew Immigrant Aid Society (HIAS)—were named plaintiffs, suing both on their own behalf *and* on behalf of foreign nationals abroad (*i.e.*, individuals whom IRAP and HIAS purport to represent).  *See generally IRAP*, 857 F.3d at 578.  And in *Hawaii*, the State of Hawaii sued based on its alleged sovereign interest in resettling refugees from abroad.  *See generally Hawaii*, 2017 WL 2529640, at *9.  Thus, the *IRAP* and *Hawaii* plaintiffs sought to represent the same interests that the Plaintiffs here are pursuing.

Moreover, whether refugees were technically represented in *IRAP* and *Hawaii* is beside the point given the Supreme Court's rationale.  It is not plausible for Plaintiffs to suggest that the Court was ignorant of the unfortunate circumstances that many refugees face.  Surely the Court—in deciding to exclude from the scope of the injunctions refugees who lack a credible claim to a bona fide relationship with a person or entity in the United States—was cognizant of those refugees' equities, and took them into account in reaching its decision.[1]

Plaintiffs suggest that the Supreme Court narrowed the injunctions only because "none of the plaintiffs in the cases before the Supreme Court were visa or refugee applicants lacking a credible claim to a bona fide relationship to a U.S. person or entity," and therefore the Court was simply "tailor[ing] injunctive relief to the actual parties and issues before them."  Pls.' Br. at 2-3. This description mischaracterizes the Court's decision.  The Court did not narrow the injunction on the basis that it was unnecessary to decide whether a broader injunction was justified.  Rather, the Court conducted its own balancing of the equities, and conclusively determined not to allow the injunctions to extend to foreign nationals and refugees lacking a credible claim to a bona fide relationship to a person or entity in the United States.  *See, e.g.*, *Trump v. IRAP*, 2017 WL 2722580, at *5-6 (concluding that "[t]he equities relied on by the lower courts do not balance the same way in th[e] context" of "foreign nationals abroad who have no connection to the United States at all"); *id.* at *7 ("[W]hen it comes to refugees who lack any such connection to the United States, for the

---

[1] Plaintiffs' supplemental memorandum asserts that "refugees have never been required to establish such familial relationships as a condition for admission to the United States."  ECF No. 93 at 2.  This assertion ignores that the Supreme Court, in weighing the equities of allowing the Order to be enforced against refugees, determined the relevant criterion to be whether "an individual seeking admission as a refugee . . . can credibly claim a bona fide relationship with a person or entity in the United States."  *Trump v. IRAP*, 2017 WL 2722580, at *7.  Plaintiffs' argument reflects that their motion is based on Plaintiffs' disagreement with the Supreme Court, not based on a legally supportable theory permitting relief consistent with the Court's decision.

reasons we have set out, the balance tips in favor of the Government's compelling need to provide for the Nation's security.").  Thus, Plaintiffs are wrong to suggest that "the Court was not able actually to balance the competing interests," Pls.' Br. at 4; the Court indeed balanced the equities and concluded Plaintiffs' requested relief is inappropriate.

Finally, Plaintiffs suggest that the Supreme Court's opinion does not conclusively decide the issue—*i.e.*, that even though the Court granted a stay narrowing the injunctions in *IRAP* and *Hawaii* to exclude foreign nationals lacking the requisite relationship to the United States, "[t]he Supreme Court did not rule out that such individuals could have a cognizable interest in some circumstances[.]"  *Id.* at 2.  Notably, Plaintiffs do not point to any specific language in the Court's opinion that could be read to preserve this possibility.  That is because nothing in the Court's opinion suggests that, for individuals lacking the requisite connections to the United States, a different outcome might be permissible depending on different factual circumstances.  To the contrary, the Court's decision was based on a categorical judgment applicable to *all* such foreign nationals lacking the requisite relationship—*i.e.*, that exclusion of such an individual "does not burden any American party," nor does it "impose any legally relevant hardship on the foreign national himself" because "'[a]n unadmitted and nonresident alien has no constitutional right of entry to this country.'"  *Trump v. IRAP*, 2017 WL 2722580, at *6 (quoting *Mandel*, 408 U.S. at 762 (modifications omitted)).  These legal principles apply universally—including to Jane Does #8 and #9, as well as to individuals "similarly situated"—and there is accordingly no basis for Plaintiffs to argue that their own particular circumstances warrant a different equitable balancing.

