IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARS EQUALITY CENTER, IRANIAN AMERICAN BAR ASSOCIATION, NATIONAL IRANIAN AMERICAN COUNCIL, PUBLIC AFFAIRS ALLIANCE OF IRANIAN AMERICANS, INC., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP et al., <br><br> *Defendants*. | No. 17-cv-255 (TSC) <br><br> Electronically Filed <br><br> Hon. Tanya S. Chutkan |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY AND FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Having already disrupted and even imperiled their lives, Defendants seek to strip refugees like Jane Does #8 and #9 and declarant Reza Zoghi of any possibility of refuge in the United States because they lack a "bona fide relationship" to a U.S. person or entity under Defendants' stingy definition. That is not what the Supreme Court held. Defendants' contention to the contrary ignores the explicit predicate of the equitable balance the Court struck, that no individuals or organizations before the Court presented these injuries. To strike the balance for parties like the refugees in this case was precisely what the Court *refused* to do. Thus, in addressing here the concrete circumstances the Supreme Court in its June 26 order found lacking, this Court retains its full discretion to preliminarily enjoin enforcement of the Executive Order against Jane Does #8 and #9 and others similarly situated.

This Court should reject Defendants' elastic reading of the Supreme Court's June 26 order. As Plaintiffs explained in detail in their motion and in previous filings, they satisfy each of the requirements for a preliminary injunction. Preliminary relief against the application of §§ 2 and 6 of the Executive Order against Jane Does #8 and #9 and others similarly situated should issue without delay.

1. Defendants are wrong that the Supreme Court considered the harms suffered by refugees, like Jane Does #8 and #9 and declarant Reza Zoghi,[1] who do not have what the Defendants deem a sufficiently close relationship to the United States. While plaintiffs in the *IRAP* and *Hawaii* cases included two organizations and the State of Hawaii, neither the harms

---

[1] Defendants complain that Mr. Zoghi's declaration is "procedurally improper" and that the Court should disregard it because Mr. Zoghi is a "non-plaintiff individual." Opp. 19. But Plaintiffs submitted Mr. Zoghi's declaration less than one week after they filed their motion, giving the government ample time to respond. Moreover, Mr. Zoghi and counsel have signed a retainer agreement, and Plaintiffs will amend their complaint to add Mr. Zoghi as a plaintiff in this case as soon as the stay is lifted.

1

suffered by those entities and the refugees they serve, nor the hardships that would befall refugees scheduled for resettlement in Hawaii, were actually at issue before the Supreme Court. *Trump v. Int'l Refugee Assistance Project*, Nos. 16-1436, 16-1540, 2017 WL 2722580, at *5–6 (U.S. June 26, 2017) ("*IRAP*").  The Court itself highlighted this fact, noting that the courts below "focus[ed] specifically on the concrete burdens that would fall on Doe, Dr. Elshikh, and Hawaii," i.e., "delaying entry of [Doe's and Dr. Elshikh's] family members to the United States," and "preventing students from the designated nations who had been admitted to the University of Hawaii from entering this country." *Id.* at *5.  But because the hardships of refugees who lack a bona fide connection with a U.S. person or entity was not litigated before the lower courts, the Supreme Court found it improper to include them in the equitable balance. *Id.* at *5–6.

      Defendants nevertheless attempt to expand the Supreme Court's ruling beyond what the Court wrote, asserting that "whether refugees were technically represented in *IRAP* and *Hawaii* is beside the point" because "[s]urely the Court—in deciding to exclude from the scope of the injunctions refugees who lack a credible claim to a bona fide relationship with a U.S. person or entity—was cognizant of those refugees' equities, and took them into account in reaching its decision." Opp. 8.  But Defendants' suggestion that the Court "surely" considered the harms to refugees (in the face of the Court's statements to the contrary) is irreconcilable with the basic equitable principle that extraordinary relief should be tailored to the harms and interests before the court.  That blackletter principle guided the Court's decision to narrow the *IRAP* and *Hawaii* injunctions. *IRAP*, 2017 WL 2722580, at *5 ("[A] court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2947, at 115 (3d ed. 2013)).  That a court should avoid speculating on facts or harms that the parties have not presented for its consideration was the key premise of the Supreme Court's decision.

Similarly, Defendants contend that Plaintiffs identified no "specific language" in the Supreme Court's opinion preserving the possibility that refugees lacking a bona fide relationship to a U.S. person or entity may demonstrate cognizable harms. Opp. 9. Plaintiffs did identify such language. *See* ECF 92-1 at 3–4. The Supreme Court focused on the respondents and "parties similarly situated to" the plaintiffs in the *IRAP* and *Hawaii* cases, noting that with regard to other foreign nationals who lacked similar connections to the United States, "the courts below did not conclude that exclusion in such circumstances would impose any legally relevant hardship." *IRAP*, 2017 WL 2722580, at *6. That was because no such hardships had been presented for the courts' consideration.

