**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PARS EQUALITY CENTER,
IRANIAN AMERICAN BAR ASSOCIATION,
PUBLIC AFFAIRS ALLIANCE OF IRANIAN
AMERICANS, INC., *et al.*,

        *Plaintiffs*,

        v.

DONALD J. TRUMP *et al.*,

        *Defendants*.

Civil Action No. 1:17-cv-255

Hon. Tanya S. Chutkan

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION AND PROPOSED
MODIFICATION OF SCOPE OF PROPOSED PRELIMINARY INJUNCTION**

Since Plaintiffs filed their Motion for Preliminary Injunction on October 12, 2017 (ECF No. 107), there have been several developments that bear on the scope of the injunction necessary to provide full relief to the Plaintiffs. These developments include a new executive order and accompanying agency guidance that discriminate against refugees from Iran and other Muslim-majority countries. The new executive actions are not covered by the pending injunctions and will cause irreparable harm to certain Plaintiffs in the absence of further injunctive relief. Accordingly, Plaintiffs respectfully submit this supplement to the Motion for Preliminary Injunction, as well as a revised proposed order to enjoin the Defendants from engaging in discriminatory conduct against Iranian and Muslim refugees. We submit this supplement now both to advise the Court of these important developments, as well as to give the Government ample time to respond prior to the November 2 hearing.

## I.     FURTHER INFORMATION IN SUPPORT OF PRELIMINARY INJUNCTION

1.      The Government has filed notices of appeal in *Hawaii v. Trump*, No. 17 Civ. 50

(D. Haw. Filed Oct. 24, 2017), ECF No. 391, and *IRAP v. Trump*, No. 17 Civ. 361 (D. Md. filed

Oct. 20, 2014), ECF No. 223.

2.      On October 24, 2017, the Supreme Court vacated the judgment in *Trump v.*

*Hawaii*, No. 16-1540, and remanded that case to the Ninth Circuit with instructions to dismiss as

moot the challenge to the March 6 Executive Order.  Ex. 1.

3.      Also on October 24, the President issued a new Executive Order concerning the

United States Refugee Admissions Program (USRAP).  Ex. 2.  At the same time, Secretary of

State Rex Tillerson, Acting Secretary of Homeland Security Elaine Duke, and Director of

National Intelligence Daniel Coats released a Memorandum to the President dated October 23,

2017, describing how that October 24 Executive Order will be implemented.  Ex. 3.

4.      Read together, the September 24 Proclamation, the October 24 Executive Order,

and the October 23 Memorandum implement an effective ban on Muslim refugees.

a.      Although the October 24 Executive Order provides that (i) the 120-day

ban on the USRAP admitting new refugees is lifted, and (ii) refugees are not covered by

the September 24 Proclamation, the October 23 Memorandum states that a new ban will

remain in effect for at least 90 additional days for refugees from 11 particular countries.

b.      Nine of the 11 countries targeted in the October 24 Executive Order are

Muslim-majority countries.  Five of those Muslim-majority countries were identified in

the September 24 Proclamation as well as the earlier iterations of the Travel Ban—Iran,

Libya, Somalia, Syria, Yemen.  The October 24 Executive Order also includes four

additional Muslim-majority countries—Egypt, Mali, Iraq, and Sudan.  The two non-

Muslim-majority countries are South Sudan and North Korea.  *See* Y. Torbati & M. Rosenberg, *Under Trump plan, refugees from 11 countries face additional U.S. barriers*, Reuters (Oct. 24, 2017).

c.      In addition, the October 23 Memorandum specifies that the Departments of State and Homeland Security will "prioritize refugee applications" from other countries (i.e., other than the 11 countries) and will "reallocate . . . resources" that would otherwise be "dedicated to processing nationals" of the 11 countries "to process applicants" from other countries.

d.      The October 23 Memorandum acknowledges that refugee applicants from the 11 countries specified in the October 24 Executive Order were already required to go through a heightened security-screening process called the Security Advisory Opinion (SAO) process.  The October 24 Executive Order found that "the refugee screening and vetting process generally meets the uniform baseline for immigration screening and vetting."  October 24 Executive Order § 2(b).

e.      In recent years, Iran and the eight other predominantly Muslim countries have been responsible for approximately 45% of the total refugees admitted to the United States, with the largest contingents coming from four countries:  Iran, Iraq, Somalia, and Syria (41%, 38%, and 45% of total refugees in 2016, 2015, and 2014 respectively were from those four countries).

f.      The October 24 Executive Order and October 23 Memorandum follow the administration's announcement that, for the fiscal year starting October 1, 2017, the United States would admit only 45,000 refugees—the smallest number admitted since

Congress enacted the Refugee Act of 1980 and substantially (35%–60%) fewer refugees admitted than in recent fiscal years.

