# EXHIBIT 2

**The White House**

Office of the Press Secretary

For Immediate Release                                                                                          October 24, 2017

# Presidential Executive Order on Resuming the United States Refugee Admissions Program with Enhanced Vetting Capabilities

EXECUTIVE ORDER

- - - - - - -

RESUMING THE UNITED STATES REFUGEE ADMISSIONS PROGRAM WITH ENHANCED VETTING CAPABILITIES

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Immigration and Nationality Act (INA), 8 U.S.C. 1101 et seq., and section 301 of title 3, United States Code, it is hereby ordered as follows:

Section 1.  Policy.  (a)  It is the policy of the United States to protect its people from terrorist attacks and other public-safety threats.  Screening and vetting procedures associated with determining which foreign nationals may enter the United States, including through the U.S. Refugee Admissions Program (USRAP), play a critical role in implementing that policy.  Those procedures enhance our ability to detect foreign nationals who might commit, aid, or support acts of terrorism, or otherwise pose a threat to the national security or public safety of the United States, and they bolster our efforts to prevent such individuals from entering the country.

(b)  Section 5 of Executive Order 13780 of March 6, 2017 (Protecting the Nation from Foreign Terrorist Entry into the United States), directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a uniform baseline for screening and vetting standards and procedures applicable to all travelers who seek to enter the United States.  A working group was established to satisfy this directive.

(c)  Section 6(a) of Executive Order 13780 directed a review to strengthen the vetting process for the USRAP.  It also instructed the Secretary of State to suspend the travel of refugees into the United States under that program, and the Secretary of Homeland Security to suspend decisions on applications for refugee status, subject to certain exceptions.  Section 6(a) also required the Secretary of State, in conjunction with the Secretary of Homeland Security and in consultation with the Director of National Intelligence, to conduct a 120-day review of the USRAP application and adjudication process in order to determine, and implement, additional procedures to ensure that individuals seeking admission as refugees do not pose a threat to the security and welfare of the United States.  Executive Order 13780 noted that terrorist groups have sought to infiltrate several nations through refugee programs and that the Attorney General had reported that more than 300 persons who had entered the United States as refugees were then the subjects of counterterrorism investigations by the Federal Bureau of Investigation.

(d)  The Secretary of State convened a working group to implement the review process under section 6(a) of Executive Order 13780.  This review was informed by the development of uniform baseline screening and vetting standards and procedures for all travelers under section 5 of Executive Order 13780.  The section 6(a) working group compared the process for screening and vetting refugees with the uniform baseline standards and procedures established by the section 5 working group.  The section 6(a) working group identified several ways to enhance the process for screening and vetting refugees and began implementing those improvements.

(e)  The review process for refugees required by Executive Order 13780 has made our Nation safer.  The improvements the section 6(a) working group has identified will strengthen the data-collection process for all refugee applicants considered for resettlement in the United States.  They will also bolster the process for interviewing refugees through improved training, fraud-detection procedures, and interagency information sharing.  Further, they will enhance the ability of our

systems to check biometric and biographic information against a broad range of threat information contained in various Federal watchlists and databases.

(f)  Section 2 of Proclamation 9645 of September 24, 2017 (Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats), suspended and limited, subject to exceptions and case-by-case waivers, the entry into the United States of foreign nationals of eight countries.  As noted in that Proclamation, those suspensions and limitations are in the interest of the United States because of certain deficiencies in those countries' identity-management and information-sharing protocols and procedures, and because of the national security and public-safety risks that emanate from their territory, including risks that result from the significant presence of terrorists within the territory of several of those countries.

(g)  The entry restrictions and limitations in Proclamation 9645 apply to the immigrant and nonimmigrant visa application and adjudication processes, which foreign nationals use to seek authorization to travel to the United States and apply for admission.  Pursuant to section 3(b)(iii) of Proclamation 9645, however, those restrictions and limitations do not apply to those who seek to enter the United States through the USRAP.

(h)  Foreign nationals who seek to enter the United States with an immigrant or nonimmigrant visa stand in a different position from that of refugees who are considered for entry into this country under the USRAP.  For a variety of reasons, including substantive differences in the risk factors presented by the refugee population and in the quality of information available to screen and vet refugees, the refugee screening and vetting process is different from the process that applies to most visa applicants.  At the same time, the entry of certain refugees into the United States through the USRAP poses unique security risks and considerable domestic challenges that require the application of substantial resources.

