**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PARS EQUALITY CENTER,<br>IRANIAN AMERICAN BAR ASSOCIATION,<br>PUBLIC AFFAIRS ALLIANCE OF IRANIAN<br>AMERICANS, INC., *et al.*,<br><br>       *Plaintiffs*,<br><br>       v.<br><br>DONALD J. TRUMP *et al.*,<br><br>       *Defendants*. | Civil Action No. 1:17-cv-255<br><br>Hon. Tanya S. Chutkan |

**PLAINTIFFS' STATUS REPORT AND REQUEST
FOR A CASE MANAGEMENT SCHEDULE**

Since the Court heard oral argument on Plaintiffs' Motion for Preliminary Injunction on November 2, 2017, and Plaintiffs filed the Third Amended Complaint on November 3, 2017, there have been a number of material developments in this matter that further support Plaintiffs' request that this Court promptly enter a preliminary injunction against the discriminatory provisions of the September 24 Proclamation as well as discriminatory provisions of the October Refugee Ban.  *See* ECF No. 123.  Alternatively, Plaintiffs request that this Court set a case management schedule allowing for expeditious resolution of Plaintiffs' claims on the merits.  In support of this request, Plaintiffs state as follows:

1.  At the close of the November 2 hearing, the Government requested that their time to respond to Plaintiffs' Third Amended Complaint be stayed "pending the resolution of the preliminary injunction motion."  11/2/17 Hr'g Tr. 81-82.  At that time, Plaintiffs had no objection, and the Court granted that request, relieving the Government of its obligation under Federal Rule of Civil Procedure 12(a)(2) to respond within 60 days.

2.  On December 7, the Government further suggested to the Court that it should "decline to enter any injunctive relief" and "consider staying these matters until proceedings in *IRAP* and *Hawaii* have concluded."  ECF No. 132.  The Government made that request in violation of Local Rule 7(m).  In addition, the Government did not present any of the required showings to demonstrate entitlement to a stay.  *See, e.g., Dellinger v. Mitchell*, 442 F.2d 782, 785-86 (D.C. Cir. 1971) (discussing *Landis v. North America Co.*, 299 U.S. 248 (1936)).

3.  A number of material events have occurred since the November 2 hearing.  Plaintiffs have previously brought some, but not all of them, to the Court's attention.  *See* ECF Nos. 130, 131.

4.  These events constitute changed circumstances since the Court agreed to stay the Government's obligation to respond to the Third Amended Complaint.  Because Plaintiffs are continuing to experience irreparable harm—indeed, the harms have intensified—Plaintiffs respectfully request that the Court either grant preliminary injunctive relief or set a schedule that will allow the parties to expeditiously resolve the case on the merits.  Plaintiffs believe that any such a schedule should provide a brief discovery period and culminate in motions for summary judgment.

## CHANGED CIRCUMSTANCES SINCE THE NOVEMBER 2 HEARING

At least six changed circumstances since the November 2 hearing make it critical, as a matter of fairness, legal propriety, and individual security, that this matter proceed.

*First*, as detailed in ECF No. 131, on December 4, the Supreme Court granted the Government's application and stayed the preliminary injunctions entered by the District of Hawaii and the District of Maryland.  Those orders made clear that litigation in the lower courts is to proceed "with appropriate dispatch."  *See* ECF No. 131-1, Exs. 1 & 2.

2

*Second*, in the last full week of December, there were two key decisions by other courts concerning the Travel Ban:

- On December 22, 2017, the Ninth Circuit affirmed the District of Hawaii's preliminary injunction. A copy of this decision is attached as Exhibit 1. Pursuant to the Supreme Court's December 4 Order, the Ninth Circuit stayed its order pending Supreme Court review.

- On December 23, 2017, in *Doe v. Trump* and *Jewish Family Services of Seattle v. Trump*, the Western District of Washington partially enjoined the October 24 Executive Order that applied to refugees. Plaintiffs in these cases filed their motions for preliminary injunction on November 6 and 16, 2017, respectively, shortly after this Court hear oral argument in this case. A copy of the Washington decision is attached as Exhibit 2. The relief granted by the Western District of Washington is similar, but narrower, than the relief Plaintiffs requested from this Court. *See* ECF No. 117.[1]

*Third*, Plaintiffs continue to experience irreparable harm. The vast majority of the factual situations described in ECF No. 131 (and previously in ECF Nos. 123, 117, and 107-1) remain true today.[2] For purposes of ensuring that appellate courts have the fullest basis upon which to rule, this case presents (i) a unique and well developed record describing how the Travel Ban has impacted Iranians and Iranian-Americans, the single largest group targeted by the Government's actions, and (ii) several legal claims that have not been advanced by other litigants.