In short, Plaintiffs' efforts to circumvent the Supreme Court's decision are unavailing.  The Court has made clear, based on a categorical legal principle, that district courts should not prohibit enforcement of the Order as to foreign nationals lacking a credible claim to a bona fide relationship

with a person or entity in the United States.  That holding binds this Court, and squarely forecloses Plaintiffs' requested relief.[2]

## II.   Plaintiffs Have Not Satisfied the Other Requirements for Entry of a Preliminary Injunction

Even apart from Plaintiffs' attempt to contravene the Supreme Court's recent decision, Plaintiffs fail to justify their requested relief even on its own terms.  Plaintiffs' motion does not seek to establish a likelihood of success on any particular claims, but instead relies on this Court's prior statement that "the court is inclined to agree with Plaintiffs that they are likely to succeed on the merits of their claims with respect to Sections 2 and 6 of the Second Executive Order."  ECF No. 84 at 2; *see* Pls.' Br. at 1-2.

The Court's prior statement, however, was made in the context of a motion for a preliminary injunction brought on behalf of twenty different plaintiffs, alleging at least five different claims, and challenging six different provisions of the Order.  The Government respectfully submits that, whatever the Court's prior conclusions in that context, those conclusions do not equate to a specific finding that *these* two particular plaintiffs (Jane Does #8 and #9) have demonstrated a likelihood of success with respect to a particular claim (nowhere specified in

---

[2]   In their supplemental memorandum, Plaintiffs assert that "[t]he Government's implementation of the [Supreme Court's] June 26 decision is arbitrary and capricious."  ECF No. 93 at 2.  This unexplained assertion has no bearing on the arguments Plaintiffs advanced in their motion—*i.e.*, that refugees like Jane Does #8 and #9 are entitled to a different equitable balancing than the balance articulated by the Supreme Court.  Certainly Plaintiffs cannot expand the scope of their motion by filing a procedurally improper supplemental memorandum the day before Defendants' opposition is due.  *See also* Section III.B, *infra*.  In any event, the Government has now explained in detail the rationale for its implementation of the Supreme Court's decision, not only in the public guidance cited by Plaintiffs but also in a filing in the *Hawaii* litigation.  *See* Defs.' Opp. to Pls.' Emerg. Mot. for Clarification, *Hawaii v. Trump*, No. 17-cv-50-DKW-KSC (D. Haw.), ECF No. 301 (filed July 3, 2017).

Plaintiffs' motion) against a particular section of the Order—*i.e.*, Section 6(a)'s 120-day suspension of decisions on applications and travel under the Refugee Program.

That type of determination—specific to these plaintiffs and to Section 6(a)—is what the Court would have to make to provide Plaintiffs' requested relief. However, for the reasons discussed below, even setting aside the Supreme Court's recent decision, Plaintiffs have not satisfied any of the elements necessary for obtaining the extraordinary remedy of a preliminary injunction.