Finally, Defendants omit any discussion of their miserly interpretation of "bona fide relationship." Both Jane Does #8 and #9 and Mr. Zoghi have bona fide relationships, established prior to the Executive Orders, with non-governmental organizations that are helping them relocate to the United States. Further, Jane Doe #8 and Mr. Zoghi's wife have cousins in the United States. Nothing in the June 26 order mandates the Defendants' categorical and capricious position that none of these relationships is "bona fide."[2]

2. Defendants' alternative argument—that the Supreme Court's order represents a "categorical judgment" that foreign nationals without a bona fide connection to the United States

---

[2] Defendants also initially took the position that fiancés, such as Jane Doe #1's fiancé, or grandparents, such as Ms. Hissong's relatives, are outside the ambit of the injunction. *See* (SBU) Implementing Executive Order 13780 Following Supreme Court Ruling – Guidance to Visa-Adjudicating Posts, Diplomatic Cable from U.S. Secretary of State (June 28, 2017), available at https://goo.gl/WHpYdG. Defendants have since revised their position with respect to fiancés. *See* Alert, *Executive Order on Visas*, U.S. Dep't of State (June 29, 2017), https://goo.gl/mLctKZ (last visited July 7, 2017) ("close familial relationship" includes fiancés). In any event, Defendants' constricted interpretation of "close familial relationship" is neither compelled by the Supreme Court's order nor a sensible implementation of it.

3

have no constitutional rights of their own and that no U.S. party will be burdened by the Government's intentional, invidious discrimination against them, Opp. 9—is remarkably overbroad. Again, because no such parties were before it, the Supreme Court found the burdens imposed on such individuals by enforcement of the Executive Order were "less concrete" *in that case* than the hardships identified by the courts below. *IRAP*, 2017 WL 2722580, at *6. Plaintiffs here present, in the most concrete and human terms, burdens that the Supreme Court did not, and could not, consider. Nothing in the Supreme Court's opinion prevents this Court from crafting interim relief to remedy those harms.

      3. Defendants contend that Plaintiffs lack standing to challenge the Executive Order's application to refugees because unadmitted nonresident aliens "have no rights regarding their admission to the United States." Opp. 11. This is an astonishing proposition. As an initial matter, Defendants ignore the interests of the Organizational Plaintiffs, who have devoted significant resources to assisting refugees and fighting discrimination. But Defendants' position has more troubling implications. The government is arguing that the President has absolute, plenary power to declare that people of certain races or religions are unwelcome in the United States—for example, that only white Protestants may enter. On Defendants' theory, no unadmitted, nonresident foreign national lacking a "bona fide relationship" with a U.S. person or entity (as narrowly defined by the government) would have standing to challenge their exclusion from this country based on the most blatant and invidious violations of the Establishment Clause or the constitutional guarantee of equal protection.

That is not and cannot be the law.[3]  Defendants rely heavily on *Kleindienst v. Mandel*, 409 U.S. 753 (1972), which proceeded from the notion, conceded by the appellees in that case, that "an unadmitted and nonresident alien[] had no constitutional right of entry to this country as a nonimmigrant or otherwise."  *Id.* at 762.  Even if that is so, *Mandel* does not establish that the government may violate the Establishment Clause or the Equal Protection Clause in its administration of the immigration system by intentionally excluding Muslims from the United States on the basis of their religion or national origin.  *Mandel* stands for the proposition that courts will not look behind the Executive's exercise of the power to exclude, as long as that exercise of authority is based on a facially legitimate and bona fide reason.  *Id.* at 770.  Indeed, the Court specifically declined to address the constitutional limitations that might exist on the exercise of that power in the absence of an adequate justification.  *Id.*  The openly expressed desire here to discriminate on the basis of religion or national origin is neither a facially legitimate nor a bona fide reason to prevent refugees from entering the United States.  *Cf. Romer v. Evans*, 517 U.S. 620, 634 (1996) ("[A] bare desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." (citation and alterations omitted)).

The powers of the executive and legislative branch with respect to immigration are "subject to important constitutional limitations."  *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). While the Supreme Court has stated that aliens seeking admission to the United States do not enjoy the full panoply of constitutional rights accorded to those within U.S. borders, its decisions have primarily involved the procedural due process rights of foreign nationals seeking entry.

---

[3] Congress, exercising the power over immigration the Constitution has granted it, U.S. Const. Art. I § 8, mandated that the immigration laws be applied in a nondiscriminatory manner with respect to visas and refugee programs.  8 U.S.C. §§ 1152(a)(1)(A); 1522(a)(5).  Defendants do not discuss these mandates in their brief.

*See, e.g.*, *Landon v. Plasencia*, 489 U.S. 21, 22 (1982); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950).  Defendants cite no case that allows the Executive to discriminate on constitutionally suspect grounds with impunity in administering the immigration laws.  *Cf. Ekiu v. United States*, 142 U.S. 651 (1892) ("It is not within the province of the judiciary to order that [nonresident foreign nationals outside the United States] shall be permitted to enter, in opposition to the *constitutional and lawful* measures of the legislative and executive branches of the national government." (emphasis added)).  To argue for such a right is not consistent with the most basic principles of our democratic system.