g.      Taken together, the September 14 Proclamation, the October 24 Executive Order, the October 23 Memorandum, and the reduction in refugee admissions effectively bar refugees from the Muslim-majority countries that send the most refugees to the United States.  Although the ban is nominally for 90 days, when that period expires there is a significant risk that all available spots in the USRAP for this fiscal year will already be filled by applicants from other, non-Muslim countries.  This means that that no Iranian refugees, nor any refugees from the eight other Muslim-majority countries, will be admitted to the United States for at least another full year.  In addition, at the end of the 90 days, President Trump could simply issue a new order permanently codifying the new refugee restrictions, just as he permanently codified the earlier Travel Bans in the September 14 Proclamation.

h.      In other words, the Defendants' actions constitute a subterfuge, a Muslim Refugee Ban by another name, precisely of the type that President Trump promised throughout his campaign and immediately before signing the January 27 Executive Order.  *See* Second Amended Complaint (ECF No. 106) ¶ 64 (President Trump on the refugee provisions: "If you were a Muslim you could come in, but if you were a Christian, it was almost impossible . . . . And I thought it was very, very unfair.  So we are going to help them.").

5.      The October 23 Memorandum directly impacts several Plaintiffs and individuals similarly situated to the Plaintiffs.  Specifically:

4

a.      Plaintiff Reza Zoghi is an Iranian political dissident who, after multiple periods of imprisonment and torture, fled Iran with his family in 2013 and currently resides at a refugee camp in Turkey.  He, his wife, and his three-year-old daughter have been referred by the U.N. High Commissioner for Refugees (UNHCR) to USRAP for resettlement in the United States.  Mr. Zoghi and his family have been through the SAO screening, their final medical screening, their cultural orientation, and were awaiting issuance of their travel documents when President Trump issued the March 6 Executive Order.  *See* ECF No. 93, Ex. 4.

b.      Plaintiff Jane Doe #8 is an lesbian refugee who fled Iran in 2014 after experiencing repeated sexual assault, and currently resides in a refugee camp in Turkey with her fiancée, Jane Doe # 9.  Homosexuality is a crime in Iran, and can be punishable by death.  She was referred by UNHCR to USRAP for resettlement in the United States in December 2016, when she had her first interview.  She was awaiting her second interview to be scheduled when the March 6 Executive Order issued.   ECF No. 92, Ex. 2.

c.      Plaintiff Jane Doe #9 is a transgender refugee who fled Iran in 2014 after experiencing physical assault and being expelled from school due to her sexual orientation.  She currently resides in a refugee camp in Turkey with her fiancée, Jane Doe #8.  She was referred by UNHCR to USRAP for resettlement in the United States in December 2016, when she had her first interview.  She was awaiting her second interview to be scheduled when the March 6 Executive Order issued.  ECF No. 92, Ex. 3.

6.      Although they are currently in the United States, the experience of several of the other individual plaintiffs is illustrative of the plight of Iranian refugees generally.  For example:

a.       Jane Doe #4 is an adherent of Efran-e-Halgheh (also known as the Circle

of Mysticism) who sought and received asylum in the United States because she feared

religious persecution in Iran, where members of her spiritual group have been killed by

Iranian officials.  ECF No. 107, Ex. 13.

b.       Jane Doe #13 is a political activist who participated in the Green

Movement, and sought and received asylum in the United States after learning that the

Iranian government had tried and convicted her in absentia based on her political activity.

ECF No. 107, Ex. 14.

7.       In addition to these individual plaintiffs, Organizational Plaintiff Pars Equality

Center provides social and legal services to facilitate the social, cultural, and economic

integration of refugees into their communities in the United States.  ECF No. 35-2, Ex. 1.

Generally, each of the Organizational Plaintiffs works to advance the interests of and fight

discrimination against Iranians and Iranian Americans, and have had to divert substantial

resources from their programs since President Trump first announced the Travel Ban.  ECF No.

35-2.

8.       Neither the October 20 preliminary injunction in *Hawaii* nor the October 17

preliminary injunction in *IRAP* addresses the impact of the October 24 Executive Order or

October 23 Memorandum.  Those injunctions, accordingly, provide no relief to the individual

refugee plaintiffs here—Reza Zoghi, Jane Doe #8, and Jane Doe #9.

## II.     MODIFIED SCOPE OF INJUNCTIVE RELIEF

Currently, Plaintiffs' proposed injunction (ECF No. 107-4) covers the Travel Ban enacted

in the September 14 Proclamation.  In light of the foregoing, in addition to entry the proposed

injunction, Plaintiffs request that Defendants also be enjoined from suspending refugee

processing or barring admittance of Iranians and the eight other predominantly Muslim countries referenced in the October 23 Memorandum.

## III.    LEGAL GROUNDS FOR ADDITIONAL INJUNCTIVE RELIEF

In addition to the arguments made in Plaintiffs' Memorandum in Support of a Preliminary Injunction (ECF No. 107-1) supporting extension of the injunction to cover refugees, the following additional points support Plaintiffs' request for further relief here.