Sec. 2.  Resumption of the U.S. Refugee Admissions Program.  (a)  Section 6(a) of Executive Order 13780 provided for a temporary, 120-day review of the USRAP application and adjudication process and an accompanying worldwide suspension of refugee travel to the United States and of application decisions under the USRAP.  That 120-day period expires on October 24, 2017.  Section 6(a) further provided that refugee travel and application decisions could resume after 120 days for stateless persons and for the nationals of countries for which the Secretary of State, the Secretary of Homeland Security, and the Director of National Intelligence jointly determine that the additional procedures identified through the USRAP review process are adequate to ensure the security and welfare of the United States.  The Secretary of State, the Secretary of Homeland Security, and the Director of National Intelligence have advised that the improvements to the USRAP vetting process are generally adequate to ensure the security and welfare of the United States, that the Secretary of State and Secretary of Homeland Security may resume that program, and that they will apply special measures to certain categories of refugees whose entry continues to pose potential threats to the security and welfare of the United States.

(b)  With the improvements identified by the section 6(a) working group and implemented by the participating agencies, the refugee screening and vetting process generally meets the uniform

baseline for immigration screening and vetting established by the section 5 working group. Accordingly, a general resumption of the USRAP, subject to the conditions set forth in section 3 of this order, is consistent with the security and welfare of the United States.

(c) The suspension of the USRAP and other processes specified in section 6(a) of Executive Order 13780 are no longer in effect.  Subject to the conditions set forth in section 3 of this order, the Secretary of State may resume travel of qualified and appropriately vetted refugees into the United States, and the Secretary of Homeland Security may resume adjudicating applications for refugee resettlement.

Sec. 3.  Addressing the Risks Presented by Certain Categories of Refugees.  (a)  Based on the considerations outlined above, including the special measures referred to in subsection (a) of section 2 of this order, Presidential action to suspend the entry of refugees under the USRAP is not needed at this time to protect the security and interests of the United States and its people.  The Secretary of State and the Secretary of Homeland Security, however, shall continue to assess and address any risks posed by particular refugees as follows:

(i)  The Secretary of State and the Secretary of Homeland Security shall coordinate to assess any risks to the security and welfare of the United States that may be presented by the entry into the United States through the USRAP of stateless persons and foreign nationals.  Under section 207(c) and applicable portions of section 212(a) of the INA, 8 U.S.C. 1157(c) and 1182(a), section 402(4) of the Homeland Security Act of 2002, 6 U.S.C. 202(4), and other applicable authorities, the Secretary of Homeland Security, in consultation with the Secretary of State, shall determine, as appropriate and consistent with applicable law, whether any actions should be taken to address the risks to the security and welfare of the United States presented by permitting any category of refugees to enter this country, and, if so, what those actions should be.  The Secretary of State and the Secretary of Homeland Security shall administer the USRAP consistent with those determinations, and in consultation with the Attorney General and the Director of National Intelligence.

(ii)  Within 90 days of the date of this order and annually thereafter, the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, shall determine, as appropriate and consistent with applicable law, whether any actions taken to address the risks to the security and welfare of the United States presented by permitting any category of refugees to enter this country should be modified or terminated, and, if so, what those modifications or terminations should be.  If the Secretary of Homeland Security, in consultation with the Secretary of State, determines, at any time, that any actions taken pursuant to section 3(a)(i) should be modified or terminated, the Secretary of Homeland Security may modify or terminate those actions accordingly.  The Secretary of Homeland Security and the Secretary of State shall administer the USRAP consistent with the determinations made under this subsection, and in consultation with the Attorney General and the Director of National Intelligence.

(b)  Within 180 days of the date of this order, the Attorney General shall, in consultation with the Secretary of State and the Secretary of Homeland Security, and in cooperation with the heads of other executive departments and agencies as he deems appropriate, provide a report to the President on the effect of refugee resettlement in the United States on the national security, public

safety, and general welfare of the United States. The report shall include any recommendations the Attorney General deems necessary to advance those interests.

Sec. 4.  General Provisions.  (a)  Nothing in this order shall be construed to impair or otherwise affect:

(i)  the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

  DONALD J. TRUMP

THE WHITE HOUSE,
    October 24, 2017.