*Fourth*, there is now irrefutable evidence that defendants have manipulated the Travel Bans to prevent Muslims from entering the United States. In prior filings and at the November 2 hearing, Plaintiffs noted the precipitous drop in visas and refugee applications granted to Iranians and nationals of the other listed countries since the Travel Ban was announced, notwithstanding

---

[1] Prior to issuing an injunction, the Western District of Washington asked the parties to brief the impact, if any, the Supreme Court's December 4, 2017 orders had on the motions for preliminary injunction pending before it. The Western District of Washington concluded that the December 4 orders did not preclude the issuance of a partial injunction as to the October 24 Executive Order. The same conclusion is warranted here..

[2] The visa of Plaintiff Mohammad Jahanfar's fiancée was issued prior to the Supreme Court's December 4 order, and she entered the United States on December 24, 2017.

the injunctions.  *See, e.g.*, ECF Nos. 88, 106, 123.  Following the November 2 hearing, additional

news reports have confirmed the steep fall in visas issued and refugee applications granted to

Iranians and Muslims in general—leaving no doubt that these Executive Actions are a *de facto*

Muslim ban.  Specifically:

- On December 12, 2017, the Cato Institute issued a report entitled, "Muslim Ban?  Fewer Muslim Refugees, Immigrants and Travelers Enter the United States in 2017" (hereinafter "Cato Institute Report").  *See* Ex. 3.  The Cato Institute Report found: "Muslim refugee admissions have fallen dramatically over the past year.  According to figures from the State Department, **Muslim refugee flows fell 94 percent from January to November 2017** (the last full month of available data).  In calendar 2016, the United States admitted almost 45,000 Muslim refugees, compared to a little more than 11,000 in 2017—fully half of those entered in January and February.  Of course, the administration has cut refugee flows generally, but the Muslim share of all refugees has dropped substantially too—from 50 percent in January to less than 10 percent in November." (emphasis added)

- On December 8, 2017, Reuters issued a report by Yeganeh Torbati entitled "Trump lifts refugee ban, but admissions plummet, data shows" (hereinafter "Reuters Report").  *See* Ex.4.  The Reuters Report concluded:  "For each of the last three years, refugees from the 11 countries [identified in the Travel Bans] made up more than 40 percent of U.S. admissions . . . .  And in practice, of the 11 countries only Iran, Iraq, Somalia, South Sudan, Sudan and Syria produce refugees who resettle in the United States in meaningful numbers.  Trump administration officials have said the 90-day review does not amount to a bar on refugees from the 11 countries.  **But just as the review launched, the number of refugees coming from those countries ceased almost entirely**.  In the five weeks before the ban was lifted, 587 refugees from the 11 countries were allowed in, despite tough eligibility rules, according to the Reuters review of the State Department data.  **In the five weeks after Trump lifted the ban, just 15 refugees from those countries were allowed in**. . . .  **Just 9 percent of refugees admitted to the United States between Oct. 25 and Nov. 28 were Muslim, and 63 percent were Christian**." (emphasis added)

- According to data from the State Department's Refugee Processing Center, since the refugee ban was lifted on October 24, only two Iranian refugees have been admitted to the United States, neither of whom are Muslim.  Over comparable time periods (October 25 to January 2), in 2016/17, the United States admitted 704 refugees from Iran, 58 of whom were Muslim, while in 2015/16, 497 Iranian refugees, including 60 Muslims, were admitted.  *See* Ex. 5.

- Based on data and information collected by the Organizational Plaintiffs, since the Supreme Court's December 4 Order, the Department of State has only granted a single waiver to an Iranian visa seeker, while hundreds of visas for individuals from the listed countries have been denied.

*Fifth*, there is now considerable reason to believe that the Government, in furtherance of a Muslim ban, violated prior injunctions of the Travel Ban.  At the November 2 hearing, in the April 18 live testimony, and in prior filings with the Court, Plaintiffs noted ongoing discrimination against Iranian visa applicants and refugees, citing, among other things, the Government's failure to comply with injunctions entered by other courts.  *See, e.g.*, ECF Nos. 31-1, 35-1, 80, 83, 106, 107-1.  Following the November 2 hearing, the press has reported that (i) the Department of Homeland Security ("DHS") Inspector General investigated the Government's compliance with various injunctions, (ii) the Inspector General issued a report finding that the Government violated those injunctions, (iii) that DHS and the Department of Justice refused to release the report, and (iv) the DHS Inspector General subsequently resigned.  *See* Exs. 6 & 7. These facts are, to say the least, damning.