### A.    Jane Does #8 and #9 Have No Constitutional Rights Concerning Entry to the United States

As the Government explained at the preliminary-injunction stage, and the Supreme Court has now confirmed, the claims of Jane Does #8 and #9 fail because they do not have any rights regarding their admission to the United States. *See Trump v. IRAP*, 2017 WL 2722580, at *6; *see also Mandel*, 408 U.S. at 762 ("It is clear that Mandel personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise."); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

At the preliminary-injunction stage, Plaintiffs' only response to this argument was to say that it did not present a jurisdictional issue. Rather, according to Plaintiffs, it is an argument as to why the refugees' claims fail on the merits. *See* ECF No. 72 at 8-9. But the D.C. Circuit has previously treated aliens' lack of constitutional rights as a threshold standing issue. *See DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 285 (D.C. Cir. 1989) ("[W]e cannot find that the District Court erred in holding that the [foreign nongovernmental organizations] were without standing to assert the constitutional claims."). And in any event, whether this defect is

framed as a standing or merits question, Jane Does #8 and #9's lack of rights regarding their entry into the United States is an independent ground foreclosing Plaintiffs' requested relief.

> **B.      Plaintiffs Have Not Established Imminent Injury in Support of Standing, Much Less Irreparable Harm, for Jane Does #8 and #9**

Article III requires plaintiffs to establish they are facing a concrete, certainly impending injury-in-fact.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (modifications omitted)).  Plaintiffs seeking a preliminary injunction must go even further; they must prove that the "injury is *certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm."  *Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015).  Here, Jane Does #8 and #9 have not established either requirement.  To be sure, the declarations submitted by Jane Does #8 and #9 describe horrible acts inflicted upon them. The relevant legal question, however, is not whether Jane Does #8 and #9 have suffered terrible circumstances; rather, it is whether they will suffer a concrete, certainly impending harm as a result of enforcing Section 6(a)'s 120-day suspension—*i.e.*, a harm that would not occur in the absence of Section 6(a)'s enforcement.

Plaintiffs have not established any such imminent injury.  As discussed in prior filings, the refugee admissions process is a time-consuming, multi-step process.  *See generally* Dep't of State, "U.S. Refugee Admissions Program," https://www.state.gov/j/prm/ra/admissions/index.htm (setting forth the process for refugee application, admission, and travel to the United States, and noting that "[t]he total processing time varies . . . but the average time from the initial UNHCR referral to arrival as a refugee in the United States is about 18-24 months").  Here, the declarations from Jane Does #8 and #9 appear to indicate that they have completed interviews with their

Refugee Support Center (run by the International Catholic Migration Commission through a cooperative agreement with the Department of State), and they are now waiting for their interviews with the Department of Homeland Security to be scheduled.  *See, e.g.*, Decl. of Jane Doe #8 (ECF No. 92-2) ¶¶ 13, 22, 26; Decl. of Jane Doe #9 (ECF No. 92-3) ¶¶ 12, 21, 25.  In other words, based on the process described on the State Department's website, Jane Does #8 and #9 are somewhere between steps two and three—well before the full six steps necessary before an applicant is actually approved for travel to the United States as a refugee.

Given the present posture of Jane Does #8 and #9's refugee applications, it is wholly speculative whether Section 6(a)'s 120-day suspension would materially affect them.  For example, even if they were to have DHS interviews scheduled within that period, Plaintiffs have submitted no evidence that, but for Section 6(a)'s 120-day suspension, Jane Does #8 and #9 would otherwise receive a decision on their applications for refugee status.  *Cf.* Order § 6(a) (suspending only "travel of refugees into the United States" and "decisions on applications for refugee status").  Moreover, it is wholly speculative whether the 120-day suspension would ultimately delay Jane Does #8 and #9's arrival in the United States (which is itself a contingent future event, given that Jane Does #8 and #9 have not yet been formally approved as refugees).

Any ultimate delay in Jane Does #8 and #9's arrival is particularly speculative in light of Section 6(b), which sets a cap of 50,000 on refugee admissions for fiscal year 2017.  Plaintiffs here do not challenge that provision, and the Government may apply it against individuals like Jane Does #8 and #9 who are covered by the Supreme Court's stay of the *Hawaii* injunction.  *See Trump v. IRAP*, 2017 WL 2722580, at *7 (staying injunction against Section 6(b) with respect to individuals lacking the requisite relationship to individuals or entities within the United States).