    4. Defendants' contention that Plaintiffs have failed to establish imminent or irreparable injury as required for Article III standing and a preliminary injunction is likewise misguided.  Every day that the applications of the Plaintiffs and those similarly situated remain in limbo is another day these individuals are exposed to danger—both from intolerance where they temporarily reside and from the risk of deportation back to their home countries.  Indeed, Defendants wholly ignore the declaration of Mr. Zoghi, who is materially affected by the suspension of the refugee admissions program.  Mr. Zoghi has already been accepted for resettlement in the United States, has completed all medical and security screenings, and is awaiting his travel documentation.  The 120-day suspension undoubtedly will delay Mr. Zoghi and his family's arrival in the United States, particularly if the validity of their medical screening expires.  And the longer he and his family remain in Turkey, the greater the chance that Mr. Zoghi will again be forced to return to Iran, where he would face severe political persecution.

    5.  Defendants are also wrong to assert that Plaintiffs fail to establish a likelihood of success on the merits of their claims "specific to these plaintiffs and to Section 6(a)."  Opp. 11.  Defendants acknowledge this Court's prior statement that it "is inclined to agree with Plaintiffs that they are likely to succeed on the merits of their claims with respect to Sections 2 and 6 of the

6

Second Executive Order," Opp. 10, but nevertheless suggest that the Court's statement applied to other claims by other plaintiffs. That makes no sense. "[Section] 6 of the Second Executive Order" concerns refugees, and only Jane Does #8 and #9 (and John Does #7 and #8, who are similarly situated), and the Organizational Plaintiffs, had standing to and did challenge that provision as it applied to them.

Moreover, Defendants' contention that Jane Does #8 and #9 have no viable claims because they have not suffered any personal harms from the constitutional deficiencies of the Executive Orders misunderstands the harms that the Executive Orders have inflicted. Whether or not Jane Does #8 and #9 are actually Muslim (a determination the government has no business making), they have suffered harm from President Trump's thinly veiled desire to discriminate on the basis of religion. As Plaintiffs have already amply explained, President Trump pursued this goal through *more sweeping* measures, because explicitly targeting only Muslims would be plainly unlawful. And all those who have been caught in this broad net—not only those the President was trying to catch—have suffered actual harms that give rise to claims under the Establishment Clause, the Equal Protection Clause, and the Administrative Procedure Act.

6. Finally, in arguing that the Court should limit the scope of any injunction to Jane Does #8 and #9 and not others "similarly situated," Defendants ignore the logic of the Supreme Court's order itself. The Supreme Court itself fashioned its order in terms of "respondents and those similarly situated, as specified in this opinion." *IRAP*, 2017 WL 2722580, at *5. Defendants offer no persuasive reason why this Court should not also order relief to Plaintiffs here and "those similarly situated."

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to lift the stay and for a preliminary injunction should be granted.[4]

---

[4] Plaintiffs filed their motion in accordance with Local Rule 7. *See* ECF 92. Accordingly, a reply is permitted under Local Rule 7(d). Defendants object to Plaintiffs' filing of this reply brief, asserting, "We do not believe Plaintiffs are permitted to file a reply brief (*i.e.*, a third memorandum) in support of their motion, and therefore object to Plaintiffs doing so. Local Civil Rule 65.1(c) contemplates only an opening motion and an opposition; it does not provide for a reply brief. Moreover, the Court's prior Minute Order was fairly clear that the Court did not contemplate a reply brief: '**The court will notify the parties after filing of the government's response whether the court will hold a hearing.**' Accordingly, we believe Plaintiffs are required to seek leave of Court if they intend to file a reply brief."

Dated: July 7, 2017

Cyrus Mehri (D.C. Bar # 420970)
Joanna K. Wasik (D.C. Bar # 1027916)
Amelia Friedman (D.C. Bar # 1033583)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW
Suite 300
Washington, DC 20036
(202) 822-5100
(202) 822-4997 (fax)
cmehri@findjustice.com

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
LAWYERS' COMMITTEE FOR
   CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW
Suite 400
Washington, DC 20005
(202) 662-8600
(202) 783-0857 (fax)
jgreenbaum@lawyerscommittee.org

Respectfully submitted,

/s/ John A. Freedman
John A. Freedman (D.C. Bar # 453075)
David P. Gersch (D.C. Bar # 367469)
R. Stanton Jones (D.C. Bar # 987088)
Nancy L. Perkins (D.C. Bar # 421574)
Ronald A. Schechter (D.C. Bar # 245019)
Robert N. Weiner (D.C. Bar # 298133)
Samuel M. Witten (D.C. Bar # 378008)
Sally L. Pei (D.C. Bar # 1030194)
Sonia Tabriz (D.C. Bar # 1025020)
Stephen K. Wirth (D.C. Bar # 1034038)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
john.freedman@apks.com

Christopher M. Odell*
ARNOLD & PORTER
   KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX  77002
(713) 576-2400
(713) 576-2499 (fax)
christopher.odell@apks.com

Adrienne D. Boyd*
ARNOLD & PORTER
   KAYE SCHOLER LLP
Suite 4400
370 Seventh Street
Denver, CO 80202
(303) 863-1000
(303) 832-0428 (fax)
adrienne.boyd@apks.com

* admitted *pro hac vice*

*Counsel for Plaintiffs*

9