1.    In addition to being "contrary to law" under the Administrative Procedure Act, ECF No. 107-1 at 14-15, the October 23 Memorandum is also contrary to the antidiscrimination provisions of the Refugee Act of 1980, 8 U.S.C. § 1522(a)(5).  That provision states that that refugee programs "shall be provided to refugees without regard to race, religion, nationality, sex, or political opinion."  The October 23 Memorandum bars refugees from Iran and other predominantly Muslim nations from availing themselves of the USRAP, a refugee program. Against the backdrop of certain Defendants' repeated statements reflecting animus against the Iranian government and Muslims, this violates the plain language of the Refugee Act.

2.    In addition to violating the Equal Protection Clause, ECF No. 107-1 at 16-22,  a ban on Iranian refugees specifically or refugees from the other predominantly Muslim countries generally is illogical and lacks any legitimate basis:

a.    The September 24 Proclamation contained an express carve-out for refugees, such that refugees would not be covered by the Travel Ban.  *See* September 24 Proclamation § 3(b)(iii).  The October 24 Executive Order confirmed that the "restrictions and limitations" of the September 24 Proclamation "do not apply to those who seek to enter the United States through the USRAP."  *See* September 24 Proclamation § 1(g).

b.      The October 24 Executive Order notes that refugees go through extensive screening and vetting, and concludes that "the improvements to the USRAP vetting process are generally adequate to ensure the security and welfare of the United States . . . the refugee screening and vetting process generally meets the uniform baseline for immigration screening and vetting."  October 24 Executive Order § 2(a), (b).

c.      Since Plaintiffs filed their Motion for Preliminary Injunction, President Trump has repeatedly acknowledged the oppression of the Iranian people by the Iranian government.  For example, on October 13, the President stated: "The [Iranian] regime violently suppresses its own citizens; it shot unarmed student protestors in the street during the Green Revolution. . . . [W]e stand in total solidarity with the Iranian regime's longest-suffering victims: its own people."  *Remarks by President Trump on Iran Strategy*, Oct. 13, 2017.  Banning Iranian people attempting to flee the Iranian regime is hardly "total solidarity" with those people but rather underlines the administration's unlawful anti-Muslim animus.

3.      The implementation of the October 23 Memorandum will cause Plaintiffs irreparable harm.  Given the administration's painfully deep cuts to the number of refugee admissions to the United States, the practical effect of the October 23 Memorandum is to categorically bar refugee applicants from the affected countries.  In particular, by the time the 90-day window ends, the refugee quota for the fiscal year will likely be entirely or substantially filled.

4.      As described in the declarations or Mr. Zoghi and Jane Does # 8 and 9, the situation for Iranian refugees in Turkey remains treacherous.  Mr. Zoghi wrote that he lives "in constant fear for [his] life" because "the Iranian Revolutionary guard has a lot of spies in Turkey

8

and easy access to Turkey," and notes that Turkish authorities deported him back to Iran on one

prior occasion.  ECF No. No. 93 Ex. 4.  Both Jane Doe # 8 and Jane Doe # 9 note that their life

in Turkey is difficult because they are discriminated against on the grounds of their sexual

orientation; Jane Doe # 9 has also been sexually assaulted in Turkey.  ECF No. 92-2 & 92-3.

## CONCLUSION

For the foregoing reasons, this Court should enter a preliminary injunction against the

discriminatory provisions of the September 24 Proclamation, as well as discriminatory

provisions of the October 24 Executive Order and October 23 Memorandum.

Dated:   October 25, 2017

Respectfully submitted,

/s/ John A. Freedman

Cyrus Mehri (D.C. Bar # 420970)
Joanna K. Wasik (D.C. Bar # 1027916)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
(202) 822-5100
(202) 822-4997 (fax)
cmehri@findjustice.com

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
LAWYERS' COMMITTEE FOR
   CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW, Suite 400
Washington, DC 20005
(202) 662-8600
(202) 783-0857 (fax)
jgreenbaum@lawyerscommittee.org

Hassan Zavareei (D.C. Bar # 456161)
TYCKO & ZAVAREEI LLP
1828 L Street, NW, Suite 1000
Washington, DC 20036
(202) 973-0900
(202) 973-0950 (fax)
hzavareei@tzlegal.com

Adrienne D. Boyd (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202
(303) 863-1000
(303) 832-0428 (fax)
adrienne.boyd@apks.com

John A. Freedman (D.C. Bar # 453075)
David P. Gersch (D.C. Bar # 367469)
R. Stanton Jones (D.C. Bar # 987088)
Nancy L. Perkins (D.C. Bar # 421574)
Ronald A. Schechter (D.C. Bar # 245019)
Robert N. Weiner (D.C. Bar # 298133)
Samuel M. Witten (D.C. Bar # 378008)
Sally L. Pei (D.C. Bar # 1030194)
Sonia Tabriz (D.C. Bar # 1025020)
Stephen K. Wirth (D.C. Bar # 1034038)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
john.freedman@apks.com

Christopher M. Odell (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX  77002
(713) 576-2400
(713) 576-2499 (fax)
christopher.odell@apks.com

Susan S. Hu (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(303) 836-8689 (fax)
susan.hu@apks.com

*Counsel for Plaintiffs*