*Finally*, as detailed in ECF No. 131, the President recently reaffirmed his anti-Muslim bias, and the Administration confirmed the anti-Muslim basis for the Executive Actions.  *See* ECF No. 131-1, Exs. 3 & 4.  At the prior oral arguments and in previous filings with the Court, Plaintiffs have cataloged the evidence that the Travel Bans are motivated by the Administration's professed anti-Muslim animus.  *See* ECF Nos. 3, 34, 35-1, 106, 107-1.

These changes in circumstance warrant either entry of a preliminary injunction or advancing this case expeditiously to a final resolution on the merits.

## RULE 7(m) CERTIFICATION

Pursuant to Local Rule 7(m), Counsel for Plaintiffs requested the Government's position concerning the relief requested in this filing.  The Government did not provide its position prior to this filing.  A copy of the correspondence is attached as Exhibit 8.

**CONCLUSION**

Plaintiffs in this case have (at great expenditure of resources) created a robust factual record involving the Administration's Travel Bans unlike any other case in the country. Without a ruling from this Court, Plaintiffs have been unable to join the national litigation currently under way on this issue, and the D.C. Circuit and Supreme Court has been deprived of the robust record created in this case. For this reason, and the other reasons set forth above and in Plaintiffs' prior submissions, Plaintiffs urge this Court to enter a preliminary injunction against the discriminatory provisions of the September 24 Proclamation, as well as discriminatory provisions of the October Refugee Ban. Alternatively, the Court should set a schedule allowing for expeditious resolution on the merits, including a brief discovery period and motions for summary judgment.

Dated:  January 3, 2018                                    Respectfully submitted,


                                                           /s/ John A. Freedman
Cyrus Mehri (D.C. Bar # 420970)                            John A. Freedman (D.C. Bar # 453075)
U.W. Clemon (D.D.C . Bar # AL0013)                         David P. Gersch (D.C. Bar # 367469)
Joanna K. Wasik (D.C. Bar # 1027916)                       R. Stanton Jones (D.C. Bar # 987088)
MEHRI & SKALET, PLLC                                       Nancy L. Perkins (D.C. Bar # 421574)
1250 Connecticut Ave., NW, Suite 300                       Ronald A. Schechter (D.C. Bar # 245019)
Washington, DC 20036                                       Robert N. Weiner (D.C. Bar # 298133)
(202) 822-5100                                             Samuel M. Witten (D.C. Bar # 378008)
(202) 822-4997 (fax)                                       Sally L. Pei (D.C. Bar # 1030194)
cmehri@findjustice.com                                     Sonia Tabriz (D.C. Bar # 1025020)
                                                           Stephen K. Wirth (D.C. Bar # 1034038)
Kristen Clarke (D.C. Bar # 973885)                         ARNOLD & PORTER
Jon Greenbaum (D.C. Bar # 489887)                             KAYE SCHOLER LLP
LAWYERS' COMMITTEE FOR                                     601 Massachusetts Ave., NW
   CIVIL RIGHTS UNDER LAW                                  Washington, DC 20001
1401 New York Ave., NW, Suite 400                          (202) 942-5000
Washington, DC 20005                                       (202) 942-5999 (fax)
(202) 662-8600                                             john.freedman@apks.com
(202) 783-0857 (fax)
jgreenbaum@lawyerscommittee.org                            Christopher M. Odell (*pro hac vice*)
                                                           ARNOLD & PORTER
Hassan Zavareei (D.C. Bar # 456161)                           KAYE SCHOLER LLP
TYCKO & ZAVAREEI LLP                                       700 Louisiana Street, Suite 1600
1828 L Street, NW, Suite 1000                              Houston, TX  77002
Washington, DC 20036                                       (713) 576-2400
(202) 973-0900                                             (713) 576-2499 (fax)
(202) 973-0950 (fax)                                       christopher.odell@apks.com
hzavareei@tzlegal.com
                                                           Susan S. Hu (*pro hac vice*)
Adrienne D. Boyd (*pro hac vice*)                          ARNOLD & PORTER
ARNOLD & PORTER                                               KAYE SCHOLER LLP
   KAYE SCHOLER LLP                                        250 West 55th Street
370 Seventeenth Street, Suite 4400                         New York, NY 10019
Denver, CO 80202                                           (212) 836-8000
(303) 863-1000                                             (303) 836-8689 (fax)
(303) 832-0428 (fax)                                       susan.hu@apks.com
adrienne.boyd@apks.com


                                                           *Counsel for Plaintiffs*