Because that 50,000 cap will be reached very soon,[3] an injunction against Section 6(a) still would be unlikely to allow Jane Does #8 and #9 to travel to the United States during this fiscal year (*i.e.*, prior to September 30, 2017).  *Cf.* Decl. of Pars Equality Center (ECF No. 35-2, Exh. 1) ¶ 38 ("[E]ven if the refugee program is resumed, the limit of 50,000 refugees in fiscal year 2017 will severely restrict any chances that such individuals may have of coming to the United States.").  Thus, any harm *attributable to Section 6(a)* is not a concrete, imminent threat.  At the very least Plaintiffs have not carried their burden of submitting evidence that they will suffer immediate injuries absent an injunction against Section 6(a).  *See Save Jobs USA*, 105 F. Supp. 3d at 112 ("The movant must provide some evidence of irreparable harm: the movant must substantiate the claim that irreparable injury is likely to occur and provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." (modifications omitted)).[4]

Accordingly, Plaintiffs have not carried their burden of demonstrating Article III standing, let alone irreparable harm sufficient to justify entry of an extraordinary remedy.  These defects are independent grounds for denying Plaintiffs' motion.

---

[3] *See Background Briefing on the Implementation of Executive Order 13780 Protecting the Nation From Foreign Terrorist Entry Into the United States*, U.S. Dep't of State (June 29, 2017), *available at* https://www.state.gov/r/pa/prs/ps/2017/06/272281.htm (stating that "as of last night, we had admitted 49,009 refugees in this fiscal year").

[4] Indeed, it is doubtful that Jane Does #8 and #9 ever had Article III standing to challenge the 120-day suspension.  Standing must exist at the time the Complaint is filed.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992).  Here, according to Jane Doe #8 and #9's declarations, neither individual has meaningfully progressed in the refugee resettlement process since December 2016—which includes the nearly 120 days when Section 6(a) was fully enjoined by the *Hawaii* injunction.  *See* Decl. of Jane Doe #8 ¶ 26; Decl. of Jane Doe #9 ¶ 25.  Thus, it is wholly speculative whether the 120-day suspension, if implemented from March 16, 2017 to June 14, 2017 as the Government originally intended, would have had any effect at all on Jane Doe #8 and #9's refugee applications given that their applications did not progress during that same time period when Section 6(a) was *not* being implemented.

-14-

### C.    Jane Does #8 and #9 Have Not Established a Likelihood of Success on Their Unspecified Claims Against Section 6(a) of the Order

Even if Jane Does #8 and #9 had adequately established their standing and irreparable harm, they still would not be entitled to Plaintiffs' requested preliminary injunction.  Plaintiffs have failed to articulate a legal theory that justifies preliminary relief against Section 6(a)'s temporary suspension of certain aspects of the Refugee Program.  In their preliminary-injunction papers, Plaintiffs brought claims under the Establishment Clause, Equal Protection Clause, Due Process Clause, and also under the Immigration and Nationality Act (INA) pursuant to the APA. None of those claims plausibly warrants relief specifically against Section 6(a) of the Order.

*First*, under the Establishment Clause, even assuming Jane Does #8 and #9 are construed to have rights under that constitutional provision, it is doubtful they could assert a claim based on discrimination against Muslims given that neither Jane Doe #8 nor Jane Doe #9 actually claims to be Muslim.  *See In re Navy Chaplaincy*, 534 F.3d 756, 764-65 (D.C. Cir. 2008) (explaining that, to have standing to bring an Establishment Clause claim, the plaintiff must be personally affected in some way).  Also, more fundamentally, Plaintiffs' Establishment Clause theory is foreclosed by the operation of Section 6(a), which implements a *worldwide* suspension of certain aspects of the Refugee Program (*i.e.*, without regard to religion or nationality).  Plaintiffs have not established a likelihood of success on a claim that this worldwide suspension is tainted by anti-Muslim animus. *Cf. IRAP*, 2017 WL 1018235, at *17 (enjoining Section 2(c) of the Order on Establishment Clause grounds, but declining to find the same violation with respect to the refugee provisions).

*Second*, Plaintiffs' statutory INA and Equal Protection claims likewise depend on a theory of nationality-based discrimination.  Again, those claims are impossible to mount given that Section 6(a) applies worldwide.  During the preliminary-injunction proceedings, Plaintiffs failed

to contest this argument.  *See* Defs.' PI Opp. (ECF No. 50) at 28; Pls.' Reply Br. (ECF No. 72) at 16-21.[5]

       *Third*, there is no Due Process Clause violation given Plaintiffs' lack of connections to the United States.  During the preliminary-injunction proceedings, Plaintiffs framed this claim exclusively around individuals *physically present* in the United States seeking to bring family members or others into the United States.  *See* Pls.' PI Br. (ECF No. 35-1) at 32-33.  The premise of Plaintiffs' current motion, of course, is that Jane Does #8 and #9 do not have any bona fide relationships with United States persons or entities.  By Plaintiffs' own admission, then, Jane Does #8 and #9 have no cognizable claims under the Due Process Clause.

       In sum, Plaintiffs' current motion for a preliminary injunction identifies no specific claim pursuant to which Jane Does #8 and #9 have established a likelihood of success with respect to Section 6(a).  Certainly none of the claims raised during the prior round of preliminary-injunction proceedings would justify relief as to Section 6(a).  Thus, Plaintiffs have failed to establish a likelihood of success, which is yet another independent bar to their requested relief.[6]

---

[5] The Court of Appeals for the Ninth Circuit affirmed the *Hawaii* preliminary injunction against Section 6(a) on statutory grounds, concluding that the President had not set forth a finding adequate to invoke his authority under 8 U.S.C. § 1182(f).  *See Hawaii*, 2017 WL 2529640, at *17. Plaintiffs in this case, however, have never pursued a statutory claim that the President's findings were inadequate under § 1182(f), and therefore they have forfeited the claim.  *Cf.* Local Civil Rule 65.1(c); *United States v. Sum of $70,990,605*, 991 F. Supp. 2d 154, 160 n.1 (D.D.C. 2013) (holding that argument was forfeited because it was not raised in party's opening motion for a preliminary injunction).

[6] Plaintiffs assert without further elaboration that refugee applicants like Jane Does #8 and #9 should be admitted "in accordance with our obligations under international law[.]"  Pls.' Br. at 5.  But nothing in the 1951 United Nations Convention Relating to the Status of Refugees, nor its 1967 Protocol to which the United States is a party, requires a state to bring refugees from other countries to their territory.  The United States' obligations under the 1967 Protocol do not apply to persons outside its territory.  *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 159 (1993).

**III.    Under No Circumstances Should the Court Enter Relief Beyond the Individual Plaintiffs Here**

For the reasons discussed above, this Court should deny Plaintiffs' motion.  Even were the Court to consider granting relief, however, Plaintiffs' requested relief is overbroad—extending to sections of the Order not plausibly related to their arguments, and seeking a nationwide injunction on behalf of non-plaintiff individuals "similarly situated" to Jane Does #8 and #9.  Under no circumstances should the Court grant this broad, free-ranging relief; at most the Court's relief should extend only to the individual named plaintiffs here, Jane Does #8 and #9.

**A.    Plaintiffs Lack Standing to Seek Relief Against Section 2(c) or the Second Sentence of Section 6(a)**

Plaintiffs' motion is overbroad because it seeks relief against Section 2(c) and all of Section 6(a), even though Section 2(c) does not apply to refugees, and some provisions within Section 6(a) relate to internal reviews that even Plaintiffs agree the Government may now conduct.

First, there is no basis for relief against Section 2(c).  Plaintiffs' motion makes clear that they are seeking relief only on behalf of refugees.  *See* Pls.' Br. at 1.  Section 2(c) is irrelevant to Plaintiffs' motion, therefore, because that provision does not suspend entry for individuals such as Jane Does #8 or #9 who hope to seek admission as refugees.  The Order specifically excepts from the scope of Section 2(c) refugees travelling to the United States, who would qualify as a "foreign national who has a document other than a visa, valid on the effective date of this order or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or

admission[.]"   Order § 3(b)(iii).[7]   Thus, Plaintiffs lack any basis for seeking relief against Section 2(c)—that provision does not restrict entry of approved refugees.

Second, there is no basis for an injunction against the entirety of Section 6(a).  Even Plaintiffs acknowledge that the Government may lawfully implement the second sentence of Section 6(a), which primarily addresses an internal review.  *See* Pls.' Br. at 4 (stating that "nothing is stopping the Government from carrying out its review now"); *see also Trump v. IRAP*, 2017 WL 2722580, at *7 (stating that "we fully expect that the relief we grant today will permit the Executive to conclude its internal work").  Thus, any relief provided by this Court must be limited to the provisions within Section 6(a) directly imposing the 120-day suspension.

### B.    This Court's Relief Should Not Extend Beyond the Parties to This Lawsuit

This Court should also reject Plaintiffs' request for a nationwide injunction applicable to all refugees "similarly situated" to Jane Does #8 and #9.  *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (noting "the rule that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)); *accord Lewis v. Casey*, 518 U.S. 343, 349 (1996).  The absolute maximum relief this Court could provide is an injunction limited to Jane Does #8 and #9—thus "tailor[ing] injunctive relief to the actual parties and issues before [the court]," as Plaintiffs themselves argue is proper.  Pls.' Br. at 2-3.

Moreover, Plaintiffs offer no standard by which it could possibly be determined who among the many thousands of refugee applicants are "similarly situated" to Jane Does #8 and #9.  Certainly, it cannot be Plaintiffs' contention that this Court should issue an injunction on behalf of

---

[7] Refugees travelling to the United States for the first time are not issued visas; they receive alternative documentation authorizing travel to the United States to seek admission as a refugee. *Cf.* 8 U.S.C. § 1157(c)(3) (exempting refugees from the requirement that they present a valid immigrant visa to obtain admission to the United States).

*all* refugee applicants who have no credible claim of a bona fide relationship with a person or entity in the United States, as that would effectively nullify the Supreme Court's partial stay of the lower court's injunction in relation to Section 6(a) of the Executive Order.

For similar reasons, this Court should disregard Plaintiffs' belatedly filed supplemental memorandum and declaration.  For one thing, the filing is plainly contrary to this Court's Local Rules, which require a motion for a preliminary injunction to include "all affidavits on which the plaintiff intends to rely," and prohibit supplemental filings absent prior leave of court: "Supplemental affidavits either to the application or the opposition may be filed only with permission of the Court."  Local Civil Rule 65.1(c).  In any event, the attached declaration is from a non-plaintiff individual, who therefore is not entitled to any relief stemming from this lawsuit between defined sets of parties.  And that individual's request for relief, even if considered by this Court, would be foreclosed for many of the same reasons as Jane Does #8 and #9's requests.

Accordingly, not only is Plaintiffs' requested relief overbroad, but there is no basis for any relief whatsoever.  The proper course is for this Court to deny Plaintiffs' motion and continue the stay in this matter.

## CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction, and continue the stay in this matter until after the Supreme Court's final decision on the merits in *IRAP* and *Hawaii*.

Dated: July 5, 2017                              Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

JOHN R. TYLER
Assistant Branch Director

*/s/  Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar)
MICHELLE R. BENNETT (Co. Bar No. 37050)
ARJUN GARG (D.C. Bar No. 975335)
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 305-8693
Fax: (202) 616-8470
E-mail: daniel.s.schwei@usdoj.gov

*Attorneys for Defendants*